IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| TIMOTHY HOLLAHAN AND | ) | |
| JENNIFER HOLLAHAN, | ) | |
|     PLAINTIFFS | ) | |
| | ) | |
| VS. | ) | DOCKET NO. *13-1658-II* |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | JURY DEMAND OF TWELVE |
| COMPANY, | ) | |
|     DEFENDANT. | ) | |

COPY

### VERIFIED COMPLAINT

COMES NOW, the **PLAINTIFFS, TIMOTHY HOLLAHAN AND JENNIFER HOLLAHAN,** by and through undersigned counsel, and sue **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** and for causes of action would sue unto the Court as follows:

### I.

### PARTIES, JURISDICTION AND VENUE

1.  **PLAINTIFFS TIMOTHY HOLLAHAN AND JENNIFER HOLLAHAN** are husband and wife, and citizens and residents of Bellevue, Davidson County, Tennessee, and reside at 1016 General George Patton Rd., Bellevue, Tennessee 37221.

2.  The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** is a foreign corporation, duly charted in the State of Connecticut, and is duly registered and licensed and authorized to conduct insurance business in the State of Tennessee, and particularly in Davidson County, Tennessee. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY'S** home office is located at 4840 Forrest Drive, Number 6GTME 327, Columbia, South Carolina 29206. Service of process may be obtained upon the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** through the Tennessee Department of Commerce and Insurance for the State of Tennessee, 500 James Robertson Parkway, 7th Floor, Nashville, Tennessee 37243-

PAUL T. HOUSCH
Attorney at Law
WASHINGTON SQUARE
2159 SECOND AVE. NORTH
SUITE 310
Nashville, TN 37201
615-259-3313
FAX 615-259-3315

LEGAL DOCUMENT

**EXHIBIT**

**A**

1131. (See T.C.A. § 56-2-504). The **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** Agent for service of process through the Tennessee Department of Commerce and Insurance is CSC, 2908 Poston Ave., Nashville, Tennessee 37203.

3. Jurisdiction of this Court is invoked pursuant to the provisions of T.C.A. § 16-11-101, *et seq.*; and T.C.A. §47-18-109 and § 56-7-105. Venue is proper in Davidson County, Tennessee, because it is the County in which **DEFENDANT** conducts or has conduct business and all the facts, which give rise to the causes of action arose in Davidson County, Tennessee.

## II.

## FACTUAL ALLEGATIONS

4. On or about August 2, 2010, for consideration of premiums paid and accepted, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, through Traveler's Insurance, sold to **PLAINTIFFS** a Homeowner's Insurance Policy, to wit: Policy No. 978409682-633-1. (See Exhibit **"A"** - Copy of Homeowner's Policy signature). The Homeowner's Policy was issued, with a policy term of 8/02/2010-8/02/2011 through AL Phillips Agency, on the **PLAINTIFF'S** residence located at 6526 Currywood Drive, Nashville, Davidson County, Tennessee 37205.

5. That on or about April 13, 2011, the home of the **PLAINTIFFS** located at 6526 Currywood Drive, Nashville, Tennessee 37205 was damaged by and/or destroyed by a fire. The peril of loss by fire is a peril covered by the policy issued by the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY**. (See Exhibit "A" ). In addition to the structure, the **PLAINTIFFS** suffered fire damage to their personal property and incurred other incidental and collateral expenses, including additional living expenses, all of which are also covered under the policy of insurance.

2

6. The **PLAINTIFF'S** fire loss to their residence was considered to be substantial as to the damages to the residence and substantial damages to their personal property, which are covered under the policy coverage limits of said policy.

7. In accordance with the terms and conditions of the subject policy with Homeowner's Insurance Policy, the **PLAINTIFFS** timely and promptly notified the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** of the loss that occurred as a result of the fire on April 13, 2011.

8. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, did send representatives and/or adjustors to investigate **PLAINTIFFS'** loss.

9. On or about April 17, 2011, **PLAINTIFFS** received a letter from Mr. Ted Alexander, General Adjustor for the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY,** who informed **PLAINTIFF** that he had been assigned to the handling of their claim and that the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, intended to undertake an investigation of the facts and circumstances surrounding their claim. (See Exhibit **"B"** - Copy of Letter from Mr. Ted Alexander, General Adjustor, dated 4/17/2011).

10. The Metropolitan Fire Department also launched an investigation of the fire of the **PLAINTIFFS'** residence; and due to the degree of the damage to the **PLAINTIFF'S** residence and the structural damage to the residence as a result of the fire, **PLAINTIFFS** were immediately informed by the representatives of the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** and the Metropolitan Fire Department not to enter the premises because of the safety concerns.

11. That on or about May 4, 2011, the **DEFENDANT STANDARD FIRE INSURANCE**

3

COMPANY hired Greco Contractor Consultants to inspect the fire damage to **PLAINTIFFS'** residence and to determine the replacement costs of the fire damage to the residence. Greco Contractor Consultants determined the estimate of the fire damage to the residence structure to be $308,866.25 and that the net claim was approximately $308.864.25. (See Exhibit **"C"** - Copy of Greco Contractor Consultant's Summary; Recap by rooms/Recap by Categories).

12. That on or about July 18, 2011, **PLAINTIFFS,** through the assistance of the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** agents, **PLAINTIFFS** submitted an initial Sworn Statement in Proof of Loss. (See Exhibit **"D"** - **PLAINTIFFS'** initial Sworn Statement in Proof of Loss).

13. On or about July 28, 2011, **PLAINTIFFS** were notified in writing by the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY'S** counsel, Hon. Karen K. Karabinos, Esq., that the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY,** intend to schedule **PLAINTIFFS'** examinations under oath, arising out of the fire on their premises of April 13, 2011, regarding their loss claim, at the Hampton Inn in Nashville, Tennessee, and that **PLAINTIFFS** should bring with them certain documents and materials, as identified in documents 1-15 contained in said letter. (See Exhibit **"E"** - Copy of Letter from the **DEFENDANTS'** counsel, Ms. Karen Karabinos to **PLAINTIFFS**).

14. That because of the substantial fire loss and damage to **PLAINTIFFS'** personal property, including damage to their personal clothing and their children's clothing, **PLAINTIFFS** and their children had to relocate to a hotel and were unable to access their residence due to the dangerous conditions existing of the structure of the premises due to the fire loss.

15. That due to **PLAINTIFFS'** fire loss and inability to gather records and obtain the

4

letters and documents requested, and **PLAINTIFF JENNIFER HOLLAHAN'S** mandatory training at work, **PLAINTIFFS'** examination under oath was continued until October 11, 2011. (See Exhibit "F" - The **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** Counsel's letter, dated September 26, 2011).

16. That on or about October 11, 2011, **PLAINTIFFS** were duly examined under oath by the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** counsel, Ms. Karen K. Karabinos.

17. That between the period prior to October 11, 2011 and after October 11, 2011 through December 2011, **PLAINTIFFS** attempted to locate the documents requested by **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, to support their fire loss claim and cooperated with the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, in executing certain consent forms and releases to provide the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, with documents and materials requested by the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, which PLAINTIFFS did not have in their possession and/or that were destroyed by fire; and **PLAINTIFFS** made every effort to cooperate with the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, in processing their fire loss claim. (See Exhibit "G" - The **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** Counsel's Letter, dated October 28, 2011).

18. That on or about December 12, 2011, **PLAINTIFFS** were notified by the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** counsel by letter, requesting more information about their fire loss claim and were notified that they had failed to provide documentation concerning their claim. (See Exhibit "H" - **DEFENDANT THE**

5

**STANDARD FIRE INSURANCE COMPANY'S** counsel's letter dated December 12, 2011).

19. That on or about December 28, 2011, **PLAINTIFF** submitted an amended Sworn Statement in Proof of Loss to the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**. (See Exhibit **"I"** - Sworn Statement in Proof of Loss).

20. That on or about January 6, 2012, **PLAINTIFFS** received a letter, from the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** counsel, stating that the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, must reject **PLAINTIFFS'** Sworn Statement in Proof of Loss because **PLAINTIFF** had failed to provide any documentation purporting the amount they were claiming. (See Exhibit **"J"** - Copy of Letter from **DEFENDANT'S** counsel, dated January 6, 2012).

21. **PLAINTIFFS** had submitted documentation to the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, and had previously signed Authorization Forms and Releases for the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** counsel to obtain documents for the benefit of the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, which the **PLAINTIFFS** were unable to obtain and/or produce copies thereof because of the fire loss. Substantial records were destroyed in **PLAINTIFFS'** fire loss at the time of the fire.

22. That between the period January 6, 2012 through December 1, 2012, **PLAINTIFF** waited for the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, to process their claim and were told by the **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** General Adjustor, Ted Alexander, that their claim was under advisement and that it had not been officially denied by the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**.

6

23. That **PLAINTIFFS** have materially complied and cooperated with the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, in processing their claim under the policy, including giving the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, access to their property for the **DEFENDANT'S** representatives and investigators to inspect and investigate the fire loss and providing a Sworn Statement under Oath to the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY** at the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY'S** request; and have fully cooperated with the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, in providing documentation they could obtain; and for those documents and materials that they were unable to produce, **PLAINTIFFS** provided consent forms and authorization forms, duly signed for the **DEFENDANT STANDARD FIRE INSURANCE COMPANY** to obtain said documents and materials thereof.

24. That on December 12, 2012, the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY'S** General Adjustor, Mr. Ted Alexander, officially denied **PLAINTIFFS'** fire loss claim. (See Exhibit "K" - **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY'S** General Adjustor's Letter, dated December 12, 2012).

25. That on or about January 16, 2013, **PLAINTIFF'S** counsel sent a letter to Mr. Ted Alexander, and made demand of the claim for $500,000.00 for the fire damage to their dwelling, personal property and loss of use as a result of the fire on April 13, 2011. (See Exhibit "L" - Copy of **PLAINTIFF'S** Counsel's letter, dated January 14, 2013).

26. That on or about January 28, 2013, the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, counsel Hon. Karen K. Karabinos, Esq., notified **PLAINTIFFS'** counsel in writing that the **DEFENDANT, THE STANDARD FIRE**

7

**INSURANCE COMPANY**, is standing by it's original denial of claim on December 12, 2012. (See Exhibit **"M"** - Copy of **DEFENDANT'S** counsel's letter dated January 28, 2013).

27. That on or about February 13, 2013, **PLAINTIFFS'** counsel employed the Derryberry Company Construction to review the Greco Construction Consultant's Report, photographs and Investigation Report of the Metropolitan Fire Department to determine the cost to rebuild the house at 6256 Currywood Drive, Nashville, Tennessee. The Derryberry Construction Company determined that the cost to rebuild the fire damaged structure was $447,228.00. (See Exhibit **"N"** - Report of the Derryberry Construction Company Report).

28. On or about June 17, 2013, **PLAINTIFFS'** counsel submitted a letter, to the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, with **PLAINTIFFS'** Amended Sworn Statement in Proof of Loss, in the amount of $553,912.66, with supporting documentation. (See Exhibit **"O"** - **PLAINTIFFS'** Amended Sworn Statement in Proof of Loss).

29. That on or about July 18, 2013, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, declined to honor **PLAINTIFFS'** fire loss claim, as amended, and refused to make any payments or claims to their fire loss claim. (See Exhibit **"P"** - The **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** Counsel's Letter, dated July 18, 2013).

30. That before the Official Denial of **PLAINTIFFS'** fire loss claim on December 12, 2012, **PLAINTIFFS'** reasonably relied upon the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** duty as their insurance company to deal with them fairly and in good faith in investigating, evaluating and informing them about their claim.

31. That the subject policy was required to pay for damages to the property caused by fire

8

and pay for the loss of personal property caused by the fire and loss of use.

32. That the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, launched an investigation into the fire loss; **PLAINTIFFS** assisted in the investigation thereof, as required by their homeowner's policy of insurance.

33. The **DEFENDANT, STANDARD FIRE INSURANCE COMPANY**, investigated the claim until approximately December 12, 2012, and led **PLAINTIFFS** to believe through the **DEFENDANT STANDARD FIRE INSURANCE COMPANY'S** General Adjustor, Mr. Ted Alexander, that they had cooperated with the investigation of the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** to the best of their abilities and reliance thereof.

34. That while investigating **PLAINTIFFS'** fire loss claim, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, forced **PLAINTIFF** to take steps, which were unreasonable and continued to make representations to **PLAINTIFF** that they were not to return to the premises due to the safety concerns of the property in hopes that the **PLAINTIFF** would simply abandon their claim.

35. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY,** while investigating **PLAINTIFFS'** fire loss claim, steered the investigation to focus on the **PLAINTIFF, TIMOTHY HOLLAHAN** as the person who may have started the fire in question of the **PLAINTIFFS'** residence on April 13, 2011.

36. That while the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, conducted the subject investigation, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, through it's General Adjustor, Mr. Ted Alexander, never intended to pay **PLAINTIFFS'** fire loss claim, as he believed the **PLAINTIFFS** had set fire to their own residence.

9

37. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, has not uncovered any facts, which establish or show that **PLAINTIFF, TIMOTHY HOLLAHAN**, started the fire himself or caused the fire to be set at **PLAINTIFFS'** residence on April 13, 2011.

38. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, during the course of it's investigation, made certain promises to the **PLAINTIFFS** regarding the rebuilding and/or replacement of their residence and to afford **PLAINTIFFS'** money to build on during the adjustment of their claim and that those promises were made in order to lure **PLAINTIFF** beyond any deadline for filing suit under said policy.

39. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, has no evidence to warrant the denial of **PLAINTIFFS'** claim of their fire loss claim, and has not uncovered any facts or intend to show or settle that **PLAINTIFFS** started the fire or at their direction had someone start the fire at the premises.

40. That at the time the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, was conducting this investigation, **PLAINTIFFS** were in a weakened emotional state because of their fire loss claim and the destruction of their home and their worldly possessions, including their children's clothing and furniture, leaving them helpless and without funds to rebuild their residence or to replace their personal property destroyed in the fire. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** did not even offer **PLAINTIFFS** any shelter or clothing or funds to obtain shelter or clothing after the fire.

41. That while the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, was conducting it's investigation, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, attempted to take advantage of the **PLAINTIFFS'** weakened emotional state of mind

10

by continuously pressuring **PLAINTIFFS** to produce documents, which the **DEFENDANT STANDARD FIRE INSURANCE COMPANY** knew or had reason to know had been consumed in the fire, and that they did not have the original documents requested and/or copies thereof due to the fire.

42. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, attempted investigation and the incompletion of its investigation by the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** was so that **PLAINTIFFS** would not take any legal action against the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, to assert their claims under their policy.

43. That **PLAINTIFFS'** counsel made demands for payment under the policy and requested the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY** to reconsider their claim, but the **DEFENDANT STANDARD FIRE INSURANCE COMPANY** denied the request.

44. That **PLAINTIFFS** have demanded payment under a valid insurance policy, pursuant to T.C.A. § 56-7-105, and that all other provisions under Tennessee Law apply thereof.

45. That the **DEFENDANT, STANDARD FIRE INSURANCE COMPANY'S** refusal to pay the claim within sixty (60) days is in violation of T.C.A. §56-7-105.

46. That **PLAINTIFFS** have complied with the policy provisions, as requested by the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, and that **PLAINTIFFS** did not prevent the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** from investigating any other issues relating to their claim before the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** officially denied **PLAINTIFFS'** claim on December 12, 2012.

47. That the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S**

11

conduct and representations by it's General Adjustor, Mr. Ted Alexander, to **PLAINTIFFS** led

**PLAINTIFFS** to reasonably believe that their claim would be honored during the course of the

investigation. Based upon this reliance and the **DEFENDANT, THE STANDARD FIRE**

**INSURANCE COMPANY'S** General Adjustor Representative Ted Alexander's conduct, of

leading **PLAINTIFFS** to believe that their claim would be honored, **PLAINTIFFS** did not pursue

any legal action before April 13, 2012 and/or before the official denial of their claim on December

12, 2012.

48. That no one has been charged for actions of the fire of the **PLAINTIFFS'** residence,

and there is no factual basis which exists warranting a denial of **PLAINTIFFS'** claim by the

**DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**.

49. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, has

failed to pay **PLAINTIFFS'** fire loss claim under their homeowner's policy of insurance.


### IV.

### CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

50. The allegations contained in Paragraphs 1 through 49 are incorporated by reference as

though fully set forth herein.

51. **PLAINTIFFS** and the **DEFENDANT, THE STANDARD FIRE INSURANCE**

**COMPANY**, have entered into a valid contract for insurance under Homeowner's Policy No.

978409682-633-1.


12

52. Under the said Homeowner's Insurance Policy Company, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, was required to pay for loss under fire as to the consumed property of fire of **PLAINTIFFS'** said residence, including their personal property.

53. That **PLAINTIFFS** suffered losses due to a fire of their dwelling, personal property, at the covered property at 6526 Currywood Drive, Nashville, Tennessee 37205.

54. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY**, has refused to pay for their losses as the subject Homeowner's Contract requires.

55. That as direct result of the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** refusal to pay a valid and just claim, the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** breached said Homeowner's Insurance Policy and **PLAINTIFFS** have been damaged to the extent of their claim not being paid and other damages to be proven at trial.

**WHEREFORE, PLAINTIFFS WILL HEREINAFTER PRAY FOR RELIEF UNDER COUNT I:**

## COUNT II

### TENNESSEE CONSUMER PROTECTION ACT CLAIM

56. The allegations contained in Paragraphs 1 through 55 are incorporated herein by reference as though fully set forth herein.

57. **PLAINTIFFS** bring this Count under the Tennessee Consumer Protection Act (hereinafter the "Act"), T.C.A. §§ 47-18-101 *et seq.*

58. **PLAINTIFFS** are consumers, natural persons, or individuals and thus is a "person" under T.C.A. § 47-18-109(3).

59. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** is a

13

"corporation" or "other legal or commercial entity however organized" and thus is a "person" under the T.C.A. § 47-18-103 (9).

60. That **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** engaged in trade or commerce as defined by T.C.A. § 47-18-109 (11).

61. The providing of insurance under a valid insurance policy in exchange for paymnt of premiums constitutes trade or commerce under the Act.

62. The contract provides that damage for fire loss would be covered absent certain exceptions.

63. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** continued to "string **PLAINTIFFS** along" in the belief that they were going to repair or replace their home while having no intention of paying the claim whatsoever.

64. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** refused to pay the claim until the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** felt they had manufactured enough evidence to potentially deny the claim.

65. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** refused to pay the claim until the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** felt they were in a position to keep **PLAINTIFFS** from seeking legal redress for their improper denial.

66. None of the exceptions to coverage under this insurance policy apply.

67. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** has attempted to invent an exception to avoid paying a valid claim under a valid insurance policy.

68. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** harassed

14

**PLAINTIFF** during the course of their investigation into the claim in hopes that they would not pursue further action on their wrongful denial.

69. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** was negligent in the manner it handled the investigation leading to the wrongful denial of the claim.

70. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY,** either intentionally or negligently, refused to investigate this matter fully and as a result the claim was wrongfully dnied.

71. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** turned a "blind eye" to the truth in this matter so that they may deny the claim.

72. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** based their decision to deny the claim on nothing more than wild speculation.

73. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** denied their claim in hopes that **PLAINTIFFS** would not take any further legal action against them.

74. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** has refused to identify their alleged "factual basis" for the denial of the claim in hopes that no legal action would be taken against them. In reality, no such factual basis exist.

75. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** has denied the claim in an attempt to "play the numbers" that the **PLAINTIFFS** will either give up, or wear down so that the case may be settled for a lesser amount than **PLAINTIFFS** are entitled to.

76. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** has denied a valid claim with knowledge that no valid reason exists to deny said policy.

77. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** acts or

15

practices listed above were unfair and/or deceptive and as such violate the Consumer Protection Act. Tucker v. Sierra Builders, 180 S.W.3d 109, (Tenn. Ct. App. 2005).

78. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** committed or engaged in unfair or deceptive acts or practices affecting the conduct of any trade or commerce and constituted unlawful acts or practices in violation of T.C.A. § 47-18-104(a).

79. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** has engaged in a pattern of the above listed activities in their dealings with homeowners over the United States thereby warranting an award of punitive damages.

80. Separately, **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** acts or practices violated particular subsections of T.C.A. § 47-18-104(b), namely: "Without limited the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:"

A.    (b)(12) - "Representing that a consumer transaction confers or involves rights, remedies, obligations that it does not have or involve or which are prohibited by law."

B.    (b)(27) - "Engaging in any other act or practice which is deceptive to the consumer or to any other person."

C.    (b)(5) - "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have".

D.    (b)(7) - "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;"

· 16

E.  (b)(9) - "Advertising goods or services with intent not to sell them as advertised"

F.  (b)(19) - "Representing that a guarantee or warranty confers or involves rights or remedies which is does not have or involve;"

G.  (b)(21) - "Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;"

H.  (b)(27) - Engaging in any other act or practice which is deceptive to the consumer or to any other person;

81.     Pursuant to T.C.A. § 47-18-112, the Consumer Protection Act's remedies are cumulative and supplemental to all other existing remedies. Invoking it does not prohibit or exclude using another remedy.

82.     The exemptions from the Consumer Protection Act are set forth at T.C.A. § 47-18-111.

83.     The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** does not fit or meet any of the exemptions specified under T.C.A. § 47-18-111.

84.     **PLAINTIFFS** bring this Count under T.C.A. § 47-18-109. She suffered an ascertainable loss of money, property or thing of value as a result of the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** use or employment of an unfair or deceptive act or practice prohibited by the Consumer Protection Act or in violation of the T.C.A. § 47-18-104 (a) and (b), as set forth above.

85.     **PLAINTIFFS** bring this action to recover damages permitted by the Consumer

17

Protection Act.

86. The **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** unfair or deceptive acts or practices were willful or knowing and **PLAINTIFF** is entitled to treble damages under T.C.A. § 47-18-109.

87. The acts and practices of Insurance companies, such as the **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY** are not outside the scope of the Tennessee Consumer Protection Act. Myint v. Allstate, 970 S.W.2d 920, 926 (Tenn. 1998).

88. Insurance companies will be held liable under the act if their conduct in handling, investigating, or denying claims is unfair or deceptive. Myint at 927.

89. Insurance companies will be held liable if their claims handling procedures are unfair or deceptive pursuant to the act. Sparks v. Allstate Ins. Co., 98 F. Supp. 2d 933, 938 (W.D. Tenn., 2000).

90. As a result of **DEFENDANT, THE STANDARD FIRE INSURANCE COMPANY'S** violation of the Tennessee Consumer Protection Act, **PLAINTIFF** suffered losses.

**WHEREFORE, PLAINTIFFS WILL HEREINAFTER PRAY FOR RELIEF UNDER COUNT II.**

## COUNT III

### BAD FAITH REFUSAL TO PAY

91. The Allegations contained in Paragraphs 1-89 are incorporated herein by reference as though fully set forth herein.

92. **PLAINTIFFS** in this matter made a demand for payment under a valid insurance policy pursuant to Tennessee Code Annotated § 56-7-105.

18

93. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** has no basis for denying the claim.

94. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** has refused to pay the claim.

95. The **DEFENDANT FIRE INSURANCE COMPANY'S** actions in refusing to pay the claim were not in good faith.

96. As a direct result of **DEFENDANTS'** actions herein, the **PLAINTIFFS** have suffered losses.

**WHEREFORE, PLAINTIFFS WILL HEREINAFTER PRAY FOR RELIEF UNDER COUNT III.**

## COUNT IV

### NEGLIGENCE

97. The allegations contained in Paragraphs 1 - 96 are incorporated herein as though fully set forth herein.

98. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** owed **PLAINTIFFS** a duty to investigate the claim properly before determining that **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** was not responsible for payment.

99. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** by accepting the premium payments on the insurance policy, further owed **PLAINTIFF** a duty to pay valid claims.

100. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** breached this duty by failing to investigate properly and failing to pay a valid claim.

19

101. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY'S** failure to investigate properly and/or in conducting a goal oriented investigation was willful and/or reckless.

102. As a direct result of **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY'S** negligence as heretofore stated, and breach thereof, the **PLAINTIFFS** have suffered damages.

**WHEREFORE, PLAINTIFFS WILL HEREINAFTER PRAY FOR RELIEF UNDER COUNTY IV.**

## COUNT V

### UNJUST ENRICHMENT`

103. The allegations contained in Paragraphs 1-102 are incorporated herein as though fully set forth herein.

104. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** accepted premium payment payments on the part of the **PLAINTIFFS** in exchange for insurance coverage to be paid for loss due to fire.

105. The **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** accepted the premium payments and refused to provide the insurance coverage after a valid claim was made under said policy for a fire loss.

106. As a direct result of the said actions and conduct of the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY**, as hereinabove stated, the **PLAINTIFFS** have suffered damages.

**WHEREFORE, PLAINTIFFS WILL HEREINAFTER PRAY FOR RELIEF UNDER**

20

**COUNT V.**

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY:**

1. That **PLAINTIFFS** be allowed to file this Verified Complaint against the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY**, and that proper process issue and be served upon the said **DEFENDANT**, and that said **DEFENDANT** be required to appear and answer the said Complaint within the time required by law.

2. That **PLAINTIFFS** be awarded a judgment against the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** for the sum of money of $553,912.66 or in an amount to be determined by the jury to be sufficient to compensate **PLAINTIFFS** for the damages complained of herein.

3. That **PLAINTIFFS** be awarded reasonable attorney fees pursuant to the Tennessee Consumer Protection Act (T.C.A. § 47-18-101, et. seq.), and the Tennessee Bad Faith Refusal to Pay (T.C.A. § 56-7-105).

4. That **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** be required to pay treble damages under the Tennessee Consumer Protection Act T.C.A. § 47-18-101, et seq.).

5. That **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** be required to pay a penalty of twenty give (25%) above their actual liability pursuant to the Bad Faith Refusal to Pay Statute.

6. That **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** be made

21

to pay punitive damages.

7. That **PLAINTIFFS** recover both Prejudgment and Post Judgment Interest against the

**DEFENDANT THE STANDARD FIRE INSURANCE COMPANY.**

8. That **PLAINTIFFS** be allowed to recover all other damages allowed under Tennessee

Law.

9. That **PLAINTIFFS** demand a Jury of 12 to consider this action.

10. That **PLAINTIFFS** be allowed to recover their discretionary costs as authorized by the

rules or by statute.

11. That the **DEFENDANT THE STANDARD FIRE INSURANCE COMPANY** be

taxed with the court costs of this civil action.

12. For such other and further and other relief as justice or equity may require.

**RESPECTFULLY SUBMITTED,**

**PAUL T. HOUSCH, ESQ.**

BY: _____

PAUL T. HOUSCH, ESQ.    #011538
Washington Square
Suite 310
222 Second Avenue North
Nashville, TN 37201
(615) 259-3313

**ATTORNEY FOR PLAINTIFFS**
**TIMOTHY HOLLAHAN AND JENNIFER HOLLAHAN**

**COST BOND**

A duly executed Cost Bond shall be filed in this cause.

22

## OATH

STATE OF TENNESSEE )
COUNTY OF DAVIDSON )

I, **JENNIFER HOLLAHAN,** being first duly sworn make oath that the statements contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

JENNIFER HOLLAHAN

Personally appeared before me the undersigned **JENNIFER HOLLAHAN,** who upon first being duly sworn makes oath that the statements contained in the foregoing Verified Complaint are true and correct to the best of his knowledge, information and belief.

This the _25th_ day of November, 2013.

NOTARY PUBLIC

My Commission Expires: _5 Nov 2014_

23

## OATH

**STATE OF TENNESSEE** )
**COUNTY OF DAVIDSON** )

    I, **TIMOTHY HOLLAHAN,** being first duly sworn make oath that the statements contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

_____
TIMOTHY HOLLAHAN

    Personally appeared before me the undersigned **TIMOTHY HOLLAHAN,** who upon first being duly sworn makes oath that the statements contained in the foregoing Verified Complaint are true and correct to the best of his knowledge, information and belief.

    This the **25th** day of November, 2013.

_____
NOTARY PUBLIC

My Commission Expires: _5 Nov 2017_

24

# EXHIBIT "A"

Continuation
Declarations



# HOMEOWNERS POLICY

### Named Insured

TIMOTHY K & JENNIFER A HOLLAHAN
6526 CURRYWOOD DR
NASHVILLE TN 37205

### Your Agency's Name and Address

AL PHILLIPS INS AGCY
3343 PERIMETER HILL DR STE 214
NASHVILLE, TN    37211

---

**Your Policy Number:**   978409682 633 1
**Your Account Number:**   978409682

**For Policy Service Call:** (615) 665-1550
**For Claim Service Call:** 1-800-CLAIM33

**Policy Period**
FROM: 08-02-10 To: 08-02-11  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

**Location of Residence Premises**
6526 CURRYWOOD DR
NASHVILLE TN 37205

---

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - DWELLING | $   500,000 | $   1,967.00 |
| B - OTHER STRUCTURES | 50,000 | INCL |
| C - PERSONAL PROPERTY | 350,000 | INCL |
| D - LOSS OF USE | 150,000 | INCL |

### Section II - Liability Coverages

| | Limits of Liability | Premium |
|---|---|---|
| E - PERSONAL LIABILITY (BODILY INJURY AND PROPERTY DAMAGE) EACH OCCURRENCE | $   500,000 | $   37.00 |
| F - MEDICAL PAYMENTS TO OTHERS- EACH PERSON | 5,000 | INCL |

### Policy Forms and Endorsements

| | | |
|---|---|---|
| HO-3 | (06-91) Homeowners 3 Special Form | |
| HA-300 TN | (08-09) Special Provisions | |
| HO-827 | (07-02) Limited Fungi, Other Microbes or Rot Remediation | $5,000 |
| 57000 | (02-05) High Value Home Endorsement | |

**Total Premium** $   2,004.00

### Your Premium Reflects the Following Credits or State Surcharges

| | |
|---|---|
| Security Credit | -127.00 |
| Loss Free Credit | -299.00 |

**Policy Deductible:** $ 1000.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated deductible is covered.

Insured Copy
001802/00247

EXHIBIT
2

Case 3:14-cv-00001  Document 1-1  Filed 01/02/14  Page 26 of 141 PageID #: 30

**First Mortgagee**

SUNTRUST MORTGAGE, INC
ISAOA
PO BOX 57028
IRVINE          CA 92619
LOAN NUMBER: 30290647

**Your Insurer:** The Standard Fire Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

## For Your Information

Coverage for your home has been increased by 1.0% to more adequately reflect the
cost to rebuild your home. This adjustment was based on information provided by
Marshall & Swift/Boeckh, an independent firm specializing in construction and
consumer costs. If you need to adjust your limits further, or for any other policy
changes, please contact your insurance representative.

This is not a bill. The mortgagee will be billed separately for this policy.

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

IF YOU HAVE ANY QUESTIONS CONCERNING YOUR INSURANCE POLICY, PLEASE CONTACT YOUR
TRAVELERS REPRESENTATIVE. IF YOU HAVE ANY ADDITIONAL QUESTIONS, YOU MAY CONTACT
US AT P.O. BOX 59059, KNOXVILLE, TN 37950-9059, ATTN: PL SERVICE MANAGER OR BY
CALLING 1-888-237-9877.

Thank you for insuring with Travelers. We appreciate your business. If you
have any questions about your insurance, please contact your agent or
representative.

These declarations with policy provisions HO-3 (06-91) and any attached
endorsements form your Homeowners Insurance Policy. Please keep them with
your policy for future reference.

PL-885t 1-97    413/0/HO66# DECA: 10

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 27 of 141 PageID #: 31

# THE TRAVELERS INDEMNITY COMPANY OF AMERICA
## THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT

HO—827 (07-02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION

### DEFINITIONS

The following definition is added:

* "Fungi"

    a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

    b. Under Section II, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

### SECTION I – PROPERTY COVERAGES
### COVERAGE D - LOSS OF USE

Paragraphs 1. and 2. are deleted and replaced by the following:

1. Additional Living Expense

    If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. This period of time is not limited by expiration of this policy.

2. Fair Rental Value

    If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

    Payment will be for the shortest time required to repair or replace such premises. This period of time is not limited by expiration of this policy.

### ADDITIONAL COVERAGES

The following additional coverage is added:

* Limited "Fungi", Other Microbes Or Rot Remediation

    a. If a loss caused by a Peril Insured Against under Section I results in "fungi", other microbes or rot, we will pay for:

        (1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

            (a) Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

            (b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

        (2) Any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the "fungi", other microbes or rot makes the "residence premises" not fit to live in. We do not cover loss or expense due to cancellation of a lease or agreement; and

        (3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

    b. We will pay under this additional coverage only if:

        (1) The covered loss occurs during the policy period;

        (2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

        (3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

    c. The most we will pay under this additional coverage is $_____. This is the most we will pay for the total of all loss or costs regardless of the:

HO—827 (07-02)

Page 1 of 2

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 28 of 141 PageID #: 32

(1) Number of locations or items of property insured under this policy; or

(2) Number of losses or claims made.

d.  This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

In form HO-3 (and endorsements HA-15, HA-615, 57000 and 58085, if applicable) paragraph C.7.c. is deleted and replaced by the following:

c.  Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

The following exclusion is added:

9.  "Fungi", Other Microbes or Rot, meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion does not apply to "fungi", other microbes or rot remediation coverage that may be afforded under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

## SECTION II – EXCLUSIONS

The following exclusion is added under item 1. Coverage E – Personal Liability and Coverage F – Medical Payments To Others:

m.  "Bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or in-

directly, by "fungi", other microbes or rot. This includes:

(1) The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

(2) Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in m.(1) above;

(3) Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

(4) Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

All other provisions of this policy apply.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 29 of 141 PageID #: 33

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIGH VALUE HOME ENDORSEMENT

For an additional premium, we agree to provide the following coverage:

### DEFINITIONS

Under 6. "Occurrence," the following sentence is added:

It also means offenses which result, during the policy period, in personal injury.

The following is added:

10. "Personal injury" means injury arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment, or malicious prosecution;

    b. Libel, slander or defamation of character; or

    c. Invasion of privacy, wrongful eviction or wrongful entry.

11. "Personal data" means the personal facts or records of any insured. It does not include any hardware, commercial software, or materials on which data is recorded, including magnetic tapes, disk packs, paper tapes, and cards.

### SECTION I – PROPERTY COVERAGES

### COVERAGE C PERSONAL PROPERTY

Coverage C is changed as follows:

The Coverage C (Personal Property) limit shown on the Declarations is increased to 70% of the limit shown for Coverage A (Dwelling).

The second paragraph is deleted and the following is substituted:

Our limit of liability for personal property usually situated at any insured's residence, other than the residence premises, is 30% of the limit of liability for Coverage C. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**SPECIAL LIMITS OF LIABILITY** is deleted and replaced by the following:

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage C Limit of Liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $1,000 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $5,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

3. $2,000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $3,000 on trailers not used with watercraft.

5. $5,000 for loss by theft, misplacement or mislaying of jewelry, watches, precious and semiprecious stones.

6. $5,000 for loss by theft, misplacement or mislaying of furs.

7. $10,000 for loss by theft, mislaying or misplacement of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

8. $5,000 for loss by theft, mislaying or misplacement of firearms.

9. $10,000 on business property on the residence premises in storage or as a sample or for sale or delivery after sale and business property pertaining to a business actually conducted on the residence premises. This includes business data designed to be used or stored in a computer and any computer used for business and associated accessories at the residence premises.

10. $1,000 on business property away from the residence premises.

11. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item 11.

12. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 30 of 141 PageID #: 34

a. is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. is away from the residence premises; and

c. is used at any time or in any manner for any business purpose.

Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item 12.

13. $5,000 for personal data which is designed to be used or stored in a computer at the residence premises.

The special limits of liability for categories 2., 5., and 7. are increased to a combined limit of $50,000 while within a vault at a federal or state chartered bank, savings and loan association or thrift institution. **Caution: This coverage is void as respects property removed from the premises of the bank, savings and loan association or thrift institution.**

### COVERAGE D - LOSS OF USE

The Coverage D (Loss of Use) limit shown on the Declarations is not applicable with this form. There is unlimited Loss of Use Coverage.

Coverage is changed as follows:

1. **Additional Living Expense.** The following paragraph is added:

   If a power outage caused by a Peril Insured Against makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment shall be for the shortest time required to repair or replace the premises or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

   SECTION I - EXCLUSION 4. POWER FAILURE does not apply to this coverage.

2. **Fair Rental Value.** The following paragraph is added:

   If a power outage caused by a Peril Insured Against makes that part of the residence premises rented to others or held for rental by you uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental. Fair rental value shall not in-

clude any expense that does not continue while that part of the residence premises rented to or held for rental is uninhabitable.

SECTION I - EXCLUSION 4. POWER FAILURE does not apply to this coverage.

3. **Prohibited Use.** The following paragraph is added:

   If a civil authority prohibits you from use of the residence premises, we cover any resulting Additional Living Expense and Fair Rental Value.

### ADDITIONAL COVERAGES

Additional Coverages are changed as follows:

1. Debris Removal. is deleted and replaced by the following:

1. **Debris Removal.** We will pay the reasonable expense incurred by you in:

   a. the removal of debris of covered property provided coverage is afforded for the peril causing the loss;

   b. the removal of one or more trees fallen on the residence premises as a result of a peril insured against under Coverage A - Dwelling or Coverage B - Other Structures but not more than $500 for any one tree; and

   c. the removal of debris of property, not otherwise covered on the residence premises, as a result of a Peril Insured Against.

   Debris Removal will be considered a separate expense from the limit of liability for the damaged property.

3. **Trees, Shrubs and Other Plants.**

   We agree to increase the limit of liability that applies to any one tree, shrub, or plant to a total of $1,000.

4. **Fire Department Service Charge.**

   We agree to increase the limit of liability that applies to this Additional Coverage to a total of $1,000.

5. **Property Removed.**

   We agree to increase the time of coverage while removed from the residence premises to a total of 90 days.

6. **Credit Card, Funds Transfer Card, Forgery and Counterfeit Money.**

   We agree to increase the limit of liability that applies to this Additional Coverage to a total of $10,500.

7. Loss Assessment.

We agree to increase the limit of liability that applies to this Additional Coverage to a total of $5,000.

10. Refrigerated Products Coverage.

We agree to increase the limit of liability that applies to this Additional Coverage to a total of $750.

12. Spillage or Residue Removal Coverage.

We will pay up to $5,000 for the removal of substances:

a. accidentally spilled on; or

b. residue covering

an interior building item or contents insured under Coverage A - Dwelling, Coverage B - Other Structures or Coverage C - Personal Property.

This coverage includes, but is not limited to the cleaning, correction, modification, removal, repair or renovation of the interior building, or contents item(s) altered, coated, covered or damaged by such spillage or residue.

This coverage is limited to interior building and contents items. We do not cover any item located outside the exterior walls of the building or below the undersurface of the lowest basement floor or, where there is no basement, below the surface of the ground inside the foundation walls.

We will not pay for spillage or residue removal if the spillage or residue was caused by a peril excluded or limited by this policy. However, coverage exception c.7.e. under SECTION I - COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES Perils Insured Against does not apply to this ADDITIONAL COVERAGE.

The following ADDITIONAL COVERAGES are added:

13. Ordinance or Law.

a. You may use up to 20% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalies, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

If this coverage is also provided under any other endorsement on this policy, this is an additional amount of coverage.

14. Lock Replacement Coverage.

We will pay you an amount, not to exceed $500, that you incur in changing the locks on your residence premises when your keys have been stolen. The theft of the keys must be reported to the police for this Additional Coverage to apply.

No deductible applies to this Additional Coverage.

15. Reward Coverage.

We will pay you an amount, not to exceed $500, that you have incurred in the payment of rewards for information leading to the return of stolen articles or the arrest and conviction of any person(s) who have stolen articles and/or damaged any of your covered property.

16. Personal Property Coverage Extension.

We will pay up to $2,500 for damage to your personal property occurring while it is away from your residence premises caused by:

a. flood (meaning rising water);

b. earthquake;

c. landslide; or

d. collision or overturn of the conveyance in which your property is carried.

SECTION I - EXCLUSIONS - 2. EARTH MOVE-MENT and 3. WATER DAMAGE do not apply to Additional Coverage 16.

17. Mortgage Renegotiation Coverage.

If your residence premises incurs a loss because of a Peril Insured Against, that results in the payment of at least 40% of the Coverage A limit shown on the Declarations, and if the first mortgagee shown on the Declarations exercises its right to renegotiate the mortgage, we will pay up to $5,000 total under this coverage for:

a. The mortgage origination points, and inspection fees incurred by you, and

b. any additional monthly mortgage payment,

(1) if the interest rate increases, and

(2) if the mortgage term remains the same.

Under sections a. and b. above, we do not cover:

(1) Any expenses incurred in renegotiating any other mortgage.

(2) Any additional interest expense, points or other expenses incurred above those based on the original principal amount of the first mortgage.

(3) Legal fees (except as provided below in c.), service charges, taxes, insurance assessments or any other expense whether or not incurred in renegotiating the mortgage or included in mortgage payment.

(4) Any additional interest expense incurred beyond the earliest of the following dates:

(a) The final payment date of the mortgage in effect at the time of loss.

(b) The date five years after the date of loss.

(c) The date the title or insurable interest in the residence premises is relinquished by you.

The time period under sections (a) and (b) is not limited by the expiration of the policy.

c. The legal expenses incurred by you to renegotiate or maintain a first mortgage held by a first mortgagee shown in the Declarations of this policy.

We do not cover fines, judgements, service charges, or legal services by any lawyer except yours.

No deductible applies to this coverage.

18. Identity Fraud Expense

a. We will pay up to $25,000 for expenses incurred by an insured as the direct result of any one identity fraud discovered during the policy period.

Any act or series of acts committed by any one person or group of persons acting in concert or in which any one person or group of persons is concerned or implicated is considered to be one identity fraud, even if a series of acts continues into a subsequent policy period.

b. Definitions. With respect to the provisions of this additional coverage only, the following definitions are added:

"Expenses" means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized.

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies and/or legal counsel, or to complete fraud affidavits, or due to wrongful incarceration arising solely from someone else having committed a crime in the insured's name, up to a maximum payment of $1,000 per week for a maximum period of five weeks. Lost wages shall not apply in the case of wrongful incarceration absent all charges being dropped or an acquittal of the insured.

(4) Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

(5) Reasonable attorney fees incurred, with our prior consent, for:

    (a) Defense of lawsuits brought against the insured by merchants or their collection agencies,

    (b) The removal of any criminal or civil judgments wrongly entered against an insured, and

    (c) Challenging the accuracy or completeness of any information in a consumer credit report.

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual identity fraud.

(7) Costs for daycare and eldercare incurred by an insured solely as a direct result of any one identity fraud.

Identity fraud means the act of knowingly transferring or using, without lawful authority, a means of identification of an insured with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

c. Exclusions. The following additional exclusions apply to this coverage.

We do not cover:

(1) Loss arising out of business pursuits of any insured.

(2) Expenses incurred due to any fraudulent, dishonest or criminal act by an insured or any person acting in concert with an insured, or by any authorized representative of an insured, whether acting alone or in collusion with others.

(3) Loss other than expenses.

d. Deductible. No deductible applies to identity fraud coverage.

e. Your Duties After Loss. The following is added under Section I Condition 2. Your Duties After Loss, paragraph e.:

(9) Receipts, bills or other records that support your claim for expenses under Identity Fraud Expense coverage.

## SECTION I - PERILS INSURED AGAINST

COVERAGE C - PERSONAL PROPERTY is deleted and replaced by the following:

We insure against risks of direct physical loss to property described in COVERAGE C EXCEPT:

A. We do not cover any loss that results from a peril excluded or limited by this policy, even if a covered peril is a concurrent cause of loss.

B. We do not cover any loss or damage to your personal property caused directly or indirectly, contributed to, or aggravated by defective, inadequate, or faulty planning, construction, or maintenance or any property whether on or off the residence premises resulting from:

### DEFECTIVE, INADEQUATE OR FAULTY

1. Development, subdividing, surveying or siting; including grading, excavation and soil compaction;

2. Specifications, building codes or their enforcement or zoning requirements;

3. Alteration, construction, repair, renovation or remodeling;

4. Materials recommended, selected, supplied or used in alteration, construction, repairs, renovation or remodeling;

5. Maintenance.

You may not claim any of the situations included in B. above as a cause of loss. These are not perils we insure against. Ensuing perils, not otherwise excluded or limited by this policy, are covered.

C. We do not cover:

1. Loss excluded under SECTION I - EXCLUSIONS.

2. Loss caused by freezing of a plumbing, drainage, heating, air conditioning system or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

    a. Maintain heat in the building, or

    b. Shut off the water supply and drain the system and appliances of water.

3. Loss caused by freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

   a. Fence, driveway, roadway, walkway, pavement, patio, swimming pool, spa or hot tub;

   b. Foundation, retaining wall, bulkhead; or

   c. Pier, deck, wharf or dock.

4. Loss caused by theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

5. Loss caused by vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

6. Loss caused by continuous or repeated seepage or leakage of water or steam over a period of time, weeks, months or years, from within a plumbing, drainage, heating, air conditioning system or automatic fire protective sprinkler system or from within a household appliance.

7. Loss caused by:

   a. Wear and tear, marring, deterioration or failure to maintain;

   b. Inherent vice, latent defect, mechanical breakdown;

   c. Smog, rust, mold, wet or dry rot;

   d. Smoke from agricultural smudging or industrial operations;

   e. Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a peril insured against under Coverage C of this policy.

      Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. waste includes materials to be recycled, reconditioned or reclaimed.

      Except as provided by SECTION I - ADDITIONAL COVERAGE 12. Spillage or Residue Removal Coverage;

   f. Settling, cracking, shrinking, bulging or expansion of driveways, roadways,

walkways, pavements, patios, foundations, walls, floors, roofs or ceilings;

   g. Birds, vermin, rodents, or insects; or

   h. Animals owned or kept by any insured.

   If any of these cause water to suddenly escape from a plumbing, heating or air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. WE DO NOT COVER LOSS TO THE SYSTEM OR APPLIANCE FROM WHICH THE WATER ESCAPED.

8. Loss caused by collapse other than provided as ADDITIONAL COVERAGE 8. - COLLAPSE.

9. breakage of statuary, marble, bric-a-brac, glassware, porcelains, eyeglasses and similar breakable articles; except cameras and photographic lenses, watches, bronzes and jewelry;

   breakage of this property is covered if it is the result of:

   a. fire or lightning;

   b. windstorm or hail;

   c. explosion, riot or civil commotion;

   d. collapse of a building or a part of a building;

   e. smoke, except smoke from industrial operations or agricultural smudging;

   f. water not excluded elsewhere;

   g. theft or attempted theft;

   h. vandalism or malicious mischief;

   i. aircraft;

   j. vehicles other than aircraft;

   k. earthquake; or

   l. sudden and accidental tearing apart, burning, bulging or cracking of a steam heating system, a hot water heating system, an automatic fire protective sprinkler system, an air conditioning system or an appliance for heating water;

10. Loss caused by collision with other than a land vehicle.

11. Loss caused by stranding, swamping or sinking of watercraft, watercraft trailers, watercraft equipment or furnishings, including outboard motors.

12. Loss caused by dampness of atmosphere or extremes of temperature unless the loss is directly caused by snow, sleet, rain or hail.

Under items 2. through 7., any ensuing loss not excluded is covered.

### SECTION I - EXCLUSIONS

2. **EARTH MOVEMENT.** The following paragraph is added:

   This exclusion does not apply to property described in Coverage C.

3. **WATER DAMAGE.** Subparagraph b. is deleted.

4. **POWER FAILURE.** is deleted.

### SECTION I - CONDITIONS

Under 3. Loss Settlement: paragraphs a. and b. are deleted and replaced by the following:

a. Awnings, carpeting, outdoor antennas, and personal property at the cost to replace or repair at the time of the loss.

   For the purposes of this Coverage:

   (1) Personal property includes domestic appliances and outdoor equipment.

   (2) Personal property does not include:

      (a) Antiques, fine arts, paintings, statuary, and similar articles which, by their inherent nature, cannot be replaced with new articles; and

      (b) Articles whose age or history contribute substantially to their value, including but not limited to memorabilia, souvenirs and collector's items.

   We will not pay more than the actual cost to repair or replace, less deduction for depreciation, at the time of loss for any of the above.

   (3) "Cost to Replace" means the cost at the time of loss of a new article of like kind and quality to the one damaged, destroyed or stolen. When an article is no longer manufactured or is not available, the "cost to replace" means the cost of a new article, similar to that damaged, destroyed or stolen, which is of comparable quality and usefulness.

   (4) The limit of liability for loss on any personal property shall not exceed the smallest of the following amounts, subject to any deductible:

      (1) The limit of liability of this policy applicable to Coverage C;

      (2) Any special limits of liability described in the policy;

      (3) The cost to replace, without deduction for depreciation, at the time of loss.

      We have the option either to repair or replace any item under this coverage, or to reimburse the cost to replace it.

b. Structures including swimming pools that are not buildings and the items listed under 3.a.(2)(a) & (b) above at actual cash value at the time of loss, but not exceeding the amount necessary to repair or replace.

The following CONDITION is added:

### ADDITIONAL REPLACEMENT COST PROTECTION

(Applies only when loss to the dwelling exceeds the Coverage A Limit of Liability shown in the Declarations)

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

a. If you have:

   (1) Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

      (a) The property evaluations we make; and

      (b) Any increases in inflation; and

   (2) Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling which increase the replacement cost of the dwelling by 5% or more:

   the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling on the same premises.

b. If there is a loss to the dwelling that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

   (1) We will provide an additional amount of insurance, up to 50% of the Coverage A limit of liability; and

   (2) The Section I Condition 3. Loss Settlement paragraph c. is deleted and replaced by paragraphs c., d. and e. as follows:

      c. The dwelling under Coverage A at replacement cost without deduction for de-

Case 3:14-cv-00001　Document 1-1　Filed 01/02/14　Page 36 of 141 PageID #: 40

preciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

(1) The replacement cost of that part of the dwelling damaged or destroyed;

(2) The necessary amount actually spent to repair or replace the damaged or destroyed dwelling; or

(3) The limit of liability under this policy that applies to the dwelling, plus any additional amount provided by this endorsement.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

This section is deleted and replaced by the following:

If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which this coverage applies, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and

b. Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may make any investigation and settle any claim or suit that we decide is appropriate. Our duty to settle or defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others g.** is deleted and the following substituted:

g. arising out of:

(1) the ownership, maintenance, use, loading or unloading of watercraft described below;

(2) the entrustment by any insured of a watercraft described below to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

(1) that are not sailing vessels and are powered by:

(a) inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by any insured;

(b) inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to any insured;

(c) one or more outboard engines or motors with 50 horsepower or less;

(d) one or more outboard engines or motors with more than 50 total horsepower if the outboard engine or motor is not owned by any insured;

(e) outboard engines or motors of more than 50 total horsepower owned by any insured if:

(i) you acquire them prior to the policy period; and

(a) you declare them at policy inception;

(b) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors;

(ii) you acquire them during the policy period.

This coverage applies for the policy period.

(2) that are sailing vessels, with or without auxiliary power:

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 37 of 141 PageID #: 41

(a) less than 26 feet in overall length;

(b) 26 feet or more in overall length not owned by or rented to any insured.

(3) that are stored.

(1)(c) This change to exclusion g. does not apply in Indiana or Kentucky.

2. Coverage E - Personal Liability, Subparagraph c. is deleted and replaced by the following:

c. property damage to property rented to, occupied or used by, or in the care of the insured. This exclusion does not apply to property damage caused by fire, smoke, explosion, or water damage.

The following is added:

4. Personal injury insurance does not apply to:

a. Liability assumed by the insured under any contract or agreement except any indemnity obligation assumed by the insured under a written contract directly relating to the ownership, maintenance or use of the premises;

b. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured;

c. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the insured.

d. Injury arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

e. Civic or public activities performed for pay by an insured; or

f. Injury to you or an insured within the meaning of part a. or b. of insured as defined.

This exclusion does not apply to a not-for-profit corporation or organization for a maximum limit of $10,000.

SECTION II - ADDITIONAL COVERAGES

3. Damage To Property of Others.

We agree to pay at replacement cost and to increase the limit of liability that applies to this additional coverage by $750 per occurrence.

SECTION II - CONDITIONS

1. Limit of Liability. is deleted and the following substituted:

1. Limit of Liability. Regardless of the number of insureds, claims made or persons injured, our total liability under Coverage E stated in this policy for all damages resulting from any one occurrence shall not exceed $200,000 plus the limit of liability for Coverage E stated in the Declarations. All bodily injury, personal injury and property damage resulting from any one accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence.

Our total liability under Coverage F for all medical expense payable for bodily injury to one person as the result of one accident shall not exceed $2,000 plus the limit of liability for Coverage F stated in the Declarations.

SECTION I AND SECTION II - CONDITIONS

1. POLICY PERIOD. is deleted and replaced by the following:

1. POLICY PERIOD. This policy applies to loss under Section I or bodily injury, personal injury or property damage under Section II, which occurs during the policy period.

You may continue this policy, subject to our consent, for successive periods by paying required premiums when due.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – TENNESSEE

### DEFINITIONS

The following definitions are added:

10. "fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      (1) Are, or were, used to hold fuel; and

      (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

   A fuel system does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an insured, used for powering the motor vehicle or watercraft and not used at any time or in any manner for business.

11. "sinkhole collapse" means:

   Actual physical damage to the dwelling and other covered structures:

   1. Arising out of; or

   2. Caused by:

      the sudden settlement or collapse of the earth supporting such property. The settlement or collapse must result from subterranean voids created by the action of water on limestone or similar rock formations.

### SECTION I – PROPERTY COVERAGES

#### COVERAGE C - PERSONAL PROPERTY SPECIAL LIMITS OF LIABILITY

Items 8. and 9. are deleted and replaced by the following:

8. $5,000 on property, on the residence premises used at any time or in any manner for any business purpose.

9. $1,000 on property away from the residence premises used at any time or in any manner for any business purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

### SECTION I – ADDITIONAL COVERAGES

The following additional coverage is added: (Forms HO-2 and HO-3 only)

* Ordinance or Law.

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

8. Collapse is deleted and replaced by the following:

8. Collapse.

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – EXCLUSIONS

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

(1) Results in widespread damage;

(2) Affects a substantial area; or

(3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

(1) Any acts of nature;

(2) Any human action or inaction;

(3) The forces of animals, plants or other living or dead organisms; or

(4) Any other natural or artificial process.

2. Earth Movement is deleted and replaced by the following:

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 40 of 141 PageID #: 44

2. Earth Movement, meaning events that include but are not limited to the following:

   a. Earthquake and earthquake aftershocks;

   b. Volcano activity including but not limited to:

      1. Volcanic Eruption;

      2. Volcanic Explosion;

      3. Effusion of volcanic material; or

      4. Lava Flow;

   c. Mudslide, including mudflow, debris flow, land-slide, avalanche, or sediment;

   d. Subsidence;

   e. Excavation collapse;

   f. Erosion;

   g. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil, or land.

   This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

   The Earth Movement Exclusion does not apply to "sinkhole collapse".

   However, loss caused directly by the specific perils:

   a. fire;

   b. explosion;

   c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

   d. theft;

   following any earth movement is covered.

3. Water Damage is deleted and replaced by the following:

3. Water damage, meaning;

   a. Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

   b. any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump or related equipment;

   c. any water or water borne material located below the surface of the ground including water or water borne material:

   (1) Which exerts pressure on, seeps, leaks or flows into:

      (a) Any part of the dwelling or other structures;

      (b) The foundation of the dwelling or other structures;

      (c) Any paved surface located on the residence premises; or

      (d) Any spa, hot tub, or swimming pool.

   (2) Which causes earth movement; or

   d. any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

   Direct loss by fire, explosion or theft resulting from water damage will be covered.

SECTION I – CONDITIONS

3. Loss Settlement. In Forms HO-2 and HO-3 only, paragraph c.(4) is deleted and replaced by the following:

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair is complete, we will settle the loss according to the provisions of c.(1) and c.(2) above.

   However, if the cost to repair or replace is less than $2,500 we will settle the loss according to the provisions of c.(1) and c.(2) above, whether or not actual repair or replacement is complete.

7. Other Insurance, in Form HA-6 only, is deleted and replaced by the following:

7. Other Insurance and Service Agreement.

   a. If a loss covered by this policy is also covered by:

      (1) Other Insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

      (2) A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 41 of 141 PageID #: 45

b. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

## SECTION II - EXCLUSIONS

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others: The following items are added:

   * or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such bodily injury or property damage, damages, loss, cost, payment or expense; or

     (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

   * arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a fuel system. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such bodily injury or property damage, damages, loss, cost, payment or expense; or

     (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

   However, this exclusion does not apply to bodily injury or property damage arising out of fire or explosion that results from such escaped or released fuel.

## SECTION II - ADDITIONAL COVERAGES

The following additional coverage is added:

5. Property Damage coverage for Military Personnel and Federal Government Employees:

   If an insured is:

   a. a United States Government Employee; or

   b. a member of the United States Military,

   We agree to pay for property damage to United States government property, for which such insured is responsible under applicable rules or regulations.

   Payment for such property damage will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

   Our Limit of Liability, per occurrence, under this Additional Coverage for all damages resulting from any one occurrence shall not exceed two months basic pay for the insured, as of the time of the occurrence.

   We will not pay for property damage to:

   a. aircraft

   b. motor vehicles, including vehicles not designed for travel on public roads or subject to registration;

   c. watercraft; or

   d. weapons

   We will not pay for property damage:

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by any insured who is 13 years of age or older.

All other provisions of this policy apply.



# Homeowners Policy Booklet

## from Travelers

HO-3 HOMEOWNERS 3 - SPECIAL FORM

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 43 of 141 PageID #: 47

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

|  | **DECLARATIONS PAGE**<br>Your Name<br>Location of Your Residence<br>Policy Period<br>Coverages<br>Amounts of Insurance<br>Deductible Amounts |
|---|---|

|  |  | Beginning<br>On Page |
|---|---|---|
|  | AGREEMENT | 1 |
|  | DEFINITIONS | 1 |
| **SECTION I**<br>**PROPERTY**<br>**COVERAGES** | COVERAGES | 2 |
|  | Coverage A – Dwelling | 2 |
|  | Coverage B – Other Structures | 2 |
|  | Coverage C – Personal Property | 2 |
|  | Coverage D – Loss of Use | 4 |
|  | Additional Coverages | 4 |
|  | PERILS INSURED AGAINST | 7 |
|  | EXCLUSIONS | 10 |
|  | CONDITIONS | 11 |
|  | Your Duties After Loss | 11 |
|  | Loss Settlement | 12 |
| **SECTION II**<br>**LIABILITY**<br>**COVERAGES** | COVERAGES | 14 |
|  | Coverage E – Personal Liability | 14 |
|  | Coverage F – Medical Payments to Others | 14 |
|  | EXCLUSIONS | 15 |
|  | ADDITIONAL COVERAGES | 17 |
|  | CONDITIONS | 18 |
|  | Limit of Liability | 18 |
|  | Duties After Loss | 18 |
| **SECTION I and**<br>**SECTION II**<br>**CONDITIONS** | CONDITIONS | 19 |
|  | Policy Period | 19 |
|  | Cancellation | 19 |
|  | Nonrenewal | 20 |

HO-3 (06-91)

## Homeowners 3 Special Form

---

### AGREEMENT

---

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

### DEFINITIONS

---

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse, if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "aircraft" means any contrivance, whether or not tethered, used or designed for air or space flight capable of carrying cargo or people. The contrivance may be either lighter or heavier than the air, engine powered or designed or used to float, glide, soar or control descent.

2. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "business" includes trade, profession or occupation

4. "insured" means you and the following residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of any person named above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 4.a. or 4.b. above. A person or organization using or having custody of these animals or watercraft in the course of any business, or without permission of the owner is not an insured;

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 4.a. or 4.b. above; or

      (2) other persons using the vehicle on an insured location with your consent.

5. "insured location" means:

   a. the residence premises;

   b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by any insured but where any insured is temporarily residing;

   e. vacant land owned by or rented to any insured other than farm land;

   f. land owned by or rented to any insured on which a one or two family dwelling is being constructed as a residence for any insured;

   g. individual or family cemetery plots or burial vaults of any insured;

   h. any part of a premises occasionally rented to any insured for other than business purposes.

   i. any part of a premises, which is not a residence, owned or rented by any insured used for other than business purposes to:

      (1) moor or store watercraft;

      (2) garage or store motorized land vehicles; or

      (3) park or store aircraft.

6. "occurrence" means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

   a. bodily injury; or

   b. property damage.

7. "property damage" means physical injury to, destruction of, or loss of use of tangible property.

8. "residence employee" means an employee of any insured who performs duties in connection with the maintenance or use of the residence premises, including household or domestic services, or who performs duties elsewhere of a

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 45 of 141 PageID #: 49

lar nature not in connection with the business of any insured.

9. "residence premises" means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the "residence premises" in the Declarations.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

a. the dwelling on the residence premises shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

b. materials and supplies located on or adjacent to the residence premises for use in the construction, alteration or repair of the dwelling or other structures on the residence premises.

THIS COVERAGE DOES NOT APPLY TO:

a. FENCES;

b. EXTERIOR WALLS THAT DO NOT SUPPORT THE ROOF OF THE DWELLING;

c. LAND, INCLUDING LAND ON WHICH THE DWELLING IS LOCATED.

### COVERAGE B - OTHER STRUCTURES

We cover:

Other structures on the residence premises, separated from the dwelling by clear space. Structures with a separation from the dwelling and its foundation and linked by only a conduit, deck, fence, patio, utility line, walk, wall, or similar connector means that structure is an other structure. Other structures include but are not limited to:

a. Barns;

b. Exterior walls that do not support the roof of the dwelling;

c. Fences;

d. Garages that are detached from the dwelling;

e. Gazebos;

f. Sheds; or

g. Swimming pools that are exterior to the walls supporting the roof of the dwelling.

THIS COVERAGE DOES NOT APPLY TO LAND, INCLUDING LAND ON WHICH THE OTHER STRUCTURES ARE LOCATED.

WE DO NOT COVER OTHER STRUCTURES:

a. USED IN WHOLE OR IN PART FOR BUSINESS PURPOSES: OR

b. RENTED OR HELD FOR RENTAL TO ANY PERSON NOT A TENANT OF THE DWELLING, UNLESS USED SOLELY AS A PRIVATE GARAGE. Use of Coverage B does not reduce the amount of coverage available to you under Coverage A - Dwelling.

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by any insured while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied by any insured. In addition, we will cover at your request, personal property owned by a guest or a residence employee, while the property is in any residence occupied by any insured.

Our limit of liability for personal property usually located at any insured's residence, other than the residence premises, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. THIS LIMIT APPLIES TO THE PERSONAL PROPERTY OF INSUREDS, INCLUDING, BUT NOT LIMITED TO, STUDENTS WHO RESIDE AWAY FROM THE RESIDENCE PREMISES PERIODICALLY FOR THE PERSONAL PROPERTY AT THE LOCATION AWAY. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

SPECIAL LIMITS OF LIABILITY. THESE LIMITS DO NOT INCREASE THE COVERAGE C LIMIT OF LIABILITY. THE SPECIAL LIMIT FOR EACH FOLLOWING NUMBERED CATEGORY IS THE TOTAL LIMIT FOR EACH OCCURRENCE FOR ALL PROPERTY IN THAT NUMBERED CATEGORY.

1. $200 ON MONEY, BANK NOTES, BULLION, GOLD OTHER THAN GOLDWARE, SILVER OTHER THAN SILVERWARE, PLATINUM, COINS AND MEDALS.

2. $1,000 ON SECURITIES, ACCOUNTS, DEEDS, EVIDENCES OF DEBT, LETTERS OF CREDIT, NOTES OTHER THAN BANK NOTES, MANUSCRIPTS, PASSPORTS, TICKETS AND STAMPS.

3. $1,000 ON WATERCRAFT, INCLUDING THEIR TRAILERS, FURNISHINGS, EQUIPMENT AND OUTBOARD MOTORS.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 46 of 141 PageID #: 50

4. $1,000 ON TRAILERS NOT USED WITH WA-TERCRAFT.

5. $1,000 FOR LOSS BY THEFT OF JEWELRY, WATCHES, FURS, PRECIOUS AND SEMIPRE-CIOUS STONES.

6. $2,500 FOR LOSS BY THEFT OF SILVER-WARE, SILVER-PLATED WARE, GOLDWARE, AND GOLD-PLATED WARE AND PEWTER-WARE. THIS INCLUDES FLATWARE, HOLLO-WARE, TEA SETS, TRAYS AND TROPHIES MADE OF OR INCLUDING SILVER, GOLD OR PEWTER.

7. $2,000 FOR LOSS BY THEFT OF FIREARMS.

8. $2,500 ON PROPERTY, ON THE RESIDENCE PREMISES USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE:

9. $250 ON PROPERTY AWAY FROM THE RESIDENCE PREMISES USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE. HOWEVER, THIS LIMIT DOES NOT APPLY TO LOSS TO ADAPTABLE ELEC-TRONIC APPARATUS AS DESCRIBED IN SPECIAL LIMITS 10. AND 11. BELOW.

10. $1000 FOR LOSS TO ELECTRONIC APPARA-TUS, WHILE IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAIN-ING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER. ELEC-TRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS; OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARA-TUS.

11. $1000 FOR LOSS TO ELECTRONIC APPARA-TUS, WHILE NOT IN OR UPON A MOTOR VE-HICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPA-RATUS:

    a. IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER;

    b. IS AWAY FROM THE RESIDENCE PREM-ISES; AND

    c. IS USED AT ANY TIME OR IN ANY MAN-NER FOR ANY BUSINESS PURPOSE.

ELECTRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS: OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARA-TUS.

PROPERTY NOT COVERED, WE DO NOT COVER:

1. ARTICLES SEPARATELY DESCRIBED AND SPECIFICALLY INSURED IN THIS OR ANY OTHER INSURANCE:

2. ANIMALS, BIRDS OR FISH:

3. MOTORIZED LAND VEHICLES, EXCEPT WE DO COVER:

    a. MOTORIZED LAND VEHICLES INCLUDING THEIR ACCESSORIES, ATTACHMENTS, EQUIPMENT OR PARTS, NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, USED TO SERVICE AN INSURED'S RESI-DENCE.

    b. MOTORIZED LAND VEHICLES, NOT RE-QUIRING MOTOR VEHICLE REGISTRA-TION DESIGNED FOR ASSISTING THE HANDICAPPED.

    c. EXTRA ACCESSORIES, EQUIPMENT OR PARTS DETACHED FROM A MOTORIZED LAND VEHICLE SUBJECT TO MOTOR VE-HICLE REGISTRATION, OWNED OR IN THE POSSESSION OF ANY INSURED, PROVIDED THAT IMMEDIATELY FOL-LOWING THE LOSS TO THE ITEMS CLAIMED THAT VEHICLE FOR WHICH THE ITEMS WERE INTENDED BE FULLY AS-SEMBLED WITH ALL OF ITS USUAL AC-CESSORIES, EQUIPMENT OR PARTS AND BE CAPABLE OF OPERATION, AS DE-SIGNED, PROPERLY AND LEGALLY, UPON THE PUBLIC WAYS FOR AN AMOUNT NOT EXCEEDING $500.

4. a. ANY DEVICE OR INSTRUMENT, INCLUD-ING ANY ACCESSORIES OR ANTENNAS, FOR THE TRANSMITTING, RECORDING, RECEIVING OR REPRODUCTION OF SOUND WHICH IS DESIGNED TO BE SOLELY OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF A MOTOR VEHICLE, OR ANY TAPE, WIRE, RECORD, DISC OR OTHER MEDIUM FOR USE WITH ANY SUCH DEVICE OR INSTRUMENT WHILE ANY OF THIS PROPERTY IS IN OR UPON A MOTOR VEHICLE:

    b. RADAR DETECTION DEVICES.

5. AIRCRAFT AND AIRCRAFT PARTS:

6. PROPERTY OF ROOMERS, BOARDERS AND OTHER TENANTS, EXCEPT PROPERTY OF ROOMERS AND BOARDERS RELATED TO ANY INSURED;

7. PROPERTY CONTAINED IN AN APARTMENT REGULARLY RENTED OR HELD FOR RENTAL TO OTHERS BY ANY INSURED;

8. PROPERTY RENTED OR HELD FOR RENTAL TO OTHERS AWAY FROM THE RESIDENCE PREMISES.

COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total for all the following coverages.

1. **Additional Living Expense.** If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. PAYMENT SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PREMISES OR, IF YOU PERMANENTLY RELOCATE, THE SHORTEST TIME REQUIRED FOR YOUR HOUSEHOLD TO SETTLE ELSEWHERE. This period of time is not limited by expiration of this policy.

2. Fair Rental Value. If a loss covered under this section makes that part of the residence premises rented to others or held for rental by you uninhabitable, we cover its fair rental value. PAYMENTS SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PART OF THE PREMISES RENTED OR HELD FOR RENTAL. This period of time is not limited by expiration of this policy. FAIR RENTAL VALUE SHALL NOT INCLUDE ANY EXPENSE THAT DOES NOT CONTINUE WHILE THAT PART OF THE RESIDENCE PREMISES RENTED OR HELD FOR RENTAL IS UNINHABITABLE.

3. **Prohibited Use.** If a civil authority prohibits you from use of the residence premises as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover any resulting **Additional Living** expense and Fair **Rental Value loss** FOR A PERIOD NOT EXCEEDING TWO WEEKS DURING WHICH USE IS PROHIBITED.

WE DO NOT COVER LOSS OR EXPENSE DUE TO CANCELLATION OF A LEASE OR AGREEMENT.

ADDITIONAL COVERAGES

1. Debris Removal.

We will pay the reasonable expense incurred by you in:

a. the removal of debris of Covered property PROVIDED COVERAGE IS AFFORDED FOR THE PERIL CAUSING THE LOSS; and

b. the removal of one or more trees fallen on the residence premises as a result of a peril insured against UNDER SECTION I - PERILS INSURED AGAINST, COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES, but not more than $500 for any one occurrence regardless of the number of fallen trees.

Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense. However the availability of this additional amount does not change the $500 maximum payable for tree debris removal under subsection b above.

2. Reasonable Repairs. In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost INCURRED BY YOU FOR THE NECESSARY MEASURES TAKEN SOLELY TO PROTECT AGAINST FURTHER DAMAGE. IF THE MEASURES TAKEN INVOLVE REPAIR TO OTHER DAMAGED PROPERTY, WE WILL PAY FOR THOSE MEASURES ONLY IF THAT PROPERTY IS COVERED UNDER THIS POLICY AND THE DAMAGE TO THAT PROPERTY IS CAUSED BY AN APPLICABLE PERIL INSURED AGAINST.

This Additional Coverage:

a. DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE COVERED PROPERTY.

b. DOES NOT CHANGE YOUR OBLIGATIONS OR DUTIES, IF THERE IS LOSS OR DAMAGE TO COVERED PROPERTY, AS STATED IN SECTION I - CONDITIONS, CONDITION 2. YOUR DUTIES AFTER LOSS SUBSECTION d.

3. Trees, Shrubs and Other Plants. We cover trees, shrubs, plants or lawns, on the residence premises, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the residence premises, Vandalism or malicious mischief or Theft.

WE WILL PAY UP TO 5% OF THE LIMIT OF LIABILITY THAT APPLIES TO THE DWELLING FOR ALL TREES, SHRUBS, PLANTS OR

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 48 of 141 PageID #: 52

LAWNS. NO MORE THAN $500 OF THIS LIMIT WILL BE AVAILABLE FOR ANY ONE TREE, SHRUB OR PLANT. WE DO NOT COVER PROPERTY GROWN FOR BUSINESS PURPOSES.

THIS COVERAGE IS ADDITIONAL INSURANCE.

4. **Fire Department Service Charge.** WE WILL PAY UP TO $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and no more than 30 days while removed. THIS COVERAGE DOES NOT CHANGE THE LIMIT OF LIABILITY APPLYING TO THE PROPERTY BEING REMOVED.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $1,000 for:

   a. the legal obligation of any insured to pay because of the theft or unauthorized use of credit cards or fund transfer cards issued to or registered in any insured's name. WE DO NOT COVER USE BY A RESIDENT OF YOUR HOUSEHOLD, A PERSON WHO HAS BEEN ENTRUSTED WITH THE CREDIT CARD OR FUND TRANSFER CARD, OR ANY PERSON, IF ANY INSURED HAS NOT COMPLIED WITH ALL TERMS AND CONDITIONS UNDER WHICH THE CREDIT CARD OR FUND TRANSFER CARD IS ISSUED.

   b. loss to any insured caused by forgery or alteration of any check or negotiable instrument; and

   c. loss to any insured through acceptance in good faith of counterfeit United States or Canadian paper currency.

   ALL LOSS RESULTING FROM A SERIES OF ACTS COMMITTED BY ANY ONE PERSON OR IN WHICH ANY ONE PERSON IS CONCERNED OR IMPLICATED IS CONSIDERED TO BE ONE LOSS.

   WE DO NOT COVER LOSS ARISING OUT OF BUSINESS PURSUITS OR DISHONESTY OF ANY INSURED.

   No deductible applies to this coverage.

   Defense:

   a. We may make any investigation and settle any claim or suit that we decide is appropriate. OUR OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT WE PAY FOR THE LOSS EQUALS OUR LIMIT OF LIABILITY.

   b. If a claim is made or a suit is brought against any insured for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense any insured or any insured's bank against any suit for the enforcement of payment under Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A - Dwelling.

   This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   THE LIMIT OF $1,000 IS THE MOST WE WILL PAY WITH RESPECT TO ANY ONE LOSS, REGARDLESS OF THE NUMBER OF ASSESSMENTS.

   Under Section I and II Conditions, Condition 1. Policy Period does not apply to this additional coverage.

8. **Collapse.** EXCEPT FOR LOSS CAUSED BY SETTLING, CRACKING, BULGING OR EXPANSION, we insure for risk of direct physical loss to covered property resulting from collapse of a building or any part of a building CAUSED ONLY BY ONE OR MORE OF THE FOLLOWING:

   a. hidden decay;

   b. hidden bird, insect or vermin damage;

   c. weight of contents, equipment, animals or people;

   d. weight of precipitation which collects on a roof;

   e. use of defective material or methods in alteration, construction, remodeling or renovation if the collapse occurs during the course of the alteration, construction, remodeling or renovation.

UNDER ITEMS a .- e., THIS COVERAGE DOES NOT INCLUDE LOSS TO AN AWNING, FENCE, PATIO, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, SWIMMING POOL, SPA, HOT TUB, UNDERGROUND PIPE, FLUE, DRAIN, DECKS, CESSPOOL, SEPTIC TANK, FOUNDATION, RETAINING WALL, BULKHEAD, PIER, WHARF OR DOCK UNLESS THE LOSS IS A DIRECT RESULT OF THE COLLAPSE OF A BUILDING.

f.  The specific Perils that follow:

(1) Fire or Lightning

(2) Windstorm or Hail

(3) Explosion

(4) Riot or civil commotion

(5) Aircraft including self-propelled missiles and spacecraft.

(6) Vehicles

(7) Smoke, meaning sudden and accidental damage from smoke.

(8) Theft

(9) Falling objects

(10)Weight of ice, snow or sleet

(11)Accidental discharge or overflow of water or steam from within a plumbing, drainage, heating, or air conditioning system or from within a household appliance.

(12)Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system, or an appliance for heating water.

(13)Freezing of a plumbing, drainage, heating, air conditioning system or of a household appliance.

(14)Sudden and accidental damage from artificially generated electrical current.

These perils apply to covered building and personal property for loss insured by this additional coverage:

THIS COVERAGE DOES NOT INCREASE ANY LIMIT OF LIABILITY APPLYING TO THE DAMAGED COVERED PROPERTY.

9.  Glass or Safety Glazing Material

We cover:

a.  the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b.  damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

THIS COVERAGE DOES NOT INCLUDE LOSS ON THE RESIDENCE PREMISES IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

THIS COVERAGE DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE DAMAGED PROPERTY.

10. Refrigerated Products Coverage

We will pay up to $500 for damage or loss to the contents of freezers or refrigerated units caused by a power interruption or a mechanical failure of the appliance located on the residence premises.

POWER INTERRUPTION SHALL NOT INCLUDE DISCONNECTION OF THE ELECTRICAL SERVICE TO THE APPLIANCE BY UNPLUGGING IT FROM THE ELECTRICAL SOURCE OR BY SWITCHING THE APPLIANCE OR ELECTRIC SOURCE OFF.

Mechanical failure means the breakdown or malfunction of the appliance compressor or its related components resulting in the loss of refrigeration.

WHEN YOU LEARN OF A POWER INTERRUPTION OR MECHANICAL FAILURE OCCURRENCE THAT MAY RESULT IN LOSS OR DAMAGE TO THE CONTENTS OF A FREEZER OR REFRIGERATED UNIT, YOU MUST USE ALL REASONABLE MEANS TO PROTECT THIS PROPERTY FROM FURTHER LOSS OR DAMAGE. IF YOU DO NOT PROTECT THESE REFRIGERATED PRODUCTS FROM FURTHER DAMAGE, THIS COVERAGE WILL NOT APPLY. A $100 DEDUCTIBLE APPLIES TO THIS COVERAGE.

11. Excavation Coverage

We will pay the reasonable cost INCURRED BY YOU UP TO $1,000, for the digging or excavation of the grounds on the residence premises to examine or unearth underground:

a.  Drains;

b.  Flues;

c.  Pipes;

d.  Tanks; or

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 50 of 141 PageID #: 54

e. Wiring

TO PREVENT DAMAGE OR RESTORE UTILITY SERVICE ON SUCH PREMISES TO THE:

a. DWELLING;

b. OTHER STRUCTURE(S); OR

c. CONTENTS.

WE WILL PAY ONLY FOR THE DIGGING OR EXCAVATION, REASONABLY NECESSARY UNDER THIS ADDITIONAL COVERAGE. LOSS OR DAMAGE TO THE:

a. DRAINS;

b. FLUES;

c. PIPES;

d. TANKS; OR

e. WIRING

IS NOT COVERED UNDER THIS ADDITIONAL COVERAGE.

WE WILL NOT PAY FOR:

a. ANY DIGGING OR EXCAVATION BEYOND THE UTILITY SHUT-OFF POINT;

b. TREES, SHRUBS, PLANTS OR LAWNS; OR

c. ANY REFILL OR BACKFILL.

12. Spillage or Residue Removal Coverage

We will pay up to $5,000 for the removal of

a. substances accidently spilled on; or

b. residue covering

an interior building item insured under Coverage A - Dwelling or Coverage B Other Structures.

THIS COVERAGE INCLUDES, BUT IS NOT LIMITED TO THE CLEANING, CORRECTION, MODIFICATION, REMOVAL, REPAIR OR RENOVATION OF THE INTERIOR BUILDING ITEM(S) ALTERED, COATED, COVERED OR DAMAGED BY SUCH SPILLAGE OR RESIDUE.

THIS COVERAGE IS LIMITED TO INTERIOR BUILDING ITEMS. WE DO NOT COVER ANY ITEM LOCATED OUTSIDE THE EXTERIOR WALLS OF THE BUILDING OR BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS.

WE WILL NOT PAY FOR SPILLAGE OR RESIDUE REMOVAL IF THE SPILLAGE OR RESIDUE WAS CAUSED BY A PERIL EXCLUDED OR LIMITED BY THIS POLICY. HOWEVER COVERAGE EXCEPTION C. 7.e. UNDER SECTION I - COVERAGE A. DWELLING and COVERAGE B - OTHER STRUCTURES PERILS INSURED AGAINST DOES NOT APPLY TO THIS ADDITIONAL COVERAGE.

This coverage is additional coverage.

## SECTION I - PERILS INSURED AGAINST

COVERAGE A DWELLING AND - COVERAGE B OTHER STRUCTURES

We insure against risks of direct physical loss to property described in COVERAGE A and B, EXCEPT:

A. WE DO NOT COVER ANY LOSS THAT RESULTS FROM A PERIL EXCLUDED OR LIMITED BY THIS POLICY, EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS.

B. WE DO NOT COVER ANY LOSS OR DAMAGE TO YOUR DWELLING OR OTHER STRUCTURES CAUSED DIRECTLY OR INDIRECTLY, CONTRIBUTED TO, OR AGGRAVATED BY DEFECTIVE, INADEQUATE, OR FAULTY PLANNING, CONSTRUCTION, OR MAINTENANCE OF ANY PROPERTY WHETHER ON OR OFF THE insured location RESULTING FROM:

DEFECTIVE, INADEQUATE, OR FAULTY:

1. DEVELOPMENT, SUBDIVIDING, SURVEYING, OR SITING; INCLUDING GRADING, EXCAVATION, AND SOIL COMPACTION;

2. SPECIFICATIONS, BUILDING CODES OR THEIR ENFORCEMENT OR ZONING REQUIREMENTS;

3. ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION, OR REMODELING;

4. MATERIALS RECOMMENDED, SELECTED, SUPPLIED, OR USED IN ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION OR REMODELING;

5. MAINTENANCE.

YOU MAY NOT CLAIM ANY OF THE SITUATIONS INCLUDED IN "B." ABOVE AS A CAUSE OF LOSS. THESE ARE NOT PERILS WE INSURE AGAINST. Ensuing perils, NOT OTHERWISE EXCLUDED OR LIMITED BY THIS POLICY are covered.

C. WE DO NOT COVER:

1. LOSSES EXCLUDED UNDER SECTION I - EXCLUSIONS.

2. LOSS CAUSED BY FREEZING OF A PLUMBING, DRAINAGE, HEATING, AIR

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 51 of 141 PageID #: 55

CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR OF A HOUSEHOLD APPLIANCE, OR BY DISCHARGE, LEAKAGE OR OVERFLOW FROM WITHIN THE SYSTEM OR APPLIANCE CAUSED BY FREEZING. THIS EXCLUSION APPLIES ONLY WHILE THE DWELLING IS VACANT, UNOCCUPIED OR BEING CONSTRUCTED UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING, OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

3. LOSS CAUSED BY FREEZING, THAWING, PRESSURE OR WEIGHT OF WATER, SNOW OR ICE, WHETHER DRIVEN BY WIND OR NOT TO A:

a. FENCE, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, PATIO, SWIMMING POOL, SPA, OR HOT TUB;

b. FOUNDATION, RETAINING WALL, BULKHEAD; OR

c. PIER, DECK, WHARF OR DOCK

4. LOSS CAUSED BY THEFT IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED;

5. LOSS CAUSED BY VANDALISM AND MALICIOUS MISCHIEF OR BREAKAGE OF GLASS AND SAFETY GLAZING MATERIALS IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT;

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;

7. LOSS CAUSED BY:

a. WEAR AND TEAR, MARRING, DETERIORATION, OR FAILURE TO MAINTAIN;

b. INHERENT VICE, LATENT DEFECT, MECHANICAL BREAKDOWN;

c. SMOG, RUST OR OTHER CORROSION, MOLD, FUNGUS, WET OR DRY ROT;

d. SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS;

e. DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS UNLESS THE DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE IS ITSELF CAUSED BY A PERIL INSURED AGAINST UNDER COVERAGE C OF THIS POLICY. POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT, INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE. WASTE INCLUDES MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED EXCEPT AS PROVIDED BY SECTION I - ADDITIONAL COVERAGE 12. Spillage or Residue Removal Coverage;

f. SETTLING, CRACKING, SHRINKING, BULGING OR EXPANSION OF DRIVEWAYS, ROADWAYS, WALKWAYS, PAVEMENTS, PATIOS, FOUNDATIONS, WALLS, FLOORS, ROOFS OR CEILINGS;

g. BIRDS, VERMIN, RODENTS OR INSECTS; OR

h. ANIMALS OWNED OR KEPT BY ANY INSURED.

If any of these cause water to suddenly escape from a plumbing, heating, air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. HOWEVER, "TEARING OUT" DOES NOT INCLUDE ANY DIGGING OR EXCAVATION FOR THE EXAMINATION OF UNDERGROUND DRAINS, FLUES, PIPES, TANKS OR WIRING, EXCEPT AS PROVIDED BY SECTION I - ADDITIONAL COVERAGES - 11. Excavation Coverage. WE DO NOT COVER LOSS TO THE SYSTEM OR APPLIANCE FROM WHICH THIS WATER ESCAPED.

8. LOSS CAUSED BY COLLAPSE OTHER THAN PROVIDED AS ADDITIONAL COVERAGE 8.

UNDER ITEMS B. AND C. 2 THROUGH 7 ANY ENSUING LOSS NOT EXCLUDED IS COVERED.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 52 of 141 PageID #: 56

COVERAGE C PERSONAL - PROPERTY

We insure for direct physical loss to property described in Coverage C caused only by the perils named below, unless excepted or excluded by SECTION I EXCLUSIONS:

1. Fire or lightning.

2. Windstorm or hail.

   THIS PERIL DOES NOT INCLUDE LOSS TO THE PROPERTY CONTAINED IN A BUILDING BY RAIN, SNOW, SLEET, SAND OR DUST UNLESS THE DIRECT FORCE OF WIND OR HAIL DAMAGES THE BUILDING CAUSING AN OPENING IN A ROOF OR WALL AND THE RAIN, SNOW, SLEET, SAND OR DUST ENTERS THROUGH THIS OPENING.

   THIS PERIL INCLUDES LOSS TO WATERCRAFT AND THEIR TRAILERS, FURNISHINGS, EQUIPMENT, AND OUTBOARD ENGINES OR MOTORS, ONLY WHILE INSIDE A FULLY ENCLOSED BUILDING.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT:

   a. COMMITTED BY ANY INSURED, OR ANY PERSON RENTING THE RESIDENCE PREMISES;

   b. IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED; OR

   c. FROM ANY PART OF A RESIDENCE PREMISES RENTED FOR MORE THAN 60 DAYS ANNUALLY BY AN INSURED TO OTHER THAN AN INSURED.

THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT THAT OCCURS AWAY FROM THE RESIDENCE PREMISES OF:

   a. PROPERTY WHILE AT ANY OTHER RESIDENCE OWNED, RENTED TO, OR OCCUPIED BY ANY INSURED, EXCEPT WHILE ANY INSURED IS TEMPORARILY RESIDING THERE. PROPERTY OF A STUDENT WHO IS AN INSURED IS COVERED WHILE AT A RESIDENCE AWAY FROM HOME IF THE STUDENT HAS BEEN THERE AT ANY TIME DURING THE 45 DAYS IMMEDIATELY BEFORE THE LOSS;

   b. WATERCRAFT, INCLUDING THEIR FURNISHINGS, EQUIPMENT AND OUTBOARD ENGINES OR MOTORS; OR

   c. TRAILERS AND CAMPERS.

10. Falling Objects

    THIS PERIL DOES NOT INCLUDE LOSS TO PROPERTY CONTAINED IN A BUILDING UNLESS THE ROOF OR AN OUTSIDE WALL OF THE BUILDING IS FIRST DAMAGED BY A FALLING OBJECT. DAMAGE TO THE FALLING OBJECT ITSELF IS NOT INCLUDED.

11. Weight of ice, snow or sleet which causes damage to property contained in a building.

12. Accidental discharge or overflow of water or steam from within a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or from within a household appliance.

    THIS PERIL DOES NOT INCLUDE LOSS:

    a. TO THE SYSTEM OR APPLIANCE FROM WHICH THE WATER OR STEAM ESCAPED;

    b. CAUSED BY OR RESULTING FROM FREEZING, except AS PROVIDED IN THE PERIL FREEZING (14. FREEZING) BELOW; OR

    c. ON THE RESIDENCE PREMISES CAUSED BY ACCIDENTAL DISCHARGE OR OVERFLOW WHICH OCCURS OFF THE RESIDENCE PREMISES.

13. Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

    WE DO NOT COVER LOSS CAUSED BY OR RESULTING FROM FREEZING UNDER THIS PERIL.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 53 of 141 PageID #: 57

14. Freezing of a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or of a household appliance. THIS PERIL DOES NOT INCLUDE LOSS ON THE RESIDENCE PREMISES WHILE THE DWELLING IS UNOCCUPIED, UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING; OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

15. Sudden and accidental damage from artificially generated electrical current. THIS PERIL DOES NOT INCLUDE LOSS TO A TUBE, TRANSISTOR OR SIMILAR ELECTRONIC COMPONENT.

---

## SECTION I - EXCLUSIONS

WE DO NOT COVER LOSS RESULTING DIRECTLY OR INDIRECTLY FROM:

1. ORDINANCE OR LAW, MEANING ESTABLISHING, ENFORCEMENT OF, OR THE FAILURE TO ESTABLISH OR ENFORCE ANY ORDINANCE, REGULATION OR LAW REGULATING THE CONSTRUCTION, REPAIR, DEMOLITION OR ZONING OF A BUILDING OR OTHER STRUCTURE, UNLESS SPECIFICALLY PROVIDED UNDER THIS POLICY.

2. EARTH MOVEMENT, MEANING ANY LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO, OR AGGRAVATED BY EVENTS THAT INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING:

   a. EARTHQUAKE AND EARTHQUAKE AFTERSHOCKS

   b. VOLCANO ACTIVITY INCLUDING BUT NOT LIMITED TO:

      1. VOLCANIC ERUPTION;

      2. VOLCANIC EXPLOSION;

      3. EFFUSION OF VOLCANIC MATERIAL; OR

      4. LAVA FLOW;

   c. MUDSLIDE INCLUDING, MUDFLOW, DEBRIS FLOW, LANDSLIDE, AVALANCHE, OR SEDIMENT;

   d. SINKHOLE;

   e. SUBSIDENCE;

   f. EXCAVATION COLLAPSE;

   g. EROSION;

   h. ANY EXPANSION, SHIFTING, RISING, SINKING, CONTRACTING, OR SETTLING OF THE EARTH, SOIL, OR LAND.

   THIS EXCLUSION APPLIES WHETHER OR NOT THE EARTH, SOIL, OR LAND IS COMBINED OR MIXED WITH WATER OR ANY OTHER LIQUID OR MATERIAL NATURAL OR MAN-MADE.

However, loss caused directly by the specific perils:

a. fire;

b. explosion;

c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

d. theft,

following any EARTH MOVEMENT is covered.

3. WATER DAMAGE, MEANING:

   a. FLOOD, SURFACE WATER, WAVES, WAVE WASH, TIDAL WATER, OVERFLOW OF A BODY OF WATER, OR SPRAY FROM ANY OF THESE, WHETHER OR NOT A RESULT OF PRECIPITATION; OR DRIVEN BY WIND;

   b. WATER

      (1) WHICH BACKS UP THROUGH SEWERS AND DRAINS;

      (2) WHICH OVERFLOWS FROM A SUMP; OR

   c. WATER BELOW THE SURFACE OF THE GROUND, INCLUDING WATER:

      (1) WHICH EXERTS PRESSURE ON, OR SEEPS OR LEAKS THROUGH A BUILDING, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, FOUNDATION, SPA, HOT TUB, SWIMMING POOL OR OTHER STRUCTURE;

      (2) WHICH CAUSES EARTH MOVEMENT.

   ALL LOSS FROM WATER DAMAGE IS EXCLUDED NO MATTER IF LOSS OR DAMAGE WAS CAUSED BY, OR AGGRAVATED BY ANY OTHER PERIL IN ANY SEQUENCE. However, direct loss by fire, explosion or theft resulting from WATER DAMAGE will be covered.

4. POWER FAILURE, MEANING THE FAILURE OF POWER OR OTHER UTILITY SERVICE IF THE FAILURE TAKES PLACE OFF THE RESIDENCE PREMISES. IF A PERIL INSURED AGAINST

ENSUES ON THE RESIDENCE PREMISES, WE WILL PAY ONLY FOR LOSS CAUSED BY THE ENSUING PERIL.

5. **NEGLECT**, MEANING NEGLECT OF THE INSURED TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE TIME OF A LOSS, OR WHEN PROPERTY IS ENDANGERED BY A PERIL INSURED AGAINST.

6. **WAR**, INCLUDING UNDECLARED WAR, CIVIL WAR, INSURRECTION, REBELLION, REVOLUTION, WARLIKE ACT BY A MILITARY FORCE OR MILITARY PERSONNEL, DESTRUCTION OR SEIZURE OR USE FOR A MILITARY PURPOSE, AND INCLUDING ANY CONSEQUENCE OF ANY OF THESE. DISCHARGE OF A NUCLEAR WEAPON SHALL BE DEEMED A WARLIKE ACT EVEN IF ACCIDENTAL.

7. **NUCLEAR HAZARD**, TO THE EXTENT SET FORTH IN THE NUCLEAR HAZARD CLAUSE OF SECTION I - CONDITIONS.

8. **INTENTIONAL LOSS**, MEANING ANY LOSS ARISING OUT OF ANY ACT COMMITTED:

   (1) BY OR AT THE DIRECTION OF AN INSURED; and

   (2) WITH THE INTENT TO CAUSE A LOSS.

   LOSS OR DAMAGE EXCLUSIONS 1-8 APPLY ABOVE EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS. Ensuing loss specifically accepted by the terms of this policy is covered.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE:

   a. TO THE INSURED FOR AN AMOUNT GREATER THAN THE INSURED'S INTEREST; nor

   b. FOR MORE THAN THE APPLICABLE LIMIT OF LIABILITY.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE NOTICE TO US OR OUR/YOUR AGENT;

   b. IN ADDITION, GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE, A REPORT TO THE POLICE, IF THE LOSS IS THEFT;

   c. NOTIFY THE CREDIT CARD COMPANY OR FUND TRANSFER CARD COMPANY IN THE CASE OF LOSS UNDER ADDITIONAL COVERAGE - 6. CREDIT CARD, FUND TRANSFER CARD COVERAGE;

   d. (1) PROTECT THE PROPERTY FROM FURTHER DAMAGE;

   (2) MAKE REASONABLE AND NECESSARY REPAIRS TO PROTECT THE PROPERTY; AND

   (3) KEEP AN ACCURATE RECORD OF REPAIR EXPENDITURES;

   e. PREPARE AN INVENTORY OF DAMAGED PERSONAL PROPERTY SHOWING IN DETAIL THE:

   (1) QUANTITY;

   (2) DESCRIPTION;

   (3) ACTUAL CASH VALUE; AND

   (4) AMOUNT OF LOSS.

   ATTACH TO THE INVENTORY ALL:

   (1) BILLS;

   (2) RECEIPTS; AND

   (3) RELATED DOCUMENTS THAT SUBSTANTIATE THE FIGURES IN THE INVENTORY;

   f. AS OFTEN AS WE REASONABLY REQUIRE:

   (1) SHOW THE DAMAGED PROPERTY;

   (2) PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES; AND

   (3) SUBMIT TO EXAMINATION UNDER OATH, WHILE NOT IN THE PRESENCE OF ANY OTHER INSURED AND SIGN THE SAME;

   g. SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH, TO THE BEST OF YOUR KNOWLEDGE AND BELIEF:

   (1) THE TIME AND CAUSE OF LOSS;

   (2) INTEREST OF THE INSURED AND ALL OTHERS IN THE PROPERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY;

   (3) OTHER INSURANCE WHICH MAY COVER THE LOSS;

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 55 of 141 PageID #: 59

(4) CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;

(5) SPECIFICATIONS OF ANY DAMAGED BUILDING AND DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;

(6) AN INVENTORY OF DAMAGED PERSONAL PROPERTY DESCRIBED IN 2e. ABOVE;

(7) RECEIPTS FOR ADDITIONAL LIVING EXPENSES INCURRED AND RECORDS SUPPORTING THE FAIR RENTAL VALUE LOSS;

(8) EVIDENCE OR AFFIDAVIT SUPPORTING A CLAIM UNDER THE CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE, STATING THE AMOUNT AND CAUSE OF LOSS.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. PERSONAL PROPERTY AND STRUCTURES THAT ARE NOT BUILDINGS AT ACTUAL CASH VALUE AT THE TIME OF LOSS, BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

   b. CARPETING, DOMESTIC APPLIANCES, AWNINGS, OUTDOOR ANTENNAS AND OUTDOOR EQUIPMENT, WHETHER OR NOT ATTACHED TO BUILDINGS, AT ACTUAL CASH VALUE AT THE TIME OF LOSS BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

   c. BUILDINGS UNDER COVERAGE A OR B AT REPLACEMENT COST WITHOUT DEDUCTION FOR DEPRECIATION, SUBJECT TO THE FOLLOWING:

      (1) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS 80% OR MORE OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE COST OF REPAIR OR REPLACEMENT, WITHOUT DEDUCTION FOR DEPRECIATION, BUT NOT EXCEEDING THE SMALLEST OF THE FOLLOWING AMOUNTS:

         (a) THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

         (b) THE REPLACEMENT COST OF THAT PART OF THE BUILDING DAMAGED FOR EQUIVALENT CONSTRUCTION AND USE ON THE SAME PREMISES; OR

         (c) THE AMOUNT ACTUALLY AND NECESSARILY SPENT TO REPAIR OR REPLACE THE DAMAGED BUILDING.

      (2) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS LESS THAN 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE LARGER OF THE FOLLOWING AMOUNTS, BUT NOT EXCEEDING THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

         (a) THE ACTUAL CASH VALUE OF THAT PART OF THE BUILDING DAMAGED; OR

         (b) THAT PROPORTION OF THE COST TO REPAIR OR REPLACE, WITHOUT DEDUCTION FOR DEPRECIATION, OF THAT PART OF THE BUILDING DAMAGED, WHICH THE TOTAL AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING BEARS TO 80% OF THE REPLACEMENT COST OF THE BUILDING.

      (3) IN DETERMINING THE AMOUNT OF INSURANCE REQUIRED TO EQUAL 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, YOU SHALL DISREGARD THE VALUE OF EXCAVATIONS, FOUNDATIONS, PIERS AND OTHER SUPPORTS WHICH ARE BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, WHICH ARE BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS, AND UNDERGROUND FLUES, PIPES, WIRING AND DRAINS.

      (4) WE WILL PAY NO MORE THAN THE ACTUAL CASH VALUE OF THE DAMAGE UNTIL ACTUAL REPAIR OR REPLACEMENT IS COMPLETE. ONCE ACTUAL REPAIR IS COMPLETE, we will settle the loss according to the provisions of c.(1) and c.(2) above. However,

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 56 of 141 PageID #: 60

IF THE COST TO REPAIR OR RE-PLACE IS LESS THAN $1,000 we will settle the loss ACCORDING TO THE PROVISIONS OF c. (1) and c. (2) above, whether or not actual repair or replacement is complete.

(5) YOU MAY DISREGARD THE RE-PLACEMENT COST LOSS SETTLE-MENT PROVISIONS AND MAKE CLAIM UNDER THIS POLICY FOR LOSS OR DAMAGE TO BUILDINGS ON AN AC-TUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AF-TER LOSS FOR ANY ADDITIONAL LI-ABILITY ON A REPLACEMENT COST BASIS.

4. Loss to a Pair or Set. In case of loss to a pair or set we may elect to:

a. REPAIR OR REPLACE ANY PART TO RE-STORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

b. PAY THE DIFFERENCE BETWEEN AC-TUAL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

5. Glass Replacement. Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impar-tial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to se-lect an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the ap-praisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each ap-praiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. Other Insurance. If a loss covered by this policy is also covered by other insurance, WE WILL PAY ONLY THE PROPORTION OF THE LOSS THAT THE LIMIT OF LIABILITY THAT APPLIES

UNDER THIS POLICY BEARS TO THE TOTAL AMOUNT OF INSURANCE COVERING THE LOSS.

8. Suit Against Us. No action shall be brought UN-LESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS AND THE ACTION IS STARTED WITHIN ONE YEAR AFTER THE OCCURRENCE CAUSING LOSS OR DAMAGE.

9. Our Option. If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

10. Loss Payment. We will adjust all losses with you. We will pay you UNLESS SOME OTHER PER-SON NAMED IN THE POLICY IS LEGALLY EN-TITLED TO RECEIVE PAYMENT. Loss will be payable 60 days after we receive your proof of loss and;

a. Reach agreement with you; or

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

11. Abandonment of Property. We need not accept any property abandoned by any insured.

12. Mortgage Clause. The word "mortgagee" in-cludes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as inter-ests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occu-pancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium;

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions re-lating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date of cancellation or nonrenewal takes place.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 57 of 141 PageID #: 61

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. No Benefit to Bailee. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. Nuclear Hazard Clause.

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. LOSS CAUSED BY THE NUCLEAR HAZARD SHALL NOT BE CONSIDERED LOSS CAUSED BY FIRE, EXPLOSION, OR SMOKE, WHETHER THESE PERILS ARE SPECIFICALLY NAMED IN OR OTHERWISE, INCLUDED WITHIN THE PERILS INSURED AGAINST IN SECTION I.

c. THIS POLICY DOES NOT APPLY UNDER SECTION I TO LOSS CAUSED DIRECTLY OR INDIRECTLY BY NUCLEAR HAZARD, EXCEPT THAT DIRECT LOSS BY FIRE RE-

SULTING FROM THE NUCLEAR HAZARD IS COVERED.

15. Inflation Protection Coverage

a. During the term of this policy, we will increase the limit of liability for Coverage A monthly at the rate of 1/12 of the annual residential building cost percentage change factors as determined by our cost calculation method which is based on a nationally recognized construction cost index.

b. The limit of liability shown on the Declarations Page for Coverage A will be revised yearly at each renewal to reflect any changes in building costs during the policy period as determined in paragraph 1 above. Any adjustment in premium resulting from this change will be made on the basis of rates in use by us at the time the change is made. You have the right to refuse this change prior to the renewal date by contacting your agent or us.

16. Recovered Property. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F-MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except residence employees. As to others, this coverage applies only:

a. to a person on the insured location with the permission of any insured; or

b. to a person off the insured location, if the bodily injury:

(1) arises out of a condition on the insured location or the ways immediately adjoining;

(2) is caused by the activities of any insured;

(3) is caused by a residence employee in the course of the residence employee's employment by any insured; or

(4) is caused by an animal owned by or in the care of any insured.

---

## SECTION II - EXCLUSIONS

1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

   a. which is expected or intended by any insured;

   b. Arising out of or in connection with a business engaged in by any insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the business;

   NOTE: The furnishing of home day care services for

   (1) a fee, or

   (2) other compensation

   by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

   c. Arising out of the rental or holding for rental of any premises by any insured. This exclusion does not apply to the rental or holding for rental of an insured location:

      (1) on an occasional basis if used only as a residence.

      (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) in part, as an office, school, studio or private garage;

   d. arising out of the rendering or failing to render professional services;

   e. arising out of a premise:

      (1) owned by any insured;

      (2) rented to any insured; or

      (3) rented to others by any insured;

      that is not an insured location;

   f. arising out of:

      (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any insured;

   (2) the entrustment by any insured of a motor vehicle or any other motorized land conveyance to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance.

   (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

      (a) not owned by any insured; or

      (b) owned by any insured and on an insured location.

   (3) a motorized golf cart when used to play golf on a golf course.

   (4) a vehicle or conveyance not subject to motor vehicle registration which is:

      (a) used to service any insured's residence;

      (b) designed for assisting the handicapped; or

      (c) in dead storage on an insured location.

   g. arising out of:

      (1) the ownership, maintenance, use, loading or unloading of watercraft described below;

      (2) the entrustment by any insured of a watercraft described below to any person; or

      (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

      Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

      (1) that are not sailing vessels and are powered by:

Case 3:14-cv-00001  Document 1-1  Filed 01/02/14  Page 59 of 141 PageID #: 63

(a) inboard or inboard-out drive engine or motor power of 50 horsepower or less not owned by any insured;

(b) inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to any insured;

(c) one or more outboard engines or motors with 25 total horsepower or less;

(d) one or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by any insured;

(e) outboard engines or motors of more than 25 total horsepower owned by any insured if:

(i) you acquire them prior to the policy period; and

(a) you declare them at policy inception;

(b) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(ii) you acquire them during the policy period.

This coverage applies for the policy period.

(2) that are sailing vessels, with or without auxiliary power:

(a) less than 26 feet in overall length;

(b) 26 feet or more in overall length not owned by or rented to any insured.

(3) that are stored;

h. rising out of:

(1) the ownership, maintenance, use, loading or unloading of any aircraft;

(2) the entrustment by any insured of an aircraft to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

Exclusions e, f, g and h do not apply to bodily injury to any residence employee arising

out of and in the course of the residence employee's employment by any insured.

I. caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) undeclared war, civil war, insurrection, rebellion or revolution;

(2) warlike act by military force or military personnel; or

(3) destructive seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a war-like act even if accidental;

j. which arises out of the transmission of a communicable disease by any insured.

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of any Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2. Coverage E - Personal Liability, does not apply to:

a. Liability:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an insured location; or

(b) where the liability of others is assumed by the insured prior to an occurrence;

unless excluded in (1) above or elsewhere in this policy;

b. property damage to property owned by any insured;

c. property damage to property rented to, occupied or used by or in the care of any insured. This exclusion does not apply to

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 60 of 141 PageID #: 64

property damage caused by fire, smoke or explosion;

d. bodily injury to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided;

by the insured under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

e. bodily injury or property damage for which an insured under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is a one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. bodily injury to any person who is related by blood, marriage, or adoption to a covered person and who is a resident of the household of that person; or bodily injury to you.

3. Coverage F - Medical Payments to Others, does not apply to bodily injury:

a. to a residence employee if the bodily injury:

(1) occurs off the insured location; and

(2) does not arise out of or in the course of the residence employee's employment by an insured;

b. to any person eligible to receive benefits:

(1) voluntarily provided; or

(2) required to be provided;

under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

c. from any:

(1) nuclear reaction;

(2) nuclear radiation; or

(3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) any consequence of any of these.

d. to any person, other than a residence employee of an insured, regularly residing on any part of the insured location.

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

a. expenses incurred by us and costs taxed against any insured in any suit we defend;

b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage E. We are not obligated to apply for or furnish any bond;

c. reasonable expenses incurred by any insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the

judgment which does not exceed the limit of liability that applies.

2. First Aid Expenses. We will pay expenses for first aid to others incurred by any insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. Damage to Property of Others. We will pay at replacement cost, up to $500 per occurrence for property damage to property of others caused by any insured. We will not pay for property damage:

a. to the extent of any amount recoverable under Section I of this policy;

b. caused intentionally by any insured who is 13 years of age or older;

c. to property owned by any insured;

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 61 of 141 PageID #: 65

d. to property owned by or rented to a tenant of any insured, or a resident in your household; or

e. arising out of:

(1) a business engaged in by any insured;

(2) any act or omission in connection with a premises owned, rented or controlled by any insured, other than the insured location; or

(3) the ownership, maintenance, or use of aircraft, watercraft, motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an insured.

4. **Loss Assessment.** We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. **bodily injury or property damage** not excluded under Section II of this policy; or

b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) the director, officer or trustee is elected by the members of the corporation or association of property owners; and

(2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E Personal Liability Exclusion 2.a.(1);

2. Under Section I & II - Conditions, Condition 1. Policy Period.

---

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one occurrence will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of insureds, claims made, or persons injured. All **bodily injury and property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one occurrence.

   Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

3. **Duties After Loss.** In case of an accident or occurrence, the insured shall perform the following duties that apply. You will help us by seeing that these duties are performed:

a. give written notice to us or our agent as soon as is practical, which sets forth:

(1) the identity of the policy and insured;

(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

(3) names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence;

c. at our request, help us

(1) to make settlement;

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 62 of 141 PageID #: 66

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any insured;

(3) with the conduct of suits and attend hearings and trials;

(4) to secure and give evidence and to obtain the attendance of witnesses;

d. At our option, either:

(1) Submit to us, within 60 days after we request, your signed, sworn statement of loss; or

(2) Submit to an oral examination under oath setting forth to the best of your knowledge and belief:

    (a) the time and cause of loss;

    (b) a description of the accident or occurrence; and;

    (c) any other information we may reasonably require.

e. under this coverage - Damage to the Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if within the insured's control;

f. the insured will not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of bodily injury.

4. Duties of an Injured Person - Coverage F - Medical Payments to Others. The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as practical;

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. Payment of Claim - Coverage F - Medical Payments to Others. Payment under this coverage is not an admission of liability by any insured or us.

6. Suit Against Us. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any insured. Also, no action with respect to Coverage E can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. Bankruptcy of any Insured. Bankruptcy or insolvency of any insured shall not relieve us of any of our obligations under this policy.

8. Other Insurance - Coverage E - Personal Liability. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. POLICY PERIOD. THIS POLICY APPLIES ONLY TO LOSS UNDER SECTION I OR BODILY INJURY OR PROPERTY DAMAGE UNDER SECTION II, WHICH OCCURS DURING THE POLICY PERIOD.

   YOU MAY CONTINUE THIS POLICY, SUBJECT TO OUR CONSENT, FOR SUCCESSIVE PERIODS BY PAYING REQUIRED PREMIUMS WHEN DUE.

2. CONCEALMENT OR FRAUD. THE ENTIRE POLICY WILL BE VOID IF, WHETHER BEFORE OR AFTER A LOSS, ANY INSURED HAS:

   a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

   b. ENGAGED IN FRAUDULENT CONDUCT; OR

   c. MADE FALSE STATEMENTS; RELATING TO THIS INSURANCE.

3. Liberalization Clause. If we make a change which broadens coverage under this edition of our policy WITHOUT ADDITIONAL PREMIUM CHARGE, that change will automatically apply to your insurance as of the date we implement the change in your state PROVIDED THAT THIS DATE FALLS WITHIN 60 DAYS PRIOR TO OR DURING THE POLICY PERIOD STATED IN THE DECLARATIONS. THIS LIBERALIZATION CLAUSE DOES NOT APPLY TO CHANGES IMPLEMENTED THROUGH INTRODUCTION OF A SUBSEQUENT EDITION OF OUR POLICY.

4. Cancellation.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 63 of 141 PageID #: 67

a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b. WE MAY CANCEL THIS POLICY FOR THE REASONS STATED IN THIS CONDITION BY NOTIFYING YOU IN WRITING OF THE DATE CANCELLATION TAKES EFFECT. THIS CANCELLATION NOTICE MAY BE DELIVERED TO YOU, OR MAILED TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

   (1) WHEN YOU HAVE NOT PAID THE PREMIUM, WHETHER PAYABLE TO US OR TO OUR AGENT OR UNDER ANY FINANCE OR CREDIT PLAN, WE MAY CANCEL AT ANY TIME BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (2) WHEN THIS POLICY HAS BEEN IN EFFECT FOR LESS THAN 60 DAYS AND IS NOT A RENEWAL WITH US, WE MAY CANCEL FOR ANY REASON BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (3) WHEN THIS POLICY HAS BEEN IN EFFECT FOR 60 DAYS OR MORE, OR AT ANY TIME IF IT IS A RENEWAL WITH US, WE MAY CANCEL IF THERE HAS BEEN A MATERIAL MISREPRESENTATION OF FACT WHICH IF KNOWN TO US WOULD HAVE CAUSED US NOT TO ISSUE THE POLICY OR IF THE RISK HAS CHANGED SUBSTANTIALLY SINCE THE POLICY WAS ISSUED. THIS CAN BE DONE BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (4) WHEN THIS POLICY IS WRITTEN FOR A PERIOD LONGER THAN ONE YEAR, WE MAY CANCEL FOR ANY REASON AT ANNIVERSARY BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

c. WHEN THIS POLICY IS CANCELLED, THE PREMIUM FOR THE PERIOD FROM THE DATE OF CANCELLATION TO THE EXPIRATION DATE WILL BE REFUNDED. WHEN YOU REQUEST CANCELLATION IN THE FIRST POLICY YEAR, THE RETURN PREMIUM WILL BE BASED ON OUR SHORT-RATE TABLE. OTHERWISE, THE RETURN PREMIUM WILL BE PRO RATA.

d. IF THE RETURN PREMIUM IS NOT REFUNDED WITH THE NOTICE OF CANCELLATION OR WHEN THIS POLICY IS RETURNED TO US, WE WILL REFUND IT WITHIN A REASONABLE TIME AFTER THE DATE CANCELLATION TAKES EFFECT.

5. NON-RENEWAL. WE MAY ELECT NOT TO RENEW THIS POLICY. WE MAY DO SO BY DELIVERING TO YOU, OR MAILING TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS WRITTEN NOTICE AT LEAST 30 DAYS BEFORE THE EXPIRATION DATE OF THIS POLICY. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

6. Assignment. ASSIGNMENT OF THIS POLICY SHALL NOT BE VALID UNLESS WE GIVE OUR WRITTEN CONSENT.

7. Subrogation. Any insured may waive in writing before a loss all rights of recovery against any person. IF NOT WAIVED, WE MAY REQUIRE AN ASSIGNMENT OF RIGHTS OF RECOVERY FOR A LOSS TO THE EXTENT THAT PAYMENT IS MADE BY US.

   IF AN ASSIGNMENT IS SOUGHT, ANY INSURED SHALL SIGN AND DELIVER RELATED PAPERS AND COOPERATE WITH US IN ANY REASONABLE MANNER.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

8. Death. If any person named in the Declarations or the spouse, if a resident of the same household dies;

   a. we insure the legal representative of the deceased BUT ONLY WITH RESPECT TO THE PREMISES AND PROPERTY OF THE DECEASED COVERED UNDER THE POLICY AT THE TIME OF DEATH;

   b. INSURED INCLUDES:

      (1) ANY MEMBER OF YOUR HOUSEHOLD WHO IS AN INSURED AT THE TIME OF YOUR DEATH, BUT ONLY WHILE A RESIDENT OF THE RESIDENCE PREMISES; AND

      (2) WITH RESPECT TO YOUR PROPERTY, THE PERSON HAVING PROPER TEMPORARY CUSTODY OF THE PROPERTY UNTIL APPOINTMENT AND QUALIFICATION OF A LEGAL REPRESENTATIVE.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 64 of 141 PageID #: 68

9. PREMIUM. THE PREMIUM STATED IN THE DECLARATIONS IS THE INITIAL PREMIUM FOR THIS POLICY. ON EACH RENEWAL, CONTINUATION OR ANNIVERSARY OF THE EFFECTIVE DATE OF THIS POLICY, THE PREMIUM SHALL BE COMPUTED BY US IN ACCORDANCE WITH RULES AND RATES IN EFFECT.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 65 of 141 PageID #: 69

This policy is signed for the company which is the insurer under this policy.

*Wendy C. Sky*

Wendy C. Skjerven
Corporate Secretary

*Gregory C. Toczydlowski*

Gregory C. Toczydlowski
President
Personal Insurance

IN WITNESS WHEREOF, the Company has executed and attested these presents.

PL-9107 8-97



AL PHILLIPS INS AGCY
3343 PERIMETER HILL DR STE 214
NASHVILLE, TN 37211
00247

**TRAVELERS**

June 14, 2010

TIMOTHY K & JENNIFER A HOLLAHAN
6525 CURRYWOOD DR
NASHVILLE TN 37205

Dear Policyholder,

Thank you for allowing us to continue servicing your Homeowners policy. We value you
as a customer and appreciate your loyalty.

Enclosed, you will find your renewal Policy Declarations and related documents.

CONTAINED IN THIS PACKAGE IS ONE OR MORE IMPORTANT NOTICES THAT OUTLINE CHANGES
TO YOUR POLICY. THE CHANGES COULD INCLUDE ENHANCEMENTS, CLARIFICATIONS OR
REDUCTIONS IN COVERAGE. PLEASE REVIEW THE NOTICES CAREFULLY.

After you have reviewed this entire package, please store it in a safe place with your original policy.

If you have any questions concerning your policy, please contact your agent at the telephone number displayed
on the attached Declarations. We want to be sure that you completely understand your policy and the protection
we provide.

We appreciate your business and look forward to servicing your insurance needs.

Travelers

PL-10750  12-02

001800/00247 F3115AH4 7133 06/14/10

## IMPORTANT NOTICE

## POLICYHOLDERS NOTICE OF COVERAGE CHANGE

Thank you for insuring your home with Travelers. Your renewal is enclosed, please take a few moments to read it carefully as your coverage has changed.

Under Section 1- Exclusions, we are clarifying the policy language relative to the exclusion for flood.

If your policy has Increased Loss Assessment Coverage, we have broadened your coverage by eliminating the $1,000 Special Limit which limited coverage to $1,000 if the assessment was the result of a deductible in the policy purchased by a corporation or association of property owners.

If you have questions, please contact your agent or insurance representative.

Thank you for trusting Travelers for your insurance needs.

This brief summary does not change any provisions of the actual policy. There are exclusions, limitations, and conditions that apply to each coverage. If there is any conflict between this policy and this summary, the provisions of the policy will apply.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 69 of 141 PageID #: 73

## IMPORTANT BILLING NOTICE

This notice contains important information about our billing options and fees.

You have chosen to have your insurance premium paid through your mortgage company.

If your billing needs change, we offer several ways to pay your premium:

| Bill Plan | Monthly | Lump Sum |
|-----------|---------|----------|
| Electronic Funds Transfer (EFT) | No Charge | No Charge |
| Recurring Credit Card (RCC) | No Charge | No Charge |
| Bill by Mail | $ 5.00 | No Charge |

    Late Charge: $10.00 per occurrence
    Payments returned by your bank: $20.00 per occurrence

Visit www.amp.travelers.com if you would like to enroll in our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plan.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at (615)665-1550.

PL-14216 09-08

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 70 of 141 PageID #: 74

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – TENNESSEE

### DEFINITIONS

The following definitions are added:

10. "fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      (1) Are, or were, used to hold fuel; and

      (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

   A fuel system does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an insured, used for powering the motor vehicle or watercraft and not used at any time or in any manner for business.

11. "sinkhole collapse" means:

   Actual physical damage to the dwelling and other covered structures:

   1. Arising out of; or

   2. Caused by;

   the sudden settlement or collapse of the earth supporting such property. The settlement or collapse must result from subterranean voids created by the action of water on limestone or similar rock formations.

### SECTION I – PROPERTY COVERAGES

### COVERAGE C - PERSONAL PROPERTY SPECIAL LIMITS OF LIABILITY

Items 8. and 9. are deleted and replaced by the following:

8. $5,000 on property, on the residence premises used at any time or in any manner for any business purpose.

9. $1,000 on property away from the residence premises used at any time or in any manner for any business purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

### SECTION I – ADDITIONAL COVERAGES

The following additional coverage is added: (Forms HO-2 and HO-3 only)

* Ordinance or Law.

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

001803/00247 F3115AH4 7133 06/14/10

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 71 of 141 PageID #: 75

c. We do not cover:

   (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   (2) The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

8. Collapse is deleted and replaced by the following:

8. **Collapse.**

  a. With respect to this Additional Coverage:

    (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

    (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

    (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

    (4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

  b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

    (1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

    (2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

    (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

    (4) Weight of contents, equipment, animals or people;

    (5) Weight of rain which collects on a roof; or

    (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

  c. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above unless the loss is a direct result of the collapse of a building or any part of a building.

  d. This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – EXCLUSIONS

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

  (1) Results in widespread damage;

  (2) Affects a substantial area; or

  (3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

  (1) Any acts of nature;

  (2) Any human action or inaction;

  (3) The forces of animals, plants or other living or dead organisms;

  (4) Any other natural or artificial process.

2. Earth Movement is deleted and replaced by the following:

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 72 of 141 PageID #: 76

2. Earth Movement, meaning events that include but are not limited to the following:

   a. Earthquake and earthquake aftershocks;

   b. Volcano activity including but not limited to:

      1. Volcanic Eruption;

      2. Volcanic Explosion;

      3. Effusion of volcanic material; or

      4. Lava Flow;

   c. Mudslide, including mudflow, debris flow, land-slide, avalanche, or sediment;

   d. Subsidence;

   e. Excavation collapse;

   f. Erosion;

   g. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil, or land.

   This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

   The Earth Movement Exclusion does not apply to "sinkhole collapse".

   However, loss caused directly by the specific perils:

   a. fire;

   b. explosion;

   c. breakage of building or dwelling glass or safety glazing material, including storm doors ·or windows; or;

   d. theft;

   following any earth movement is covered.

3. Water Damage is deleted and replaced by the following:

3. Water damage, meaning;

   a. Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, selche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

   b. any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump or related equipment;

   c. any water or water borne material located below the surface of the ground including water or water borne material:

   (1) Which exerts pressure on, seeps, leaks or flows into:

      (a) Any part of the dwelling or other structures;

      (b) The foundation of the dwelling or other structures;

      (c) Any paved surface located on the residence premises; or

      (d) Any spa, hot tub,' or swimming pool.

   (2) Which causes earth movement; or

   d. any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

   Direct loss by fire, explosion or theft resulting from water damage will be covered.

## SECTION I – CONDITIONS

3. Loss Settlement. In Forms HO-2 and HO-3 only, paragraph c.(4) is deleted and replaced by the following:

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair is complete, we will settle the loss according to the provisions of c.(1) and c.(2) above.

      However, if the cost to repair or replace is less than $2,500 we will settle the loss according to the provisions of c.(1) and c.(2) above, whether or not actual repair or replacement is complete.

7. Other Insurance, in Form HA-6 only, is deleted and replaced by the following:

7. Other Insurance and Service Agreement.

   a. If a loss covered by this policy is also covered by:

   (1) Other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   (2) A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

001804/00247 F311SAH4 7133 08/14/10

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 73 of 141 PageID #: 77

b. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

## SECTION II - EXCLUSIONS

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others: The following items are added:

   * or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such bodily injury or property damage, damages, loss, cost, payment or expense; or

     (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

   * arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a fuel system. This exclusion applies, but is not limited to:

     (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

     (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such bodily injury or property damage, damages, loss, cost, payment or expense; or

   (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

   However, this exclusion does not apply to bodily injury or property damage arising out of fire or explosion that results from such escaped or released fuel.

## SECTION II - ADDITIONAL COVERAGES

The following additional coverage is added:

5. Property Damage coverage for Military Personnel and Federal Government Employees:

   If an insured is:

   a. a United States Government Employee; or

   b. a member of the United States Military,

   We agree to pay for property damage to United States government property, for which such insured is responsible under applicable rules or regulations.

   Payment for such property damage will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

   Our Limit of Liability, per occurrence, under this Additional Coverage for all damages resulting from any one occurrence shall not exceed two months basic pay for the insured, as of the time of the occurrence.

   We will not pay for property damage to:

   a. aircraft

   b. motor vehicles, including vehicles not designed for travel on public roads or subject to registration;

   c. watercraft; or

   d. weapons

   We will not pay for property damage:

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by any insured who is 13 years of age or older.

All other provisions of this policy apply.

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 74 of 141 PageID #: 78

Your privacy...
Is our concern

## WHAT WE MEAN WHEN WE TALK ABOUT "PRIVACY"

Your privacy is important to us. When we sell an insurance policy to a person we need information about the person or property that we're insuring. We consider this private and have taken steps to keep it confidential.

We want you to know about our privacy policy. The privacy policy tells you the kinds of information we get about you, where we get it, and with whom, if anyone, we may share it.

This brochure describes our privacy policy, procedures and practices for individuals who seek or get auto, home and other personal liability and property insurance for personal, family or household needs.

## WHAT KIND OF INFORMATION WE HAVE AND WHERE WE GET IT

You give us most of what we need in the application process. To make sure what we have is correct we may need to check with you by phone or mail.

You may be asked to give us more details in writing or over the phone. Plus, we may receive and check your past insurance claims from insurance support organizations or your former insurers.

As allowed by law, we may ask for credit and other consumer reports from consumer reporting agencies concerning your application for insurance or any renewal of insurance. Information given to us by an insurance support organization, including consumer reporting agencies may be retained by them and disclosed to other persons.

For auto insurance, we often get a report of accidents or convictions from your State Motor Vehicle Department. We get these reports through an independent reporting company. We may also check information from government agencies or independent reporting companies. This helps us correctly rate and price your policy.

For home, building, or boat insurance, we or an inspector from an independent company may visit the property to inspect and report on its condition. In some cases, pictures may be taken. This allows us to check the estimate we have of your property's value. If we need more details about the property or the alarm you've installed, we may need to enter your property to finish the inspection. We would contact you before entering your property.

As a part of our application and underwriting process, in most states, we also order an Insurance Score based on credit history. We use the Score, information you give us, and other consumer reports for underwriting and the price we will charge. If we receive corrected personal information from a consumer reporting agency, we will re-evaluate you.

Once you're insured with us, your file may contain details about your policy(ies). This may include bill payments or claim history. A claim representative may comment, for example, on the condition and use of the insured property. We may also keep a police report if one was issued.

Sometimes we need to know about your health. For example, if we need to know whether a physical limitation will affect your ability to drive, we would ask you to sign a form allowing your personal doctor to answer any question we may have.

## WHO HAS ACCESS TO THIS INFORMATION

We keep what we collect about you in our files. Our policies and procedures protect your personal information. We have physical, electronic and procedural safeguards in place.

We do not give or sell our customers' personal information to others for marketing purposes. You don't have to ask us to keep your information private because we do not give it, unless allowed.

We will use information about you to sell you insurance, service your insurance and settle claims. We may give the information to other persons or companies to help us manage or service our business. When we do, we require them to use it only for the reasons we gave it to them.

We may give, without your past permission and only if allowed by law, information about you held in our files to certain persons or organizations such as:

- Your agent or broker
- Our affiliated property and casualty insurance companies
- An independent claim adjuster or investigator

PL-11952 Rev. 6-07

00 1895/00247 F3115AH4 7135 08/14/10

- Persons or organizations that conduct scientific research, including actuarial or underwriting studies, provided that no individual may be identified in the studies
- An insurance support organization, including consumer reporting agencies
- Another insurer in order to prevent or prosecute fraud

Also, on rare occasions, we may be required to share this information:

- With a State Insurance Department or other governmental agency, if required by federal, state or local laws
- If ordered by a summons, court order, search warrant or subpoena
- To protect our own legal interests, or in case of suspected fraud or other illegal activities.

## HOW TO FIND OUT WHAT INFORMATION WE HAVE ABOUT YOU

If you have any questions about what we have in your file please write to us. When we receive your written request, we will respond within thirty (30) business days. We will let you know if we've given any information about you to anyone in the past. If we asked for a consumer report we will tell you the name and address of the consumer reporting agency.

You may also see and copy your file (except for certain documents about claims and lawsuits). If you believe any of our information is wrong we'll check it out and if we agree there was an error, we'll correct it. If we don't agree, you're still allowed to file a letter with your comments. We'll send the correction or letter to anyone who received or will receive the original information.

If you have any questions about the right of access to or correction of your file, we'll be happy to review our procedures with you. Please contact:

Privacy Coordinator
KNOXVILLE - 413
PO BOX 59059
KNOXVILLE TN        37950

## WHEN YOU WRITE, PLEASE BE SURE TO TELL US YOUR:

- Name
- Address
- Policy number
- Phone number and the best time of the day for us to call you

Please include a copy (not the original) of personal ID, such as your driver's license.

## WE THANK YOU FOR LETTING US SERVE YOUR INSURANCE NEEDS.

This notice is effective July 2006 and is given by Travelers Indemnity Company, and its property and casualty insurance affiliates, members of the Travelers group of companies. This notice applies to current and former customers and may be amended at any time. The amended notice will be sent to customers and will also be placed on Travelers web sites.

A statement concerning our use of Insurance Score is available upon request for Oregon residents.

PL-11952 Rev. 6-07

# EXHIBIT "B"

**TRAVELERS**

The Standard Fire Insurance Company
4840 Forest Dr. # 6B PMB337
Columbia, SC 29206
(803)790-5052

04/17/2011

Timothy K Hollahan
6526 Currywood Dr
Nashville, TN 37205

| | |
|---|---|
| **Insured:** | Timothy K Hollahan |
| **Policy #:** | 0HG664-978409682-633   -1 |
| **Claim/File #:** | 877 FR HFX8174 T |
| **Date of Loss:** | 04/13/2011 |
| **Reference #:** | |

Dear Timothy K Hollahan

Please be advised that I am The Standard Fire Insurance Company's representative who has been assigned the handling of your claim. The Standard Fire Insurance Company intends to undertake an investigation of the facts and circumstances surrounding your claim. This investigation will be conducted subject to a full reservation of rights and defenses under the policy in question.

You are hereby advised that nothing done by The Standard Fire Insurance Company or anyone acting on the behalf of The Standard Fire Insurance Company relating to the investigation of this claim shall be construed as an admission of liability on the part of The Standard Fire Insurance Company. To the contrary, you are formally advised that The Standard Fire Insurance Company does hereby reserve each and every right it has under and pursuant to the policy of insurance upon which the claim has been made and it has and shall continue to conduct its investigation subject to this reservation of rights.

If you have any questions, please feel free to contact me.

Sincerely,
Ted Alexander
General Adjuster
(803)790-5052
**Fax:**
**Email:** TALEXAND@travelers.com

P0285 2/02

# EXHIBIT "C"

 **Grecco Construction Consultants**

| | | | | |
|---|---|---|---|---|
| Client: | Hollahan Residence | | Home: | (615) 289-1752 |
| Property: | 6526 Currywood Drive | | | |
| | Nashville, TN 35404 | | | |

Operator Info:
Operator:      TONY

| | | | | |
|---|---|---|---|---|
| Estimator: | Tony Grecco | | Business: | (865) 696-5548 |
| Position: | Assistant Consultant | | | |
| Company: | Grecco Construction Consultants | | | |
| Home: | 173 Pearl Point | | | |
| | Sharps Chapel, TN 37866 | | | |

| | | | | |
|---|---|---|---|---|
| Reference: | | | Business: | (901) 737-2687 |
| Company: | Dan Grecco | | | |
| Business: | 2955 Honey Tree Drive | | | |
| | Germantown, TN 38138 | | | |

| | | | |
|---|---|---|---|
| Type of Estimate: | Fire | | |
| Date Entered: | 5/4/2011 | Date Assigned: | 5/4/2011 |

| | |
|---|---|
| Price List: | TNNA7X_MAY11 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | HOLLAHAN_RESIDENCE |
| File Number: | HFX8174 |

The scope of repair for this loss event is based on our visual inspection at the loss location on 5/2/2011. The cost estimate does not include any overtime and/or premium time for the completion of the documented scope of repair. The scope of repair quantities within this document are intended to restore the building to it's pre-loss condition. The removal and/or testing of hazardous materials is not included within this scope of repairs. All material and quantities should be verified by the insured and/or their contractor. Code upgrades should be reviewed by the local code enforcement department. Code updates are excluded from this scope document unless otherwise noted within the scope of repair.

 **Grecco Construction Consultants**

## Summary

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 248,209.66 |
| Material Sales Tax | @ | 9.250% x | 104,910.05 | 9,704.18 |
| P Ppty Material Tax | @ | 9.250% x | 0.93 | 0.09 |
| Subtotal | | | | 257,913.93 |
| Overhead | @ | 10.0% x | 254,741.51 | 25,474.15 |
| Profit | @ | 10.0% x | 254,741.51 | 25,474.15 |
| P Ppty Cleaning Tax | @ | 9.250% x | 21.85 | 2.02 |
| Replacement Cost Value | | | | $308,864.25 |
| Net Claim | | | | $308,864.25 |

_____
Tony Grecco
Assistant Consultant

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 81 of 141 PageID #: 85

 **Grecco Construction Consultants**

Recap by Room

Estimate: HOLLAHAN_RESIDENCE

| | | | |
|---|---|---:|---:|
| | General Conditions | 35,416.44 | 14.27% |
| | Demolition | 8,581.04 | 3.46% |
| | | | |
| Area: | Main Level | 26,892.71 | 10.83% |
| | Living Room | 5,348.31 | 2.15% |
| | Dining Room | 4,440.69 | 1.79% |
| | Master Bath | 7,946.29 | 3.20% |
| | Mstr Tub | 4,903.69 | 1.98% |
| | Mstr Closet | 2,443.28 | 0.98% |
| | Mstr shower | 2,326.61 | 0.94% |
| | Master Bedroom | 8,137.69 | 3.28% |
| | Hallway | 2,886.26 | 1.16% |
| | H clst | 633.77 | 0.26% |
| | Bedroom 1 | 3,653.37 | 1.47% |
| | BR 1 clst | 897.35 | 0.36% |
| | BR 1 Bath | 4,943.13 | 1.99% |
| | Bedroom 2 | 3,746.60 | 1.51% |
| | BR 2 clst | 801.95 | 0.32% |
| | Bedroom 3 | 3,243.42 | 1.31% |
| | BR 3 clst | 1,028.51 | 0.41% |
| | Bedroom 4 | 2,788.45 | 1.12% |
| | BR 4 clst | 721.88 | 0.29% |
| | BR 4 clst 2 | 721.88 | 0.29% |
| | Hall Bath | 6,931.03 | 2.79% |
| | HB clst | 538.16 | 0.22% |
| | Foyer/Entry | 4,564.09 | 1.84% |
| | F Closet | 916.49 | 0.37% |
| | Den | 7,128.54 | 2.87% |
| | Linen | 544.37 | 0.22% |
| | Kitchen | 18,583.60 | 7.49% |
| | Pantry | 1,623.49 | 0.65% |
| | Laundry Room | 3,570.66 | 1.44% |
| | Bathroom | 66.32 | 0.03% |
| | Game Room | 8,878.85 | 3.58% |
| | Gr clst | 1,052.33 | 0.42% |
| | Gr cslt 2 | 1,125.13 | 0.45% |
| | Stairs | 595.20 | 0.24% |
| | Front Porch | 1,743.06 | 0.70% |
| | Utility Room | 1,741.50 | 0.70% |
| | Rear Porch | 5,709.92 | 2.30% |
| | Deck1 | 2,129.00 | 0.86% |
| | | | |
| | Area Subtotal: Main Level | 155,947.58 | 62.83% |

Area: Garage

HOLLAHAN_RESIDENCE

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 82 of 141 PageID #: 86


| | | | |
|---|---|---:|---:|
| | Garage | 1,224.07 | 0.49% |
| | Storage Area/Room | 945.51 | 0.38% |
| | Crawlspace | 405.59 | 0.16% |
| | Crawlspace 2 | 196.33 | 0.08% |
| | Crawlspace 3 | 225.55 | 0.09% |
| | Crawlspace 4 | 155.49 | 0.06% |
| | Front Porch CRWL | 266.62 | 0.11% |
| | Rear Porch CRWL | 353.59 | 0.14% |
| | **Area Subtotal: Garage** | 3,772.75 | 1.52% |
| Area: | Elevations | | |
| | North | 893.30 | 0.36% |
| | South | 1,205.54 | 0.49% |
| | East | 3,198.95 | 1.29% |
| | West | 1,565.21 | 0.63% |
| | **Area Subtotal: Elevations** | 6,863.00 | 2.77% |
| | HVAC | 6,063.08 | 2.44% |
| | Electrcal | 8,258.60 | 3.33% |
| | Plumbing | 3,652.32 | 1.47% |
| Area: | Roof | 12,668.60 | 5.10% |
| | Roof1 | 6,986.25 | 2.81% |
| | **Area Subtotal: Roof** | 19,654.85 | 7.92% |
| **Subtotal of Areas** | | 248,209.66 | 100.00% |
| **Total** | | 248,209.66 | 100.00% |

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 83 of 141 PageID #: 87

 **Greco Construction Consultants**

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| APPLIANCES | 3,432.86 | 1.11% |
| AWNINGS & PATIO COVERS | 1,447.60 | 0.47% |
| CABINETRY | 10,788.30 | 3.49% |
| CONT: CLEAN - HARD FURNITURE | 18.12 | 0.01% |
| CLEANING | 2,252.79 | 0.73% |
| GENERAL DEMOLITION | 11,790.84 | 3.82% |
| DOORS | 9,083.44 | 2.94% |
| DRYWALL | 11,957.87 | 3.87% |
| ELECTRICAL | 8,680.37 | 2.81% |
| FLOOR COVERING - CARPET | 3,728.20 | 1.21% |
| FLOOR COVERING - CERAMIC TILE | 349.19 | 0.11% |
| FLOOR COVERING - WOOD | 19,702.45 | 6.38% |
| FINISH CARPENTRY / TRIMWORK | 8,188.92 | 2.65% |
| FINISH HARDWARE | 1,898.65 | 0.61% |
| FRAMING & ROUGH CARPENTRY | 37,229.64 | 12.05% |
| HEAT, VENT & AIR CONDITIONING | 6,063.08 | 1.96% |
| INSULATION | 4,065.56 | 1.32% |
| LABOR ONLY | 32,665.04 | 10.58% |
| LIGHT FIXTURES | 6,170.27 | 2.00% |
| MIRRORS & SHOWER DOORS | 1,167.41 | 0.38% |
| PLUMBING | 9,709.45 | 3.14% |
| PANELING & WOOD WALL FINISHES | 2,301.05 | 0.75% |
| PAINTING | 21,382.95 | 6.92% |
| ROOFING | 6,986.25 | 2.26% |
| SOFFIT, FASCIA, & GUTTER | 2,295.80 | 0.74% |
| TILE | 8,206.94 | 2.66% |
| TEMPORARY REPAIRS | 500.56 | 0.16% |
| WINDOWS - SKYLIGHTS | 478.76 | 0.16% |
| WINDOW TREATMENT | 467.36 | 0.15% |
| WINDOWS - WOOD | 10,701.98 | 3.46% |
| WALLPAPER | 1,594.15 | 0.52% |
| **O&P Items Subtotal** | **245,305.85** | **79.42%** |

| Non-O&P Items | | Total | % |
|---|---|---|---|
| APPLIANCES - MAJOR W/O INSTALL | | 2,903.81 | 0.94% |
| Non-O&P Items Subtotal | | 2,903.81 | 0.94% |
| O&P Items Subtotal | | 245,305.85 | 79.42% |
| Material Sales Tax | @ 9.250% | 9,704.18 | 3.14% |
| P Ppty Material Tax | @ 9.250% | 0.09 | 0.00% |

 **Grecco Construction Consultants**

| | | | | |
|---|---|---|---|---|
| Overhead | @ | 10.0% | 25,474.15 | 8.25% |
| Profit | @ | 10.0% | 25,474.15 | 8.25% |
| P Ppty Cleaning Tax | @ | 9.250% | 2.02 | 0.00% |
| Total | | | 308,864.25 | 100.00% |

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 85 of 141 PageID #: 89

# EXHIBIT "D"

DELIVERED JUL 1 8 2011

## SWORN STATEMENT IN PROOF OF LOSS

| nt of policy at time of loss: | Claim Number: |
| --- | --- |
| 500,000 | EPK6174 |

| Date Issued: | Date expires: | Agent Name/Agency Address: |
| --- | --- | --- |
| 8·2·10 | 8·2·11 | Brown all Brown of Tennessee |

To the **The Standard Fire Insurance Company** _____ of TRAVELERS PROPERTY and Casualty Co.

At the time of loss, by the above indicated policy, you insured _____

against the loss    Fire    _____ to the property described according to the terms and conditions of said

policy and of all forms, endorsements, transfers and assignments attached thereto.

**TIME AND ORIGIN**

4    Fire    _____ loss occurred about the hour of    4    o'clock AM/PM (circle one) on the

14th day of    April    _____ in the year  2011 .  The cause and origin of the said loss were:  Unknown

_____

**OCCUPANCY**

The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose

whatever  Primary Residence with Furniture and Clothing

in the Residence.

**TITLE AND INTEREST**

At the time of the loss, the interest of your insured in the property described therein was  Sontrust  No other person or persons

had any interest therein _____ or encumbrance thereon, except _____

**CHANGES**

e the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or

exposure of the property described , except:  N/A

**TOTAL INSURANCE**

THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $ 500,000

as more particularly specified in the apportionment attached besides which there was no policy or other contract of insurance, written

or oral, valid or invalid.

| | | |
| --- | --- | --- |
| Value | THE ACTUAL CASH VALUE of said property at the time of the loss was: | $ |
| Loss | THE WHOLE LOSS AND DAMAGE was: | $ |
| Amount Claimed | THE AMOUNT CLAIMED under the above numbered policy is: | $ |

**STATEMENTS OF INSURED**

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by

or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are

mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any

manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any

other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver

of any of its rights.

State of    Tennessee

County of    Davidson

Subscribed and sworn to before me this  14th _____ 2011

_____
Notary Public

27 02/07

EXHIBIT
3

# EXHIBIT "E"

JOHN A. FERGUSON, JR.
JOHN P. REALE
STEVEN A. MILLER
H. MICHAEL BAGLEY
HALL F. MCKINLEY III
C. RANDALL MOODY
*** W. BURRS
Y C. KNIFFEN
C. BRUFFEY, JR.
C. BLACKMON, JR.
GARY R. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES P. ANDERSON
JULIE Y. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
B. KAYE KATZ-FLEXER
TERRENCE T. ROCK
ROBERT L. WELCH
MICHAEL L. MILLER

ANDREW D. HOROWITZ
J. C. ROPER, JR.
BRIAN T. MOORE
BURKE A. NOBLE
JIMMY JANNIRIOUS
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
LISA R. RICHARDSON
ANDREW NELSON
CHRISTOPHER A. BENNETT
AAXATI T. SUBRAMANYAM
BONNIE S. TIMMS
ANDREW C. MAEBERLE
J. BENSON WARD
MATTHEW A. NANNINNCA
RYAN V. KLTF
NICHOLAS P. SMITH
DEAN A. DELLINGER
CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM

MATTHEW D. WALKER
CHAD ERIC JACOBS
NATHAN E. WOODY
MARK E. IRBY
PATRICIA P. CUNNINGHAM
E. ANDREW TREESE
JOHN E. ADKISSON, III
TAYLOR J. STEVENS
ERIC E. MULL
GARY D. BEELEN
ABDI AMMARI
MEREDITH RIGGS GUERRERO
ANNE MARIE DU TOIT
DAVID SCOTT THOMPSON
INGRID NUSS
DAVID H. SCHULTE
MICHAEL J. ISHMAN
JASON M. FRYE
DAVID A. OLSON
MYLES LEVELLE
SARAH E. SMITH
KATHRYN E. STAZAK
S. MEGAN KLEIN

DAVID JON MAHER

OF COUNSEL:
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. TYRE
JEFFREY A. BURMEISTER
JUDY GREENBAUM CROY
KELLEN HUANC HUBBS
KATHRYN S. WHITLOCK
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1963-2009)
DENNIS M. HALL
(1947-1998)

# DREW ECKL & FARNHAM, LLP

### ATTORNEYS AT LAW

880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

July 28, 2011

(404) 885-6313
kkarabinos@deflaw.com
Reply to Atlanta

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED 7009 2250 0002 3654 7994</u>
<u>AND REGULAR MAIL</u>

## PERSONAL & CONFIDENTIAL

Timothy and Jennifer Hollahan
6526 Currywood Rd.
Nashville, TN 37205

> **Re:  Insured: Timothy K. Hollahan**
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: April 13, 2011

Dear Mr. & Mrs. Hollahan:

This firm represents The Standard Fire Insurance Company ("Standard Fire") and its interests in the claim you have filed on the above policy.

Your policy provides in pertinent part that you be examined under oath if Standard Fire asks you to do so.

Pursuant to that policy provision, a member of this firm will examine you individually under oath commencing at 9:30 a.m. on August 18, 2011 at a conference room at The Hampton Inn located at 310 4th Avenue South, Nashville, TN United States, 37201 (615-277-5000). We will begin with Mr. Hollahan's examination at 9:30 a.m. followed by Mrs. Hollahan's immediately thereafter. <u>Needless to say, if this date, time or place proves inconvenient for any reason, please contact me, and I will be more than happy to modify these arrangements.</u>

No action may be taken on this claim until this examination under oath has been completed and all documents requested have been produced.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 89 of 141 PageID #: 93

As provided in the policy, and in order to ascertain the amount and nature of the loss, you should bring with you at the time of the examination under oath the following materials and documents:

(1)   The insurance policy.

(2)   All other insurance policies covering any of this loss, or in the event such policies are not available, you should obtain all pertinent information as to any additional insurance covering any of this loss.

(3)   Any and all other documentation of whatever kind or nature, including receipts which you can obtain, in order to verify the claim, including your sworn statement in proof of loss, which you have filed for this loss.

(4)   Any and all estimates, receipts or invoices for the repair, replacement or removal of items lost or damaged, including costs related to the structure, contents, or other items.

(5)   All appraisals on any of the property damaged, whether that appraisal was made before or after the loss.

(6)   All documents related to prior insurance coverage and/or claims regarding the same or similar property.

(7)   All correspondence or other documents between you, Standard Fire, FEMA, the American Red Cross, the State Department of Insurance, the Salvation Army, your County Government/Agencies or other entities regarding the events or circumstances which are the subject of these claims.

(8)   All documents related to your claim for Additional Living Expenses (past, present or future), including any documents you rely upon to claim any extraordinary circumstances.

(9)   Any photographs or video tapes depicting any of the damaged property either before or after damage.

(10)  Copies of your personal income tax returns for the years 2009 and 2010, if filed.

(11)  Copies of monthly bank statements, and all working financial records kept by you or on your behalf for the period of April 1, 2010 through April 30,

2011, including any information which may be in the hands of an accountant, bookkeeper or other agent. (In the event you did not keep some or all of your monthly bank statements, these records are kept by your bank and copies can be reproduced, and we will bear any cost in obtaining this information.)

(12) Copies of all promissory notes to which there was an outstanding balance at the time of the loss, which were given, endorsed or guaranteed by you or by any business of which you were an owner, part owner or partner, these notes being in addition to and not a limitation of other books of account, ledgers and bank statements previously requested.

(13) Copy of all checks paid to individuals or entities for temporary repairs or other expenses incurred as a result of the loss.

(14) All bills, invoices, or other documentation of whatever kind or nature regarding maintenance, upkeep and repairs on the damaged structure for three (3) years prior to the date of loss.

(15) Your cell phone records, including text message and call history as well as cell tower information, from April 1, 2011 through April 30, 2011. You can obtain these directly from your cell phone provider.

As stated previously, some of the information requested, if not otherwise available, can be obtained from other sources such as financial institutions. If there is any expense in obtaining or copying any of the requested material, please notify me and I will advance the costs or reimburse you at the time of your examination under oath.

I look forward to seeing you on August 18th.

Very truly yours,

DREW ECKL & FARNHAM, LLP

Karen K. Karabinos

KKK/kkk

3043461/1
5657-79680

# EXHIBIT "F"

JOHN A. FERGUSON, JR.
JOHN P. REALE
STEVAN A. MILLER
H. MICHAEL BAGLEY
HALL F. McKINLEY III
C. RANDALL WOODY
W. BURKE
C. KNIFFEN
C. BRUFFEY, JR.
S. BLACKMON, JR.
R. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES P. ANDERSON
JULIE Y. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
B. KAYE KATZ-PELZER
TERRENCE T. ROCK
ROBERT L. WELCH

MICHAEL L. MILLER
ANDREW D. HOROWITZ
J. C. ROPER, JR.
BRIAN T. MOORE
BURKE A. NOBLE
JIMMY JANAKOUS
BRIAN W. JOHNSON
DOUGLAS R. BURRELL
KAREN K. KARABINOS
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATTHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
AARATI T. SUBRAMANIAM
BONNIE S. TIMMS
ANDREW C. MAEBERLE
J. BENSON WARD
MATTHEW A. NANNINGA
RYAN V. KLEE
NICHOLAS P. SMITH
DEAN A. DELLINGER

# DREW ECKL & FARNHAM, LLP

ATTORNEYS AT LAW

880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600

ATLANTA, GEORGIA 30357-0600

TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM
MATTHEW D. WALKER
CHAD ERIC JACOBS
NATHAN E. WOODY
MARK E. IRBY
PATRICIA P. CUNNINGHAM
E. ANDREW TREESE
JOHN E. ADKISSON, III
TAYLOR J. STEVENS
ERIC R. MULL
CARY D. BEELEN
ABDI AAHMARU
MEREDITH RIGGS GUERRERO
ANNE MARIE DU TOIT
DAVID SCOTT THOMPSON
INGRID NUSS
DAVID H. SCHULTE
MICHAEL J. ESHMAN
JASON M. PRINE
DAVID A. OLSON
MYLES LEVELLE

SARAH E. SMITH
KATHRYN L. STAZAK
S. MEGAN KLEIN
DAVID JON MAHER

OF COUNSEL
CHARLES E. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. EYRE
JEFFREY A. BURMEISTER
KELLEN HUANG HUBBS
KATHRYN S. WHITLOCK
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1953-2009)
DENNIS M. HALL
(1947-1998)

September 26, 2011

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

## VIA ELECTRONIC MAIL
## AND REGULAR MAIL
Timothy K. Hollahan
Jennifer Hollahan
6526 Currywood Rd.
Nashville, TN 37205

### RE: *Timothy & Jennifer Hollahan*
Policy No.: 978409682-633-1
Claim No.: HFX8174
Date of Loss: 4/13/2011
Our File No.: 5657-79680

Dear Mr. and Mrs. Hollahan:

This correspondence confirms my receipt of the telephone message Mrs. Hollahan left this weekend stating that you all would not be present for this week's examinations under oath scheduled for Tuesday, September 26, 2011.

Mrs. Hollahan advised that her mandatory training schedule this week prevented her from appearing. She indicated that she would be available any time the week of October 10th. Because your examinations must be taken on the same day, we will reschedule your examinations for October 11th beginning with Mr. Hollahan's at 9:30 a.m., and Mrs. Hollahan's immediately thereafter. The examinations will be at the same location. Please refer to my original correspondence outlining the documents you are requested to produce at the examinations.

Please note that this is the third time that you have cancelled the examinations. Submitting to an examination under oath is a part of your duties after loss under the subject insurance policies, and it is a condition for any recovery. Your failure to appear at the scheduled examinations under oath may be grounds for Travelers to deny your claim.

ATLANTA · BRUNSWICK ·

Timothy K. Hollahan
Jennifer Hollahan
September 26, 2011
Page 2

Needless to say, all parties continue to insist on the strict compliance of the terms and/or conditions of the policy and applicable law.

Very truly yours,

DREW, ECKL & FARNHAM, LLP

Karen K. Karabinos

KKK/kkk

3099183/1
5657-79680

# EXHIBIT "G"

JOHN A. FERGUSON, JR.
JOHN K. REALE
STEVAN A. MILLER
H. MICHAEL BAGLEY
MALL E. McKINLEY III
G. RANDALL MOODY
PAT W. BURKE
C. KNIFFEN
BRUFFEY, JR.
BLACKMON, JR.
L. K. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES F. ANDERSON
JULIE V. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
B. KAYE KATZ-FIERER
TERRENCE T. ROCK
ROBERT L. WELCH

MICHAEL L. MILLER
ANDREW D. HOROWITZ
J. C. ROPER JR.
BRIAN T. MOORE
BURKE A. NOBLE
JIMMY JANAKOUS
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
AARATI T. SUBRAMANIAM
BONNIE S. TIMMS
ANDREW C. MASERICLE
J. BENSON WARD
MATTHEW A. NANNINGA
RYAN V. KLEE
NICHOLAS P. SMITH
DEAN A. DELLINGER

CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM
MATTHEW D. WALKER
CHAD ERIC JACOBS
NATHAN E. WOODY
MARK L. IRBY
PATRICIA P. CUNNINGHAM
E. ANDREW TREESE
JOHN E. ADKISSON, III
TAYLOR J. STEVENS
ERIC R. MULL
GARY D. BEELEN
ABDI AMMARI
MEREDITH RIGGS GUERRERO
ANNE MARIE DU TOIT
DAVID SCOTT THOMPSON
INGRID HUSS
DAVID H. SCHULTE
MICHAEL J. JEHNIGAN
JASON M. PRINE
DAVID A. OLSON
MYLES LEVELLE

SARAH E. SMITH
KATHRYN L. STAZIAK
S. MEGAN KLEIN
DAVID JON ASHER

OF COUNSEL
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE G. EYRE
JEFFREY A. BURMEISTER
KELLEEN HUANG HUBBS
KATHRYN S. WHITLOCK
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1960-2009)
DENNIS M. HALL
(1947-1998)

# DREW ECKL & FARNHAM, LLP

### ATTORNEYS AT LAW

880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

October 28, 2011

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

## VIA ELECTRONIC MAIL
## AND REGULAR MAIL

Timothy & Jennifer Hollahan
1016 General George Patton Road
Nashville, TN 37221

> **RE:** **Timothy & Jennifer Hollahan**
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011
> Our File No.: 5657-79680

Dear Mr. and Mrs. Hollahan:

This correspondence follows your examinations under oath held on October 11, 2011. Due to Mr. Hollahan's automobile accident, I understand the documents we had requested you produce at your examinations were ruined. Therefore, you have agreed to obtain those documents again, and forward them to my attention at my Atlanta office. The documents that you have agreed to produce are as follows:

1. Any and all other documentation of whatever kind or nature, including receipts which you can obtain, in order to verify the claim, including your sworn statement in proof of loss, which you have filed for this loss.

2. Any and all estimates, receipts or invoices for the repair, replacement or removal of items lost or damaged, including costs related to the structure, contents, or other items.

3. All documents related to any claim for Additional Living Expenses (past, present or future), including any documents you rely upon to claim any extraordinary circumstances.

· ATLANTA · BRUNSWICK ·

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 97 of 141 PageID #: 101

4. Copies of your personal income tax returns for the years 2009 and 2010, if filed.

5. All bills, invoices, or other documentation of whatever kind or nature regarding maintenance, upkeep and repairs on the damaged structure for three (3) years prior to the date of loss.

6. Your cell phone records, including text message and call history as well as cell tower information, from April 1, 2011 through April 30, 2011. You can obtain these directly from your cell phone provider.

You agreed to sign and return the enclosed consent authorizing us to obtain your monthly bank statements directly from SunTrust. I have enclosed a self-addressed stamped envelope for you to return the authorizations to me.

Finally, The Standard Fire Insurance Company must reject your sworn statement in proof of loss you submitted because you did not complete the entire form. You failed to indicate the amount that you were claiming for the loss and you admitted that you did not list on the contents inventory all of your personal property that was damaged in your file loss. Therefore, I have enclosed another sworn statement in proof of loss for your completion and inventory. Please complete it, sign it and return it directly to me within 60 days.

Should you have any questions, please do not hesitate to call. Needless to say, all parties continue to insist on the strict compliance of the terms and/or conditions of the policy, and applicable law.

Very truly yours,

DREW, ECKL & FARNHAM, LLP

Karen K. Karabinos

KKK/kkk

Enclosures:     Consent to Release Records
                Blank Sworn Statement in Proof of Loss with contents inventory

3114950/1
5657-79680

# EXHIBIT "H"

JOHN A. FERGUSON, JR
JOHN F. WEALE
STEVAN A. MILLER
H. MICHAEL BAGLEY
HALL F. McKINLEY III
C. RANDALL MOODY
PAUL W. BURKE
YEL G. KNIFFEN
I C. BRUFFEY, JR.
C. BLACKMON, JR.
JOY R. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES R. ANDERSON
JULIE V. JOHNS
SANDRA S. CHO
BARBARA A. MARSCHALK
D. FAYE KATZ-FLEXER
TERRENCE T. ROCK
ROBERT L. WELCH

MICHAEL L. MILLER
ANDREW D. HOROWITZ
J. C. ROPER, JR.
BRIAN T. MOORE
BURKE A. NOBLE
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATTHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
MRATI T. SUBRAMANIAM
ANDREW C. MAEBERLE
J. BRASON WARD
MATTHEW A. MANNINGA
EVAN V. KLEE
NICHOLAS P. SMITH
DEAN A. DELLINGER
CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM

MATTHEW D. WALKER
CHAD ERIC JACOBS
NATHAN J. WOODY
MARK E. IRBY
PATRICIA F. CUNNINGHAM
E. ANDREW TREESE
JOHN E. ADKISSON, III
TAYLOR J. STEVENS
ERIC R. MULL
GARY D. BEELEN
ABDI AMMARI
MEREDITH BIGGS GUERRERO
ANNE MARIE DU TOIT
DAVID SCOTT THOMPSON
INGRID NILSS
DAVID M. SCHULTE
MICHAEL J. ESHMAN
JASON M. PRINE
DAVID A. OLSON
MYLES LEVELLE
SARAH E. SMITH
KATHRYN E. STAZAK

S. MEGAN KLEIN
DAVID JON MAHER
JOSHUA A. LANDERS
JEFFREY L. COSTOLNICK

OF COUNSEL
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. EYRE
JEFFREY A. BURMEISTER
KELLEEN HUANG-HUBBS
KATHRYN S. WHITLOCK
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1963-2009)
DENNIS M. HALL
(1947-1998)

# DREW ECKL & FARNHAM, LLP

ATTORNEYS AT LAW
880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

December 12, 2011

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

## VIA ELECTRONIC AND REGULAR MAIL

Timothy & Jennifer Hollahan
1016 General George Patton Road
Nashville, TN 37221

> **RE:** **Timothy & Jennifer Hollahan**
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011
> Our File No.: 5657-79680

Dear Mr. and Mrs. Hollahan:

This correspondence follows my previous letter to you dated October 28, 2011 in which I detailed the documents you were requested to produce following your examinations under oath. These documents included some information that you were requested to bring to your examinations under oath held on October 11th. To date, my office has not received those documents as well as the executed release authorizing us to obtain your monthly bank statements directly from SunTrust. Under the terms of the policy, you have a duty to produce these documents. Your failure to do so may result in the denial of your claim. Therefore, please provide these documents to my office within the next 14 days.

As a reminder, please note that your sworn statement in proof of loss and content's inventory that I emailed you on October 28, 2011 is due on or before December 28, 2011.

Needless to say, all parties continue to insist on the strict compliance of the terms and/or conditions of the policy and applicable law.

· ATLANTA · BRUNSWICK ·

Timothy K. Hollahan
Jennifer Hollahan
December 12, 2011
Page 2

Very truly yours,

DREW, ECKL & FARNHAM, LLP

Karen K. Karabinos

Karen K. Karabinos

KKK/kkk

3163120/1
5657-79680

# EXHIBIT "I"

## SWORN STATEMENT IN PROOF OF LOSS

Amount of policy at time of loss:
$ 500 000

Claim Number: HFX8174

Date issued: 8-2-2010  Date expires: 8-2-2011  Agent Name/Agency Address: Al Phillips Agency

To the The Standard Fire Insurance Company of
At the time of loss, by the above indicated policy, you insured 10524 Gravawood Dr. Nash Tn 37205
against the loss Fire to the property described according to the terms and conditions of said
policy and of all forms, endorsements, transfers and assignments attached thereto.

### TIME AND ORIGIN

loss occurred about the hour of 3-4:00 o'clock AM/PM (circle one) on the
13 day of April in the year 2011. The cause and origin of the said loss were: Fire

### OCCUPANCY

The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose
whatever: Residence

### TITLE AND INTEREST

At the time of the loss, the interest of your insured in the property described therein was Sun Trust. No other person or persons
had any interest therein _____ or encumbrance thereon, except _____

### CHANGES

Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or
exposure of the property described, except _____ N/A

### TOTAL INSURANCE

THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $ 500 000
as more particularly specified in the apportionment attached besides which there was no policy or other contract of insurance, written
or oral, valid or invalid.

| | | |
|---|---|---|
| Value | THE ACTUAL CASH VALUE of said property at the time of the loss was: | $ 500 000 |
| Loss | THE WHOLE LOSS AND DAMAGE was: | $ 500 000 |
| Amount Claimed | THE AMOUNT CLAIMED under the above numbered policy is: | $ Claim not pd out |

### STATEMENTS OF INSURED

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by
or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are
mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property saved has in any
manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any
other information that may be required will be furnished and required a part of this proof.
The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver
of any of its rights.

State of Tennessee
County of Davidson

Subscribed and sworn to before me this 28th day of December, 2011

_____
Insured

_____
Notary Public

F1727 02007
Printed in U.S.A.

# STATEMENT OF LOSS – CONTENTS

Insured _____

| ITEM DESCRIPTION INCLUDING MODEL #, WHERE PURCHASED IF GIFT, FROM WHOM RECEIVED | DATE OF PURCHASE IF GIFT, WHEN RECEIVED | COST TO REPAIR OR REPLACE | DEPRECIATION | ACTUAL CASH VALUE | SUPPLEMENTAL PAYMENT | DATE PAID |
|---|---|---|---|---|---|---|
| | N/A | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Case 3:14-cv-00001 Document 1-1 Filed 01/02/14 Page 104 of 141 PageID #: 108

DELIVERED JUL 1 8 2011

| # | Item | Qty | Value |
|---|------|-----|-------|
| 1 | Bedroom | | |
| 2 | Bedroom | | |
| 3 | Bedroom | | |
| 4 | Bedroom | | |
| 5 | Bedroom | | |
| 6 | Bedroom | | |
| 7 | Bedroom | | |
| 8 | Bedroom | | |
| 9 | Bedroom | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |

# EXHIBIT "J"

JOHN A. FERGUSON, JR.
JOHN P. REALE
STEVAN A. MILLER
H. MICHAEL BAGLEY
HALL F. MCKINLEY III
G. RANDALL MOODY
PAUL W. BURKE
ARL C. KNIFFEN
C. BRUFFEY, JR.
J.G. BLACKMAN, JR.
GARY K. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES P. ANDERSON
JULIE V. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
BRIAN T. MOORE
B. KAYE KATZ-FLEXER
ROBERT L. WELCH

MICHAEL L. MILLER
ANDREW O. HOROWITZ
J.C. ROPER, JR.
BURKE A. NOBLE
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
AARATI T. SUBRAMANIAM
ANDREW C. HAEBERLE
J. BENSON WARD
MATTHEW A. NANNINGA
RYAN V. ISLEE
NICHOLAS R. SMITH
DEAN A. DELLINGER
CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM
MATTHEW D. WALKER

CHAD ERIC JACOBS
NATHAN E. WOODY
MARK E. IRBY
PATRICIA P. CUNNINGHAM
E. ANDREW FREESE
JOHN L. ADKISSON, IE
TAYLOR J. STEVENS
ERIC R. MULL
GARY D. BEELEN
ABDI AMMARI
MEREDITH RIGGS GUERRERO
ANNE MARIE DUTOIT
DAVID SCOTT THOMPSON
INGRID NILES
DAVID H. SCHULTE
MICHAEL J. ESHMAN
JASON M. PRINE
DAVID A. OLSON
MYLES LEVELLE
SARAH E. SMITH
KATHRYN E. STAZAK
S. MEGAN KLEIN

DAVID JON MAHER
JOSHUA A. LANDERS
JEFFREY A. COSTOLNICK

Of COUNSEL
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. EYRE
JEFFREY A. BURMEISTER
KELLEEN HUANG HIGGINS
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1963-2009)
DENNIS M. HALL
(1947-1984)

# DREW ECKL & FARNHAM, LLP

ATTORNEYS AT LAW

880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

January 6, 2012

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

**VIA ELECTRONIC MAIL**
**AND REGULAR MAIL**
Timothy K. Hollahan
Jennifer A. Hollahan
6526 Currywood Dr.
Nashville, TN 37205

Timothy K. Hollahan
Jennifer A. Hollahan
1016 General George Patton Road
Nashville, TN 37221

> **RE:** ***Insureds: Timothy & Jennifer Hollahan***
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011
> Our File No.: 5657-79680

Dear Mr. and Mrs. Hollahan:

The Standard Fire Insurance Company ("Standard Fire") is in receipt of your sworn statement in proof of loss faxed to my office on December 29th. Standard Fire must reject your sworn statement in proof of loss you submitted because you failed to provide any documentation supporting the amount you were claiming. Therefore, I have enclosed another sworn statement for your completion. Please complete it, sign it and return it with supporting documentation directly to me within 30 days.

As you are aware, Standard Fire has made repeated requests for you to produce documentation in support of the claim. You were requested to produce the documentation at your examinations under oath in October 2011, but you both failed to produce any documentation. You agreed to produce the documents following your examinations, and despite correspondence to you dated December 12, 2011, none of the requested documentation has been produced. As a condition precedent to recovery,

your policy requires that you provide Standard Fire with records and documents and permit it to make copies.

To confirm, Standard Fire has requested that you produce the following:

1. Any and all other documentation of whatever kind or nature, including receipts which you can obtain, in order to verify the claim, including your sworn statement in proof of loss, which you have filed for this loss.

2. Any and all estimates, receipts or invoices for the repair, replacement or removal of items lost or damaged, including costs related to the structure, contents, or other items.

3. All documents related to any claim for Additional Living Expenses (past, present or future), including any documents you rely upon to claim any extraordinary circumstances.

4. Copies of your personal income tax returns for the years 2009 and 2010, if filed.

5. All bills, invoices, or other documentation of whatever kind or nature regarding maintenance, upkeep and repairs on the damaged structure for three (3) years prior to the date of loss.

6. Your cell phone records, including text message and call history as well as cell tower information, from April 1, 2011 through April 30, 2011. You can obtain these directly from your cell phone provider.

Please provide these documents within the next 30 days. Your continued failure to produce the requested documents may be grounds for denial of your claim.

Also be advised that Standard Fire's investigation has determined that the cause of the fire was incendiary. We understand from Metro Code that it is in the process of demolishing the house, but Standard Fire is in no position to stop that process. Therefore, if you desire to retain any of the fire evidence you should immediately take any necessary steps to do so.

Needless to say, all parties continue to insist on the strict compliance of the terms and/or conditions of the policy and applicable law.

Timothy K. Hollahan
Jennifer Hollahan
January 6, 2012
Page 3

Very truly yours,

DREW, ECKL & FARNHAM, LLP

Karen K. Karabinos

KKK/kkk

Enclosure:     Blank POL

3180252/1
5657-79680

# SWORN STATEMENT IN PROOF OF LOSS

| Amount of policy at time of loss: | | Claim Number:<br>HFX8174 | |
|---|---|---|---|
| Date issued: | Date expires: | Agent Name/Agency Address: | |

To the <u>The Standard Fire Insurance Company</u> _____ of _____

At the time of loss, by the above indicated policy, you insured _____

against the loss _____ to the property described according to the terms and conditions of said

policy and of all forms, endorsements, transfers and assignments attached thereto.

## TIME AND ORIGIN

A _____ loss occurred about the hour of _____ o'clock AM/PM (circle one) on the

_____ day of _____ in the year _____. The cause and origin of the said loss were: _____

## OCCUPANCY

The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose

whatever: _____

## TITLE AND INTEREST

At the time of the loss, the interest of your insured in the property described therein was _____ No other person or persons

had any interest therein _____ or encumbrance thereon, except_____

## CHANGES

Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or

exposure of the property described , except: _____

## TOTAL INSURANCE

THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $_____
as more particularly specified in the apportionment attached besides which there was no policy or other contract of insurance, written
or oral, valid or invalid.

| Value | THE ACTUAL CASH VALUE of said property at the time of the loss was: | $_____ |
|---|---|---|
| Loss | THE WHOLE LOSS AND DAMAGE was: | $_____ |
| Amount Claimed | THE AMOUNT CLAIMED under the above numbered policy is: | $ |

## STATEMENTS OF INSURED

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by
or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are
mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any
manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any
other information that may be required will be furnished and considered a part of this proof.

**The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver
of any of its rights.**

State of _____        _____

County of _____        _____
                                                Insured

Subscribed and sworn to before me this _____ day of_____ , _____

_____
Notary Public

P1727 02/07
Printed in U.S.A.

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 110 of 141 PageID #: 114

## RELEASE AND AUTHORIZATION

The The Standard Fire Insurance Company is hereby requested, authorized and empowered to pay as follows:

To _____ the sum of    $ _____

To _____ the sum of    $ _____

                                            Total    $ _____

In full settlement and satisfaction for all loss and damage which occurred on _____ to the property described
in this Proof of Loss, and covered under Policy Number    , issued to the undersigned.

In consideration of such payment, the Company is hereby discharged and forever released from any and all
claims, demands of liability whatsoever for said loss and damage, under said policy.

_____
INSURED

_____          _____
DATE                                              MORTGAGEE

P1727 02/07

# EXHIBIT "K"


**TRAVELERS**

*Ted Alexander*
General Adjuster
Personal Lines Major Case Unit
St Paul Travelers Companies
4840 Forest Dr. Ste 6B PMB 337
Columbia, SC 29206
Phone 1-803-790-5052
Fax 1-800- 685-7695

December 12, 2012

Timothy & Jennifer Hollahan
1016 General George Patton Road
Nashville, TN 37221

> **RE:** **Insured: Timothy & Jennifer Hollahan**
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011

Dear Mr. and Mrs. Hollahan:

This letter is in reference to your claim for a fire loss on April 13, 2011 that you filed with The Standard Fire Insurance Company ("Standard Fire").

As you are aware, Standard Fire has made repeated efforts to obtain documents in support of your claim. You were requested to produce certain documentation and information at your examinations. When you did not produce the documentation at your examinations, Standard Fire's attorney wrote you on October 14, 2011 and December 12, 2011 detailing the information and documentation that needed to be produced. On December 29, 2011, Standard Fire received your revised sworn statement in proof of loss. That proof, however, did not include any documents to support the amount you were claiming under the policy. In addition, you still failed to produce the remaining documents Standard Fire had been requesting.

In correspondence dated January 6th you were notified that Standard Fire rejected your revised sworn statement in proof of loss because you failed to provide any supporting documentation. You were requested to submit another proof of loss, any documentation to support that proof as well as the outstanding documentation within 30 days. You were specifically advised that your continued failure to produce the requested documents may be grounds for denial of your claim. To date, we have received no additional documentation from you. Due to your failure to respond, you have failed to cooperate with Standard Fire's investigation of your claim.

Your policy provides as a condition to recovery that you provide Standard Fire with records and documents and a sworn statement in proof of loss. Submitting this documentation and a proof of loss are procedures that are a standard part of your printed policy. Declining to comply with these conditions precedent is in violation of the policy provision and bars any recovery regarding this claim. Consequently, the above-referenced claim is denied for those reasons. Please note that in taking this

action based upon your refusal to submit the requested documents, Standard Fire has not reached a final decision regarding any other issue related to your claim, since any other issue has now become moot.

If you believe that we are operating under a misinterpretation or misunderstanding of the facts please provide clarification in writing. Standard Fire does not intend, by this letter, to waive any other provision or defenses and specifically reserve its rights to assert such additional policy provisions or defenses at any time.

Sincerely,

Ted Alexander

# EXHIBIT "L"

# PAUL T. HOUSCH
## Attorney at Law

PAUL T. HOUSCH

• Admitted to Practice Before:
U.S. Supreme Court
U.S. Claims Court
U.S. 6th Cir. Ct. Appeals
U.S. District Court
TN Supreme Court

Military Service:
U.S. Army 1974-1977

WASHINGTON SQUARE
222 SECOND AVENUE NORTH
SUITE 310

Nashville, Tennessee 37201

January 16, 2013

TELEPHONE
259-3313
FAX
259-3315
AREA CODE 615

 COPY

Mr. Ted Alexander, General Adjustor
Personal Alliance Major Case Unit
The Standard Fire Insurance Company
St. Paul Traveler's Companies
4840 Forrest Drive, Suite 6D PMD 337
Columbia, South Carolina 29206

**FAXED: 1-800-685-7695**

> RE: **Insured: Timothy and Jennifer Hollahan**
> Policy No. 978409682-633-1
> Claim No. HFX8174
> Date of Loss: April 13, 2011

Dear Mr. Alexander:

Please be advised that I represent Mr. and Mrs. Timothy Hollahan in their fire loss claim against The Standard Fire Insurance Company arising out of the fire loss of their residence on April 13, 2011 in Davidson County, Tennessee.

On behalf of Mr. Timothy Hollahan and Jennifer Hallahan, demand is hereby made against Standard Fire Insurance Company under Policy No. 978409682-633-1 under Claim No. HFX8174, for payment of **$500,000.00** for the dwelling loss, the personal property loss and loss of use coverage, as their whole loss and damage arising out of the fire loss on April 13, 2011.

The subject fire, which occurred on April 13, 2011 at 6526 Currywood, Nashville, Tennessee 37205, under Policy No. 978409682-633-1 was a total loss of the dwelling and personal property, as determined by the Metro Fire Department.

Your failure to pay the demand will be considered "bad faith" on the part of The Standard Fire Insurance Company.

The Standard Fire Insurance Company was made aware of the fact that the subject fire of the dwelling and personal property of Mr. and Mrs. Hollahan resulted in a total loss of their property, before The Standard Fire Insurance Company denied Mr. and Mrs. Hollahan's claim on December 12, 2012.

If you have any questions, please contact this office.

Sincerely,

PAUL T. HOUSCH, ESQ.

cc:  Mr. Timothy Hollahan
Mrs. Jennifer Hollahan

# EXHIBIT "M"

JOHN A. FERGUSON, JR.
JOHN P. REALE
STEVEN A. MILLER
H. MICHAEL BAGLEY
HALL F. McKINLEY III
G. RANDALL MOODY
PAUL W. BURKE
   T.C. KNIFFEN
   C. BRUMBY, JR.
   G. BUCKMON, JR.
GARY R. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES P. ANDERSON
JULIE C. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
BRIAN T. MOORE
ROBERT C. WELCH
MICHAEL L. MILLER

ANDREW D. HOROWITZ
E.C. ROPER, JR.
BURKE A. NOBLE
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
GARY D. BERLEN
JEFFREY S. WARD
J. BENSON WARD
DEAN A. DILLINGER
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATTHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
AARATI T. SUBRAMANIAM
ANDREW C. HAEBERLE
MATTHEW A. MANNERINO
RYAN V. KLEE
CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM
MATTHEW D. WALKER

CHAD ERIC JACOBS
MARK E. IRBY
PATRICIA P. CUNNINGHAM
F. ANDREW TRITER
JOHN E. ADKISSON, III
TAYLOR J. STEVENS
TRIG R. MULL
MEREDITH REGGE GUERRERO
ANN MARIE DU TOIT
DAVID SCOTT THOMPSON
INGRID NILES
JASON M. VRINK
DAVID A. OLSON
BETH GRANHART
WILLIAM R. MIZROGROVE
MYLES LEVELLE
SARAH L. SMITH
DAVID JON MAHER
JOSHUA A. LANDERS
JEFFERY F. COSTORNICK
CHRISTIAN H. LAYCOCK
MATTHEW P. RAMSEY

ADAM M. MASAREK
APRIL A. ROBINSON
MATTHEW T. JONES
BAILEY M. SHUMAN
WHITNEY B. LAY
MATTHEW D. MACY
SARA ORTEGA
HADLEY E. HAYES
CHRISTOPHER L. CLIFFORD

OF COUNSEL
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. EYRE
ALFRED A. BURMEISTER
LESLY P. BECIGNELI

LEIGH LAWSON REEVES
(1963-2009)
DENNIS M. HALL
(1947-1998)

# DREW ECKL & FARNHAM, LLP

### ATTORNEYS AT LAW

880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
### ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

—————

www.deflaw.com

January 28, 2013

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

**VIA ELECTRONIC MAIL**
**AND REGULAR MAIL**
Paul T. Housch
222 Second Avenue North
Washington Squire, Suite 310
Nashville, TN 37201

> ***RE: Insureds: Timothy & Jennifer Hollahan***
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011
> Our File No.: 05657-079680

Dear Mr. Housch:

I am in receipt of your January 14, 2013 correspondence to Ted Alexander and my office regarding your request for documentation as well as your January 16, 2013 correspondence in which you demand payment of $500,000 for your clients' reported damages to the dwelling, personal property, and loss of use as a result of the above-referenced fire. The Standard Fire Insurance Company ("Standard Fire") has requested that I respond on its behalf.

## Documentation Request

Pursuant to your request, I am enclosing with the copy of this letter sent via regular mail the following documentation:

1. The exhibits referred to in the examinations under oath of Mr. and Mrs. Hollahan;
2. The sworn statements in proof of loss submitted by the Hollahans;
3. The correspondence office to/from the Hollahans;
4. The documents produced by SunTrust; and
5. Correspondence with Verizon; and
6. The estimate for the repairs to the home.

Travelers objects to producing any other investigative documentation as such documents are protected by the attorney-client privilege and constitute work product.

### Demand for Payment

Your letter makes a "bad faith" demand for payment. Upon receipt of your demand, Mr. Alexander reviewed both the claim file and the policy issued to the insureds. Based upon his review, there is no basis on which to reconsider the denial or make any payment to the insureds without the information detailed below that your clients were requested to produce more than a year ago. Further, there is no basis for any bad faith claim against Standard Fire, who at all times during the investigation and consideration of this claim acted in good faith. Standard Fire was unable to complete its investigation due to your clients' continued refusal to comply with their duties set forth in the policy. We note that your demand also failed to provide any of the requested information, including any documentation supporting the amount of the demand.

Standard Fire made repeated efforts to obtain documents from your clients in support of their claim. They were requested to produce certain documentation and information at their examinations under oath held on October 11, 2011. When they failed to produce the documentation at those proceedings, I wrote them on October 14, 2011 and December 12, 2011 detailing the information and documentation that needed to be produced.

On December 29, 2011, your clients submitted a revised sworn statement in proof of loss. That proof, however, did not include any documents to support the amount the Hollahans were claiming under the policy and they continued to fail to produce the outstanding documents. Accordingly, that proof of loss was rejected via correspondence dated January 6, 2012. In that correspondence, the Hollahans were requested to submit, within 30 days, another proof of loss, any documentation to support that proof as well as the outstanding documentation that had been requested. In addition, they were specifically advised that their continued failure to produce the requested documents may be grounds for denial of the claim. From January 6, 2012 until the denial letter was issued on December 12, 2012, the Hollahans failed to submit any revised sworn statement in proof of loss, or any of the outstanding documentation.

The Hollahans' policy provides in pertinent part, as follows:

### SECTION I – CONDITIONS

\*\*\*\*\*

**2.** ***Your Duties After Loss.*** *In case of a loss to which this insurance may apply, you shall see that the following duties are performed:*

*****

e. *PREPARE AN INVENTORY OF DAMAGED PERSONAL PROPERTY SHOWING IN DETAIL:*

   (1) *QUANTITY;*

   (2) *DESCRIPTION;*

   (3) *ACTUAL CASH VALUE; AND*

   (4) *AMOUNT OF LOSS.*

   *ATTACH TO THE INVENTORY ALL:*

   (1) *BILLS;*

   (2) *RECEIPTS; AND*

   (3) *RELATED DOCUMENTS THAT SUBSTANTIATE THE FIGURES IN THE INVENTORY;*

f. *AS OFTEN AS WE REASONABLY REQUIRE:*

*****

   (2) *PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES; AND*

   (3) *SUBMIT TO EXAMINATION UNDER OATH, WHILE NOT IN THE PRESENCE OF ANY OTHER INSURED AND SIGN THE SAME;*

g. *SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH, TO THE BEST OF YOUR KNOWLEDGE AND BELIEF:*

   1. *THE TIME AND CAUSE OF LOSS;*

   2. *INTEREST OF THE INSURED AND ALL OTHERS IN THE PROPERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY;*

   3. *OTHER INSURANCE WHICH MAY COVER THE LOSS;*

   4. *CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;*

5.  *SPECIFICATIONS OF ANY DAMAGED BUILDING AND
    DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;*

6.  *AN INVENTORY OF DAMAGED PERSONAL PROPERTY
    DESCRIBED IN 2e ABOVE;*

7.  *RECEIPTS FOR ADDITIONAL LIVING EXPENSES
    INCURRED AND RECORDS SUPPORTING THE FAIR
    RENTAL VALUE LOSS;*

Accordingly, the Hollahans' policy provides as a condition to recovery that they provide Standard Fire with records and documents and a sworn statement in proof of loss containing the information detailed in the policy. Under Tennessee law, declining to comply with these conditions precedent is in violation of the policy and bars any recovery regarding this claim. *See Wharton v. State Farm Fire & Cas. Ins. Co.*, 1995 U.S. App. LEXIS 14586 (1995). Therefore, until your clients comply with the terms of the policy within the time provided for in the policy, Standard Fire must stand by its original denial of the claim.

**_Needless to say, all parties continue to insist on the strict compliance of all of the terms and/or conditions of the policy and applicable law._**

Very truly yours,

DREW, ECKL & FARNHAM, LLP

Karen K. Karabinos

KKK/kkk

Enclosures via regular mail

3517002/1
05657-079680

# EXHIBIT "N"

# THE BILL DERRYBERRY COMPANY
## GENERAL CONTRACTOR
#15714.
491 CORNERSVILLE ROAD
LEWISBURG, TENNESSEE
37091
PHONE NO: 931)359-5691
FAX NO: (931)359-3367

February 13, 2013

Mr. Glen Adcock
932 Foxboro Drive
Lewisburg, TN 37091

Ref:   Timothy and Jennifer Hollahan
6326 Currywood Drive
Nashville, TN 37205

Enclosed is The Bill Derryberry Company's opinion of the cost to rebuild the
house at 6326 Currywood Drive, Nashville, TN. As the house has been torn down
and removed, this opinion is based on pictures taken by Billy Derring, Metro
Government of Davidson County's Fire Investigation and dimensions furnished
by Grecco Construction Consultant's Report.

| | |
|---|---:|
| Approximately 3,325.8 sf of Living Area @ $110.00/sf | $ 365,843.00 |
| Approximately 1,196 sf of Basement @ $45.00/sf | 53,820.00 |
| Approximately 537 sf of Poarch Areas @ $45,00.sf | 24,165.00 |
| Approximately 170 sf of Deck @ $20.00/sf | 3,400.00 |
| | $ 447,228.00 |

Again, I would like to emphasize, the above pricing is based on the information I
had to work with.

If you have any questions please call me.

BILL DERRYBERRY COMPANY

Bill Derryberry
General Contractor

# EXHIBIT "O"

# PAUL T. HOUSCH
## Attorney at Law

PAUL T. HOUSCH

* Admitted to Practice Before:
U.S. Supreme Court
U.S. Claims Court
U.S. 8th Cir. Ct. Appeals
U.S. District Court
TN Supreme Court

Military Service:
U.S. Army 1974-1977

WASHINGTON SQUARE
222 SECOND AVENUE NORTH
SUITE 310

Nashville, Tennessee 37201

TELEPHONE
259-3313
FAX
259-3315
AREA CODE 615

June 17, 2013

Mr. Ted Alexander, General Adjustor
Personal Alliance Major Case Unit
The Standard Fire Insurance Company
St. Paul Traveler's Companies
4840 Forrest Drive, Suite 6D PMD 337
Columbia, South Carolina 29206

> **RE:** **Insured: Timothy and Jennifer Hollahan**
> Policy No. 978409682-633-1
> Claim No. HFX8174
> Date of Loss: April 13, 2011

Dear Mr. Alexander:

Please be advised that I represent Mr. and Mrs. Timothy Hollahan in their fire loss claim against The Standard Fire Insurance Company arising out of the fire loss of their residence on April 13, 2011 in Davidson County, Tennessee.

Pursuant to your letter of December 12, 2012, I am writing to you to provide you with the Amended Sworn Statement and Proof of Loss Form duly executed and sworn to by Mr. and Mrs. Timothy Hollahan, with documentation to support their fire loss claim for your reconsideration of your official denial of their claim on December 12, 2012.

These materials which are being provided to you herein will be part of the lawsuit that I anticipate filing on behalf of Mr. and Mrs. Hollahan against the Standard Fire Insurance Company for failure of the Standard Fire Insurance Company to pay their claim.

It is my client's position that Standard Fire Insurance Company should have never denied their claim; and that Standard Fire Insurance Company failed to cooperate with Mr. and Mrs. Hollahan after the fire loss of their residence by placing demands upon them that were unreasonable, unjust and in breach of the Standard Fire Insurance Company's policy of fire loss insurance to act in good faith during the claims process. Because of the continued adversary role of Standard Fire Insurance Company being pursued against Mr. and Mrs. Timothy Hollahan following the fire loss on April 13, 2011, Mr. and Mrs. Timothy Hollahan acting pro se, were unable to resolve their fire loss claim accordingly prior to your letter of December 12, 1012, officially denying their claim.

Mr. and Mrs. Hollahan and their two minor children have suffered not only of the fire loss of their residence, but also because of The Standard Fire Insurance Company's denial of their claim.

This letter is to advise you that there has been no criminal indictments or criminal warrants issued against anyone for arson of the fire loss of their residence. It is my understanding that no presentments have been made by the Metropolitan Fire Department to the grand jury against Mr. and Mrs. Timothy Hollahan because there is no evidence to support any charge of arson. Mr. and Mrs. Timothy Hollahan have emphatically denied that they caused the fire or had anything to do with the fire of their residence.

The Standard Fire Insurance Company was placed on notice at the very beginning that Mr. and Mrs. Hollahan had nothing to do with the fire loss of their residence on April 13, 2011, yet the Standard Fire Insurance Company has basically accused them of arson with no evidence to support such a claim.

I am in the process of drafting the Complaint to pursue their fire loss claim against The Standard Fire Insurance Company, under Policy No. 978409682-633-1, Claim No. HFX8174.

Since The Standard Fire Insurance Company has done everything possible to delay the determination of whether their claim should be paid; and has finally officially denied Mr. and Mrs. Hollahan's Claim on December 12, 2012, my clients are well within their rights to file their claim in a Court of competent jurisdiction in this matter to pursue their fire loss claim, and have a jury determine their claim.

In the interest of justice and The Standard Fire Insurance Company's duty to act in good faith under the policy insuring the fire loss of their residence, I call upon you to do the right thing in this matter and to reconsider Mr. and Mrs. Hollahan's fire loss claim short of any litigation being filed in this matter.

I hope that with your experience as General Adjustor in dealing with fire loss claims of this nature and circumstances, that you would understand the situation involving Mr. and Mrs. Hollahan and their minor children and the loss they suffered.

If I do not hear from you within thirty (30) days of receipt of this letter, I will proceed with the litigation.

Sincerely,

PAUL T. HOUSCH, ESQ.

cc:     Mr. Timothy Hollahan
        Mrs. Jennifer Hollahan

Encl:  Original Amended Sworn Statement in Proof of Loss and
        Documentation for Proof of Fire Loss Claim

PTH:bms

## SWORN STATEMENT IN PROOF OF LOSS

| Amount of policy at time of loss: $ 1,050,000.00 | Claim Number: BFX6174 | |
|---|---|---|
| Date issued: 8-2-2010 | Date expires: 8-2-2011 | Agent Name/Agency Address: AL Phillips Agency |

To the The Standard Fire Insurance Company _____ of **Travelers Property and Casualty Co.**

At the time of loss, by the above indicated policy, you insured **6526 Currywood Drive, Nashville, TN 37205**

against the loss **of fire** _____ to the property described according to the terms and conditions of said

policy and of all forms, endorsements, transfers and assignments attached thereto.

### TIME AND ORIGIN

A _____ **fire** _____ loss occurred about the hour of **3-4:30** o'clock AM/PM (circle one) on the

**13th** day of **April** _____ in the year **2011** . The cause and origin of the said loss were: _____

**incendiary according to Metro Fire Department Investigator.**

### OCCUPANCY

The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose

whatever: **Insured's Residence (Primary Residence) with furniture and clothing in**

**their residence.**

### TITLE AND INTEREST

At the time of the loss, the interest of your insured in the property described therein was **owner** No other person or persons

had any interest therein **N/A** _____ or encumbrance thereon, except **SunTrust Mortgage**

**First Mortgage and Equity Line of Credit**

### CHANGES

Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or

exposure of the property described , except: **None.**

### TOTAL INSURANCE

THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $ **1,050,000.00**
as more particularly specified in the apportionment attached besides which there was no policy or other contract of insurance, written
or oral, valid or invalid.

| | | |
|---|---|---|
| Value | THE ACTUAL CASH VALUE of said property at the time of the loss was: | $605,000.00 |
| Loss | THE WHOLE LOSS AND DAMAGE was: | $528,702.96 |
| Amount Claimed | THE AMOUNT CLAIMED under the above numbered policy is: | $553,912.96 1) |

### STATEMENTS OF INSURED

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by
or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void: no articles are
mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss: no property saved has in any
manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any
other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver
of any of its rights.

State of **Tennessee** _____

County of **Davidson** _____

Subscribed and sworn to before me this _____ **14th** _____ day of _____ NOTARY PUBLIC **2013**

My Commission Expires: **5 NOV 2015**

P1727 02/07
Printed in U.S.A.      **1) See Attached for breakdown of amount claimed.**

## RELEASE AND AUTHORIZATION

The The Standard Fire Insurance Company is hereby requested, authorized and empowered to pay as follows:

To _____ the sum of $ _____

To _____ the sum of $ _____

Total $ _____

In full settlement and satisfaction for all loss and damage which occurred on _____ to the property described

in this Proof of Loss, and covered under Policy Number ___ , issued to the undersigned.

In consideration of such payment, the Company is hereby discharged and forever released from any and all
claims, demands of liability whatsoever for said loss and damage, under said policy.

_____

INSURED

_____      _____

DATE                              MORTGAGEE

P1727 02/07

## 1) BREAKDOWN OF FIRE LOSS CLAIM

### 1)  VALUE

$500,000.00       Value of Home
$105,000.00       Furniture & Clothing

$605,000.00

### 2) LOSS

|  |  | $447,228.00 | (Replacement Costs to Rebuild Home) |
|  | + | $ 81,474.96 | (Furniture and Clothing) |
| $528,702.96 |  | $528,702.96 |  |

### 3)  AMOUNT CLAIMED:

|  |  | $528,702.96 |  |
|  | + | 6,000.00 | - Hotel Expense (April - May 2011) |
|  | + | 400.00 | - Meals |
|  | + | 18,810.00 = | 990.00 per month x 19 months (rent) |
|  |  |  | (June, 2011 - Dec. 12, 2012) |
| $553,912.96 |  | Total: $553,912.96 |  |

| item # | Room | Brand Or Manufacturer | Model # | Item Description | Quantity Lost | Item Age (Years) | Item Age (Months) | Your Estimated Cost to Replace (each) |
|---|---|---|---|---|---|---|---|---|
| 1 | Bedroom # 1 | Brass Bed Frame (Unknown) | * | Brass Bed Frame | 1 | 25 yrs | | $399.00 |
| 2 | Bedroom # 1 | Singer | * | Sewing Machine in Table | 1 | 1990 | | $250.00 |
| 3 | Bedroom #1 | Unknown | * | Wedding Dress | 1 | 1993 | | $1800.00 |
| 4 | Bedroom #1 | Mattel | * | Barbie Case & Clothes | 1 | 1960 | | $299.99 |
| 5 | Bedroom #1 | Emerson | * | 13" TV | 1 | 1991 | | $59.00 |
| 6 | Bedroom #1 | Oun Sloan | * | 12 piece sterling silver flatware & serving pieces (4) | 75 | 1960's-1970's | | $3,000.00 |
| 7 | Bedroom #2 | Unknown | * | Antique Iron Bed- White | 1 | 1930's | | $550.00 |
| 8 | Bedroom #2 | Unknown | * | Duplex Wicker Dresser | 1 | 1980's | | $512.00 |
| 9 | Bedroom #2 | Unknown | * | Wicker Shelf 4 Tier | 1 | 1980's | | $75.00 |
| 10 | Bedroom #2 | Target | * | White 2 shelf case | 1 | 2003 | | $39.00 |
| 11 | Bedroom # 2 | Misc. Brands | * | Girls Clothing | 40-60 | 1-2 yrs | | $800.00 |
| 12 | Bedroom # 2 | Misc. Brands | * | Girls/Woman's Shoes | 10 | 1-2 yrs | | $450.00 |
| 13 | Bedroom # 2 | LG | * | 19" Flat Screen | 1 | 1 yr | | $140.00 |
| 14 | Bedroom # 2 | Misc. Names | * | Fusion Books - Hard Backs | 25 | 1-3 yrs | | $290.00 |
| 15 | Bedroom # 3 | Unknown from specialty baby store | | Baby Changing Table - Cherry | 1 | 1997 | | $349.00 |
| 16 | Bedroom # 3 | Grandmother | | Baby blankets handmade | 8 | 1997 | | $150.00 |
| 17 | Bedroom # 3 | Unknown | | Dressing Table & 1 Mirror | 1 | 1970's | | $399.99 |
| 18 | Bedroom # 3 | Misc. Brands | | Infant Clothes 0-12 months | 150 | 97-2001 | | $3,750.00 |
| 19 | Bedroom # 3 | Misc. Brands | | Toddler Clothes 1-3 yrs | 250-300 | 99-2003 | | $8,250.00 |
| 20 | Bedroom # 3 | Misc. Brands | | Girls Clothes 4 yrs & up | 300-350 | 2000-2006 | | $8,750.00 |
| 21 | Bedroom # 3 | Misc. Brands | | Women's Tennis Clothes | 75 | 1998-2003 | | $2,800.00 |
| 22 | Bedroom # 3 | Misc. Brands | | Women's Shoes | 40-50 | 2-15 yrs | | $3,500.00 |
| 23 | Bedroom # 3 | Unknown | | Antique Raggedy Ann & Andy | 2 | 1960's | | $1,000.00 |
| 24 | Bedroom # 4 | Grandmother | | Handmade Dress | 50-60 | 10-25 yrs | | $4,500.00 |
| 25 | Bedroom # 4 | Crescent | | Desk | 1 | 2003 | | $599.99 |
| 26 | Bedroom # 4 | Crescent | | Computer Desk | 1 | 2003 | | $399.99 |
| 27 | Bedroom # 4 | Dell | * | Computer | 1 | 1999 | | $219.00 |

* Denotes items burned.  All other damaged by smoke and water as far as able to tell.

| # | Location | Brand | | Item | Qty | Year | Value |
|---|---|---|---|---|---|---|---|
| 28 | Bedroom # 4 | Epson | | Printer | 1 | | $79.00 |
| 29 | Bedroom # 4 | Unknown | | Various Music Cd's | 100 | 1987-ON | $1,000.00 |
| 30 | MBR | Crescent | | Armoire - Mahogany | 1 | 1994 | $699.00 |
| 31 | MBR | Crescent | | Triple Dresser Mahogany | 1 | 1994 | $899.00 |
| 32 | MBR | Crescent | | King Bed 4 Poster Mahogany | 1 | 1997 | $1,200.00 |
| 33 | MBR | Lane | | Cedar Chest | 1 | 1989 | $190.00 |
| 34 | MBR | Crescent | | 2 - Night Stands Mahogany | 2 | 1994 | $450.00 |
| 35 | MBR | Unknown | | Grandmothers Cedar Chest | 1 | 1960's | $350.00 |
| 36 | MBR | Misc. Brands | | Women's Sweaters - (In Cedar Chests) | 75 | 0-15 yrs | $1,800.00 |
| 37 | MBR | Unknown | | Grandmother's Lamp (Green) | 1 | 1950's | $100.00 |
| 38 | MBR | Unknown | | Grandmother's White Small Lamps | 2 | 1950's | $60.00 |
| 39 | MBR | Unknown | | Glass Beazley Pictures Frame | 1 | 1993 | $40.00 |
| 40 | MBR | Unknown | | 2 - 8 X 10 Pictures | 2 | 1993 | $60.00 |
| 41 | MBR | Unknown | | Wedding Mother/Child | | 2000 | |
| 42 | MBR | Misc. Brands | | Men's Clothing | 45-50 | 0-5 | $1,500.00 |
| 43 | | | | 3 suits, 20-25 ties | | | $1,500.00 |
| 44 | | | | 5-6 shirts long sleeve | | | $250.00 |
| 45 | | | | 5-6 golf shirts, pants | | | $375.00 |
| 46 | MBR | Misc. Brands | | Women's Clothing | 125 | 0-10 yrs | $3,600.00 |
| 47 | MBR | Unknown | | Jewelry Boxes w/ Jewelry | 2 | 0-30 yrs | $250.00 |
| 48 | MBR | Sony | | 32" Flat Screen | 1 | 2009 | $450.00 |
| 49 | MBR | Unknown | | 18"by 36" Framed London Print | 1 | 1992 | $150.00 |
| 50 | Den | Unknown | | Leroy Neiman Signed Gnif Print 18" Pebble Beach | 1 | | $490.00 |
| 51 | Den | Unknown | | Phil Ponder Numbered Nash.Skyline | ? | | $125.00 |
| 52 | Den | Culverts | | Infant Panel | 1 | 1997 | $295.00 |
| 53 | Den | Orrian & Orren | | Baby Pictures | 3 | 2001 | $75.00 |
| 54 | Den | Unknown | | Marble 1" Thick Large Coffee Table | 1 | 1940's | $395.00 |
| 55 | Den | Unknown | | Children's Encyclopedia Style Set | 15 | 1960's | $75.00 |
| 56 | Den | Unknown | | Various Framed Photos | 20-25 | 1993-07 | $250.00 |
| 57 | Livingroom | Unknown | | Wedding Portrait 30 X 24 | 1 | 1993 | $450.00 |

* Denotes items burned. All other damaged by smoke and water as far as able to tell.

| | | | | | | |
|---|---|---|---|---|---|---|
| 58 | Livingroom | Unknown | Cherry Marble Top Coffee Table | 1 | 1970's | $300.00 |
| 59 | Livingroom | Unknown | Cherry Marble End Table | 1 | 1970's | $250.00 |
| 60 | Livingroom | Unknown | Maple Small 3 Shelf Shelf | 1 | 1950's | $60.00 |
| 61 | Livingroom | Unknown | Large Travel Trunk | 1 | 1940's | $25.00 |
| 62 | Livingroom | Unknown | Goose Neck Rocker | 1 | 1960's | $135.00 |
| 63 | Livingroom | Unknown | Christmas Village Dickens | 12 | 1990's-2004 | $720.00 |
| 64 | Livingroom | Unknown | Wedding Albums | 2 | 1993 | $250.00 |
| 65 | Livingroom | Unknown | 8 X 10 Framed Child's Portrait | 1 | 1998 | $75.00 |
| 66 | Livingroom | Unknown | Oak 6 Tier Curio Cabinet | 1 | 1960's | $250.00 |
| 67 | Livingroom | Susan Keenen | Breast Cancer Ornaments (Glass Collectors) | 3 | 2000-2003 | $35.00 |
| 68 | Diningroom | Unknown | Cherry Serving Cart | 1 | 1970's | $350.00 |
| 69 | Diningroom | Unknown | Cherry Dining Table | 1 | 1991 | $5,400.00 |
| 70 | Diningroom | Unknown | Cherry Dining Chairs | 8 | 1991 | $600.00 |
| 71 | Diningroom | Duncan Phifle | Mahogany Corner Cabinet | 1 | 1950's | $350.00 |
| 72 | Diningroom | Duncan Phifle | Drop Leaf Mahogany Dining Table with 2 Leafs | 1 | 1950's | $400.00 |
| 73 | Diningroom | Unknown | 6 Ladder Back Cane Seat Chairs | 6 | 1950's | $450.00 |
| 74 | Diningroom | Unknown | Antique 32" Mirror | 1 | 1930's | $675.00 |
| 75 | Diningroom | Unknown | Grandmother's Cherry Bottom Cabinet with 2 Shelves on Top | 1 | 1960's | $450.00 |
| 76 | Kitchen | Unknown | Antique Oak Table 2' X 3' | 1 | 1970's | $190.00 |
| 77 | Kitchen | Unknown | Hand Blow Tall 12" Glasses | 6 | 1993 | $90.00 |
| 78 | Kitchen | Milaga | 12 Setting 2 Large Bowls gravy, butter, plates, salad plates, soup bowls, cups, saucers | 1 | | $450.00 |
| 79 | Kitchen | Frigidaire | Stainless Steel Side by Side | 1 | 2002 | $599.00 |
| 80 | Kitchen | Emerson | Med. Microwave | 1 | 2002 | $99.00 |
| 81 | Kitchen | Unknown | Grandmother's small amber colored glasses | 10 | 1950's | $75.00 |
| 82 | Kitchen | Kitchenaide | Dishwasher | 1 | 2007 | |
| 83 | Kitchen | Spode | 2 place Christmas Settings | 4 | 93-97 | $75.00 |
| 84 | Kitchen | Kitchenaide | Counter Top Mixer | 1 | 1980's | $299.00 |
| 85 | Playroom | Unknown | Wood Futon Frame | 1 | 1989 | $299.00 |
| 86 | Playroom | Disney | VHS Tapes | 35 | 1997- | $175.00 |
| 87 | Playroom | Disney | DVD's | 30 | 2004- | $300.00 |
| 88 | Playroom | Misc. Brands | Children's Books | 125+ | 1980's - ON | $500.00 |

* Denotes items burned. All other damaged by smoke and water as far as able to tell.

| | | | | | | |
|---|---|---|---|---|---|---|
| 89 | Playroom | Unknown | King Handmade Quilt by Grandmother Wedding Gift | 1 | 1993 | $150.00 |
| 90 | Playroom | American Girls | American Girl Dolls | 7 | 1997-2005 | $1,500.00 |
| 91 | Playroom | Unknown | Cherry Glider | 1 | 1997 | $199.00 |
| 92 | Playroom | Unknown | Child's Electronic Tools | 15 | 1997-2005 | $350.00 |
| 93 | Laundry | Maytag | Washer | 1 | 1997 | $499.00 |
| 94 | Laundry | Whirlpool | Dryer | 1 | 2005 | $399.00 |
| 95 | Garage | Baldwin & Covey | Electric Organ | 1 | 1960's | $695.00 |
| 96 | Garage | Zenith | AM/FM Stereo with Cabinet | 1 | 1950's | $450.00 |
| 97 | Garage | Unknown | Tall Oak Bar Stools | 2 | 1995 | $200.00 |
| 98 | Garage | Mattel | Barbie Child's Jeep | 1 | 1999 | $175.00 |
| 99 | Garage | Unknown | Antique Double Bed - Maple | 1 | 1930's | $299.00 |
| 100 | Den Closet | Sony | AM/FM Receiver | 1 | 1987 | $149.00 |
| 101 | Den Closet | Sony | Single CD Player | 1 | 1987 | $99.00 |
| 102 | Foyer Closet | Cain Sloan | Mink Stow wrap- Grandmothers name inside | 1 | 1960's | $425.00 |
| 103 | Foyer Closet | Misc Brands | Womens Coats | 12 | 1990's ON | $600.00 |
| 104 | Foyer Closet | Misc Brands | Mens Coats | 5 | 1990s ON | $450.00 |
| 105 | Foyer Closet | Misc Brands | Kids Coats | 4 | 1980s ON | $240.00 |
| 106 | Attic | Samsonite | Large Duffel Bag, Hanging Bag, Small Suitcase | 3 | 1991 | $125.00 |
| 107 | Deck | Unknown | Red Iron Table & 2 Chairs | 3 | 1980 | $399.00 |
| 108 | Deck | Unknown | White Church Pew Benches | 2 | 1985 | $150.00 |
| 109 | | | | | | |
| 110 | | | | | | |
| 111 | | | | | | |
| 112 | | | | | Total: | $81,474.96 |
| 113 | | | | | | |
| 114 | | | | | | |
| 115 | | | | | | |
| 116 | | | | | | |
| 117 | | | | | | |
| 118 | | | | | | |
| 119 | | | | | | |
| 120 | | | | | | |

* Denotes items burned. All other damaged by smoke and water as far as able to tell.

THE BILL DERRYBERRY COMPANY
GENERAL CONTRACTOR
#15714.
491 CORNERSVILLE ROAD
LEWISBURG, TENNESSEE
37091
PHONE NO: 931)359-5691
FAX NO: (931)359-3367

February 13, 2013

Mr. Glen Adcock
932 Foxboro Drive
Lewisburg, TN 37091

Ref:  Timothy and Jennifer Hollahan
      6326 Currywood Drive
      Nashville, TN 37205

Enclosed is The Bill Derryberry Company's opinion of the cost to rebuild the
house at 6326 Currywood Drive, Nashville, TN. As the house has been torn down
and removed, this opinion is based on pictures taken by Billy Derring, Metro
Government of Davidson County's Fire Investigation and dimensions furnished
by Grecco Construction Consultant's Report.

| | |
|---|---:|
| Approximately 3,325.8 sf of Living Area @ $110.00/sf | $ 365,843.00 |
| Approximately 1,196 sf of Basement @ $45.00/sf | 53,820.00 |
| Approximately 537 sf of Poarch Areas @ $45,00.sf | 24,165.00 |
| Approximately 170 sf of Deck @ $20.00/sf | 3,400.00 |
| | $ 447,228.00 |

Again, I would like to emphasize, the above pricing is based on the information I
had to work with.

If you have any questions please call me.

BILL DERRYBERRY COMPANY

Bill Derryberry
General Contractor

# SUPPORTING DOCUMENTATION FOR PLAINTIFFS' AMENDED SWORN STATEMENT IN PROOF OF LOSS, FOR $553,912.66, DATED JUNE 14, 2013, ARE VOLUMINOUS AND WILL BE FILED AS PART OF EXHIBIT "O"

# EXHIBIT "P"

# DREW ECKL & FARNHAM, LLP

ATTORNEYS AT LAW
880 West Peachtree Street
P.O. Box 7600
Atlanta, GA 30357-0600
(404) 885-1400 – voice
(404) 876-0992 - fax

## FACSIMILE TRANSMITTAL

**DATE: 7/18/2013**

TO: PAUL T. HOUSCH                          FAX NO.: (615) 259-3315

COMPANY:                                    VOICE NO.:

FROM: KAREN KARABINOS                        ATTORNEY/PARALEGAL NO.: 198

SENDER EMAIL: karabinosk@deflaw.com

CLIENT/MATTER NO.: 05657-079680

RE:    Hollahans

**TOTAL NO. OF PAGES (INCLUDING THIS COVER SHEET): 4**

**IF YOU SHOULD HAVE ANY PROBLEMS RECEIVING THIS FAX, PLEASE CONTACT;
Karen Karabinos AT: (404) 885-1400**

**REMARKS:**

Please see the attached correspondence

CONFIDENTIALITY NOTE: The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. Thank you.

JOHN A. FERGUSON, JR.
JOHN F. REALE
STEVAN A. MILLER
H. MICHAEL BAGLEY
HALL F. McKINLEY III
G. RANDALL MOODY
PAUL W. BURKE
DANIEL C. KNIFFEN
JOHN C. BRUFFEY, JR.
JOHN C. BLACKMON, JR.
GARY R. HURST
KATHERINE D. DIXON
BRUCE A. TAYLOR, JR.
JOSEPH C. CHANCEY
DAVID A. SMITH
JAMES P. ANDERSON
JULE V. JOHN
SANDRA S. CHO
BARBARA A. MARSCHALK
BRIAN S. MOORE
ROBERT I. WELCH
MICHAEL L. MILLER
ANDREW D. HOROWITZ

J. C. ROPER, JR.
BURKE A. NOBLE
BRIAN W. JOHNSON
DOUGLAS K. BURRELL
KAREN K. KARABINOS
GARY D. BEELEN
JEFFREY S. WARD
J. BENSON WARD
DEAN A. DELLINGER
DOUGLAS G. SMITH, JR.
ROBERT D. GOLDSMITH
MEGAN MATHEWS NOBLE
LISA R. RICHARDSON
CHRISTOPHER A. BENNETT
AARATI T. SUBRAMANIAM
ANDREW C. HAEBERLE
MATTHEW A. MANNINGA
RYAN V. KLEE
CASSANDRA A. WILLIAMS
STEPHEN J. GRAHAM
MATTHEW D. WALKER
CHAD ERIC JACOBS
PATRICIA P. CUNNINGHAM

E. ANDREW TREESH
JOHN E. ADKISSON, III
TAYLOR S. PONICZ
ERIC P. VLAH
MEREDITH RIGGS GUERRERO
ANNE MARIE DU TOIT
INGRID NUSS
JASON M. PRINE
DAVID A. OLSON
BETH GRANHART
WILLIAM R. MELSCROVE
MYLES LEVELLE
SARAH E. SMITH
DAVID JON MAHER
JEFFREY J. COSTOLNICK
CHRISTIAN H. LAYCOCK
MATTHEW P. RAMSEY
ADAM M. MASAREK
APRILA. ROBINSON
MATTHEW T. JONES
EMILY M. SHULMAN
WHITNEY B. LAY
MATTHEW D. MACY

LARA ORTEGA
HADLEY E. HAYES
CHRISTOPHER K. GIFFORD
LAUREN D. JULIAN
BRITTANY N. BOLTON
TRACY WALKER BAKER
CORY K. O'BRIEN
MARC HOOD

OF COUNSEL
CHARLES L. DREW
W. WRAY ECKL
CLAYTON H. FARNHAM
MELANIE C. DAKE
JEFFREY A. BURMEISTER
LESLIE P. BECKNELL

LEIGH LAWSON REEVES
(1963-2009)
DENNIS M. HALL
(1947-1995)

# DREW ECKL & FARNHAM, LLP

### ATTORNEYS AT LAW
880 WEST PEACHTREE STREET (STREET ZIP CODE: 30309)
P.O. BOX 7600
ATLANTA, GEORGIA 30357-0600
TELEPHONE (404) 885-1400
FACSIMILE (404) 876-0992

www.deflaw.com

July 18, 2013

WRITER'S DIRECT ACCESS
(404) 885-6313
kkarabinos@deflaw.com

## VIA FACSIMILE

Paul T. Housch
222 Second Avenue North
Washington Squire, Suite 310
Nashville, TN 37201

> **RE:** *Insureds; Timothy & Jennifer Hollahan*
> Policy No.: 978409682-633-1
> Claim No.: HFX8174
> Date of Loss: 4/13/2011
> Our File No.: 05657-079680

Dear Mr. Housch:

I represent The Standard Fire Insurance Company ("Standard Fire") who has asked me to respond to your letter dated June 17, 2013 in which you have threatened to file suit against Standard on behalf of your clients, Timothy and Jennifer Hollahan.

As you know, the fire loss for which your clients submitted their claim occurred on or about April 13, 2011. The policy issued by Standard Fire to your clients provided in pertinent part as follows:

### SECTION I – CONDITIONS

\*\*\*\*\*

**2.     Your Duties After Loss.** *In case of a loss to which this insurance may apply, you shall see that the following duties are performed:*

\*\*\*\*\*

ATLANTA · BRUNSWICK ·

Case 3:14-cv-00001   Document 1-1   Filed 01/02/14   Page 138 of 141 PageID #: 142

Paul T. Housch
July 18, 2013
*RE: Hollahans*
Page 2

g.   *SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR*
     *SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH,*
     *TO THE BEST OF YOUR KNOWLEDGE AND BELIEF:*

     1.   *THE TIME AND CAUSE OF LOSS;*

     2.   *INTEREST OF THE INSURED AND ALL OTHERS IN THE*
          *PROPERTY INVOLVED AND ALL ENCUMBRANCES ON*
          *THE PROPERTY;*

     3.   *OTHER INSURANCE WHICH MAY COVER THE LOSS;*

     4.   *CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY*
          *DURING THE TERM OF THE POLICY;*

     5.   *SPECIFICATIONS OF ANY DAMAGED BUILDING AND*
          *DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;*

     6.   *AN INVENTORY OF DAMAGED PERSONAL PROPERTY*
          *DESCRIBED IN 2e ABOVE;*

     7.   *RECEIPTS FOR ADDITIONAL LIVING EXPENSES*
          *INCURRED AND RECORDS SUPPORTING THE FAIR*
          *RENTAL VALUE LOSS;*

                         *****

**8.**   **Suit Against** *Us. No action shall be brought UNLESS THERE HAS*
         *BEEN COMPLIANCE WITH THE POLICY PROVISIONS AND THE*
         *ACTION IS STARTED WITHIN ONE YEAR AFTER THE*
         *OCCURRENCE CAUSING LOSS OR DAMAGE.*

It is undisputed that your clients did not comply with the policy provisions as
requested by Standard Fire, which was specifically detailed in the denial letter dated
December 12, 2011. The Hollahans' failure to cooperate prevented Standard Fire from
fully and fairly investigating the other issues related to their claim.

Not only did the Hollahans' failed to cooperate, they did not file suit within the
suit limitations period provided for in the policy. Any suit now filed thus would be time
barred. *See* Certain Underwriters at Lloyd's of London v. Transcarriers Inc., 107 S.W.3d
496, 499 (Tenn.Ct.App.2002).

While we understand that your clients may be disappointed that Standard Fire
did not pay their claim, Standard Fire cannot accept their claim or make any payment
based on the facts of their claim, the policy provisions and Tennessee law.

Paul T. Housch
July 18, 2013
**RE: Hollahans** ,
Page 3

      Please let me know if you are aware of any further documentation or legal support that Standard Fire should consider in connection with your clients' claim.

                    Very truly yours,

                    DREW, ECKL & FARNHAM, LLP

                    Karen K. Karabinos

KKK/kkk

3685095/1
05657-079680



CERTIFIED MAIL

7012 3460 0002 8941 1446

$10.970
US POSTAGE PAID
MAILED FROM ZIP 37208

Service Of Process
Dept. of Commerce & Insurance
500 James Robertson Pkwy, 7th Floor
Nashville TN 37243

7012 3460 0002 8941 1446          1205/13
STANDARD FIRE INSURANCE COMPANY
2908 POSTON AVENUE, % C S C
NASHVILLE, TN 37203

7012 3460 0002 8941 1446          1205/13
STANDARD FIRE INSURANCE COMPANY
2908 POSTON AVENUE, % C S C
NASHVILLE, TN 37203